**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHRISTOPHER MEIDL, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:15-cv-01319 (JCH) |
| v. | : | |
| | : | |
| AETNA, INC., ET AL., | : | OCTOBER 11, 2018 |
| Defendants. | : | |
| | : | |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 132)**

## I.    INTRODUCTION

Plaintiff Christopher Meidl ("Meidl") brings this class action against the

defendants, Aetna, Inc. and Aetna Life Insurance Company (collectively, "Aetna"), for

denying insurance coverage of Transcranial Magnetic Stimulation (TMS) as a treatment

for depression.  See generally Corrected Amended Class Action Complaint ("Corr. Am.

Compl.") (Doc. No. 112).  Meidl asserts that Aetna improperly developed and

implemented a policy to deny TMS coverage on the grounds that TMS was an

experimental and investigational treatment.  See Plaintiff's Memorandum in Opposition

to Defendants' Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 159) at 1.  In

doing so, Aetna allegedly violated the Employee Retirement Income Security Act

(ERISA), 29 U.S.C. § 1102, et seq., by (1) breaching its fiduciary duties of prudence and

loyalty, and (2) wrongfully denying claims for TMS benefits.  Id.

Meidl brings these ERISA claims on behalf of a class of participants and

beneficiaries in plans administered by Aetna who were denied health insurance

coverage for TMS between September 3, 2009, and July 29, 2016 (the "TMS Class").

See Ruling on Motion for Class Certification and Motion to Seal ("Class Certification

Ruling") (Doc. No. 114) at 1–2. On May 4, 2017, the court certified the TMS Class to seek retrospective equitable relief, primarily in the form of an order requiring Aetna to reprocess class members' requests for TMS coverage that it had previously denied. See id. at 6, 52.

Aetna now moves for summary judgment. See generally Motion for Summary Judgment ("Defs.' Mot.") (Doc. No. 132). For the following reasons, Aetna's Motion for Summary Judgment is denied.

## II.    BACKGROUND

Aetna's insurance plans contain provisions excluding coverage of treatments determined by Aetna to be experimental or investigational. Defendants' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1") (Doc. No. 155) at ¶ 30; Plaintiff's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2") (Doc. No. 160) at ¶ 30. The plans classify a treatment as "experimental and investigational" if any of the following criteria are satisfied:

(1) The treatment is "[n]ot approved by the US Food and Drug Administration (FDA) to be lawfully marketed for the proposed use";

(2) There are "insufficient outcomes data from controlled trials published in peer-reviewed literature to substantiate its safety and effectiveness for the illness or injury involved";

(3) The treatment is "[s]ubject to review and approval by any institutional review board for the proposed use"; or

(4) The treatment is "[t]he subject of an ongoing clinical trial that meets the definition of a Phase 1, 2 or 3 clinical trial set forth in the FDA regulations, regardless of whether the trial is actually subject to FDA oversight."

Pl.'s Mem. at 4; see also Defs.' L.R. 56(a)1 at ¶¶ 31, 32; Pl.'s L.R. 56(a)2 at ¶¶ 31, 32.

Throughout the Class Period (September 3, 2009, to July 29, 2016), Aetna classified TMS as an experimental and investigational treatment for depression on the

grounds that "its value and effectiveness ha[d] not been established" through reliable clinical research. Pl.'s L.R. 56(a)2 at ¶ 51; Defendants' Memorandum in Support of Motion for Summary Judgment ("Defs.' Mem.") (Doc. No. 154) at 1. Aetna codified this determination in its Clinical Policy Bulletin 469 ("CPB 469"). See Defs.' L.R. 56(a)1 at ¶ 1; Pl.'s L.R. 56(a)2 at ¶ 1; Pl.'s Mem. at 1; Defs.' Mem. at 1. As support for designating TMS as an experimental and investigational treatment, CPB 469 provided a "background section" that summarized and discussed various scientific studies on the effects of TMS on depression. See Pl.'s Mem. at 6.

At least once a year, Aetna's policy team updated CPB 469 to reflect new research on TMS' effectiveness. See Defs.' L.R. 56(a)1 at ¶ 2; Pl.'s L.R. 56(a)2 at ¶ 2. Throughout the Class Period, however, CPB 469 consistently concluded that:

> [T]he available peer-reviewed medical literature has not established the effectiveness of TMS in the treatment of major depression . . . . More research is needed to ascertain the roles of various stimulation parameters of [TMS] for its optimal outcome as well as its long-term effectiveness in the treatment of depression . . . .

E.g., Defendants' Exhibit 14 ("DX 14") (Doc. No. 135-7) at 1059 (August 21, 2009, version of CPB 469); Defendants' Exhibit 15 ("DX 15") (Doc. No. 135-8) at 1036 (August 3, 2010, version of CPB 469); Defendants' Exhibit 62 ("DX 62") (Doc. No. 135-48) at 988 (August 12, 2011, version of CPB 469); Defendants' Exhibit 64 ("DX 64") (Doc. No. 135-50) at 936 (March 15, 2012, version of CPB 469); Defendants' Exhibit 65 ("DX 65") (Doc. No. 135-51) at 890 (October 11, 2013, version of CPB 469); Defendants' Exhibit 19 ("DX 19") (Doc. No. 135-12) at 684 (October 23, 2015, version of CPB 469).

Meidl, who was enrolled in a plan administered by Aetna, was denied TMS coverage. See Defs.' L.R. 56(a)1 at ¶ 36; Pl.'s L.R. 56(a)2 at ¶ 36. On January 21,

2016, Meidl initiated this action on behalf of all enrollees who were denied TMS benefits by Aetna on the grounds that the treatment was experimental and investigational. <u>See</u> Corr. Am. Compl. at ¶¶ 88–92. On May 4, 2017, the court granted in part and denied in part Meidl's Motion for Class Certification. <u>See</u> Class Certification Ruling at 52–53. Pursuant to Federal Rules of Civil Procedure 23(b)(1) and (b)(2), the court certified a class consisting of all participants or beneficiaries in ERISA plans administered by Aetna who, on the basis of CPB 469's classification of TMS as an experimental and investigational treatment, were denied coverage of TMS to treat depression during the Class Period. <u>Id.</u> at 52. The TMS Class, which includes "both persons whose post-service claims for reimbursement were denied and persons whose pre-service requests that Aetna confirm coverage for TMS were denied," was permitted to seek retrospective injunctive relief, including an order to reprocess previously denied requests for TMS coverage. <u>See</u> <u>id.</u> at 6, 52.

### III. LEGAL STANDARD

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Wright v. N.Y. State Dep't of Corr.</u>, 831 F.3d 64, 71–72 (2d Cir. 2016). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," <u>Anderson</u>, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Cross Commerce Media, Inc. v. Collective, Inc.</u>, 841 F.3d

155, 162 (2d Cir. 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)). On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact. Cortes v. MTA N.Y. City Transit, 802 F.3d 226, 230 (2d Cir. 2015) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)).

## IV.    DISCUSSION

Meidl has pled four counts under ERISA. In Count One, he alleges that Aetna violated ERISA's fiduciary standards under section 1104(a) of title 29 of the United States Code. See Corr. Am. Compl. at ¶¶ 97, 98; 29 U.S.C. § 1104(a) (requiring "a fiduciary [to] discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . and for the exclusive purpose of providing benefits to participants and their beneficiaries"). In Count Two, he asserts that Aetna violated the terms of the class members' insurance plans by improperly denying insurance claims for TMS on the basis of CPB 469. See Corr. Am. Compl. at ¶¶ 103, 104. Meidl brings Count One for breach of fiduciary duty and Count Two for denial of benefits pursuant to section 1132(a)(1)(B), which authorizes a participant or beneficiary in an ERISA-covered plan to bring a civil action "to recover benefits due to him under the terms of his

plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." See Corr. Am. Compl. at ¶¶ 94, 103.  In Counts Three and Four, Meidl asserts breach-of-fiduciary-duty claims for injunctive and equitable relief under section 1132(a)(3), which authorizes a participant or beneficiary in an ERISA-covered plan to "(A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." See id. at ¶¶ 107–15.  Meidl asserts Counts Three and Four "only to the extent that the Court finds that the injunctive . . . [and] equitable relief sought to remedy Counts I and/or II are unavailable pursuant to 29 U.S.C. 1132(a)(1)(B)." Id. at ¶¶ 108, 111.  Meidl also acknowledges that Counts Three and Four are based on the same conduct that underpins Count Two.  See id. at ¶¶ 108, 112.

In response, Aetna advances three arguments for why summary judgment is warranted in its favor.  Defs.' Mem. at 10.  First, Aetna argues it is entitled to summary judgment because there is no basis in the administrative record for concluding that CPB 469 arbitrarily and capriciously classified TMS as experimental and investigational during the Class Period.  Id. at 11.  Second, Aetna argues that the class action fails as a matter of law because the TMS Class cannot satisfy the required elements for injunctive relief.  Id. at 34.  Third, Aetna argues that summary judgment is warranted as to particular segments of the TMS Class, namely: (1) class members who received "off label" TMS, and (2) class members whose claims are time barred by the contractual limitations periods in their ERISA plans.  Id. at 36.  Below, the court addresses each of these arguments in turn.

A.     CPB 469

Before deciding whether summary judgment is warranted because there is no issue of material fact as to whether Aetna violated ERISA by developing and applying CPB 469 to deny TMS benefits during the Class Period, the court addresses several preliminary issues relating to (1) the appropriate standard of review under ERISA, and (2) the scope of the administrative record.

1.     ERISA Standard of Review

There is no dispute that Meidl's denial-of-benefits claims should be reviewed under the deferential "arbitrary and capricious" standard.  See Pl.'s Mem. at 11; Defs.' Mem. at 8.  Where, as here, the ERISA plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," courts apply the arbitrary and capricious standard to actions challenging a denial of benefits under section 1132(a)(1)(B).  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Defs.' L.R. 56(a)1 at ¶ 33 (providing examples of class members' plans that expressly vest Aetna with discretionary authority to make coverage determinations).

However, the parties disagree as to the appropriate standard of review for Meidl's breach-of-fiduciary-duty claims.  Meidl asserts that these claims warrant de novo review.  See Pl.'s Mem. at 11.  Aetna, on the other hand, argues that the arbitrary and capricious standard applies because the breach-of-fiduciary-duty claims arise out of Aetna's decision to deny TMS benefits.  See Defendants' Reply Memorandum in Support of Motion for Summary Judgment ("Defs.' Reply Mem.") (Doc. No. 157) at 2–3.

In John Blair Communications, the Second Circuit drew a distinction between denial-of-benefits claims that are reviewed for abuse of discretion and breach-of-

fiduciary-duty claims that warrant a stricter standard of review (i.e., ERISA's "strict prudent person standard"). See John Blair Communications, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan, 26 F.3d 360, 369–70 (2d Cir. 1994). While the former concern "whether the trustees have correctly balanced the interests of present claimants against the interests of future claimants," the latter concern whether the trustees have sacrificed the interests of beneficiaries to advance the interests of non-beneficiaries. Id. at 369 (quoting Struble v. New Jersey Brewery Employees' Welfare Trust Fund, 732 F.2d 325, 333–34 (3d Cir.1984)). In other words, the court limited the application of the arbitrary and capricious standard to conduct that involves the "mere balancing of interests among claimants through the payment or non-payment of certain claims." Id.

Subsequently, the Supreme Court in Varity cautioned against allowing plaintiffs to repackage a simple denial-of-benefits claim as a breach-of-fiduciary-duty claim through artful pleading. See Varity Corp. v. Howe, 516 U.S. 489, 514–15 (1996). Recognizing the potential advantages that plaintiffs gain from bringing a breach-of-fiduciary-duty claim, the Varity court stressed that "characterizing a denial of benefits as a breach of fiduciary duty does not necessarily change the standard a court would apply when reviewing the administrator's decision to deny benefits." Id. at 514. Accordingly, lower courts have routinely rebuffed litigants' attempts to dress up simple denial-of-benefits claims as breach-of-fiduciary-duty claims. See, e.g., Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 252–53 (3d Cir. 2002) (rejecting plaintiff's attempts to circumvent an exhaustion requirement through "artfully pleading benefit claims as breach of fiduciary duty claims"); Rothwell v. Chenango Cty. N.Y.S.A.R.C. Pension

Plan, No. 3:03-CV-00637 (GLS), 2005 WL 2276023, at *4–5 (N.D.N.Y. Sept. 19, 2005) (dismissing breach-of-fiduciary-duty claims that were duplicative of plaintiff's denial-of-benefits claim); Spann v. AOL Time Warner, Inc., 219 F.R.D. 307, 322 (S.D.N.Y. 2003) (holding that plaintiff's breach-of-fiduciary-duty claim did not provide an independent basis for relief where the claim was derivative of plaintiff's denial-of-benefits claim); Fitch v. Chase Manhattan Bank, N.A., 64 F. Supp. 2d 212, 228–29 (W.D.N.Y. 1999) (concluding that plaintiff's breach-of-fiduciary-duty claim was precluded by a duplicative denial-of-benefits claim); Asbestos Workers Syracuse Pension Fund by Collins v. M.G. Indus. Insulation Co., 875 F. Supp. 132, 138–39 (N.D.N.Y. 1995) (applying the arbitrary and capricious standard where the fiduciary's decision "was intended to benefit the plan participants," even though the decision also "balance[d] the interests of plan participants and a third party").

In this case, Meidl's breach-of-fiduciary-duty claims are entirely duplicative of his denial-of-benefits claims because they all arise from the same underlying conduct, namely: Aetna's development and implementation of a policy that denied coverage for TMS on the grounds that the treatment was experimental and investigational. See Corr. Am. Compl. at ¶ 98 ("Aetna violated [its fiduciary duties] by adopting and implementing a policy to deny coverage for TMS based on the experimental and investigational exclusions under its plans[.]"). Meidl does not point to any other conduct as the basis for his suit. See Transcript, September 20, 2018, Oral Argument ("Tr.") (Doc. No. 167) at 47:1–6. Instead, he attempts to distinguish his breach-of-fiduciary duty claims from his denial-of-benefits claims by arguing that the former stem from Aetna's development of CPB 469, while the latter are based on Aetna's application of CPB 469 to individual

claimants.  Id.

The development of CPB 469, however, is inseparable from Aetna's denial of individual TMS benefits because, as Meidl himself argues, Aetna uniformly applied CPB 469 to deny TMS benefits during the Class Period.  See Pl.'s Mem. at 1 ("Aetna's exclusion decisions all rested on a categorical policy, [CPB 469], that Aetna developed and uniformly applied to TMS claims.").  There is no evidence in the record to suggest that Aetna exercised any discretion when applying CPB 469 to deny individual TMS benefits.[1]  See Class Certification Ruling at 20 ("[E]ach time a claim was denied using one of the [experimental/investigational] codes, the Appeal Denial Letter produced by [Aetna] references CPB 469.").  Thus, there is no basis for concluding that Aetna's decision to develop CPB 469 was, in any way, separate or distinct from its decision to deny individual TMS benefits on the basis of CPB 469.  Instead, CPB 469 merely codified Aetna's general decision to deny TMS benefits on the grounds that TMS was experimental and investigational.  See Plaintiff's Exhibit 29 ("PX 29") (Doc. No. 161-22) at 57702 ("Aetna's Clinical Policy bulletins (CPBs) are statements of Aetna's policy regarding the experimental and investigational status and medical necessity of medical technologies . . . . CPBs apply to all Aetna medical benefit plans[.]") (emphasis added).  Accordingly, Meidl has not come forward with "facts that, if proven, establish a breach of fiduciary duty independent of the denial of benefits."  See Harrow, 279 F.3d at 254.

The court therefore treats Meidl's claims as a single denial-of-benefits action that

---

[1] Indeed, the existence of such evidence might call into question this court's certification of the TMS Class, which was predicated on "[t]he fact that Aetna uniformly treated CPB 469 as applicable to the putative class members' claims[.]"  Class Certification Ruling at 19–20.

must be reviewed under the arbitrary and capricious standard. "A decision is arbitrary and capricious only if it is found to be without reason, unsupported by substantial evidence or erroneous as a matter of law." See Miles v. Principal Life Ins. Co., 720 F.3d 472, 486 (2d Cir. 2013) (internal quotation marks omitted). "Substantial evidence in turn is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995) (internal alterations and quotation marks omitted). The Second Circuit has emphasized that "[t]his scope of review is narrow" and that "[courts] are not free to substitute [their] own judgment for that of the insurer as if [they] were considering the issue of eligibility anew." Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 83–84 (2d Cir. 2009) (internal quotation marks and alterations omitted). "This deferential review [ ] appl[ies] to both plan interpretation and factual determinations." Dorato v. Blue Cross of W. New York, Inc., 163 F. Supp. 2d 203, 209 (W.D.N.Y. 2001) (citing Kinstler v. First Reliance Std. Life Ins. Co., 181 F.3d 243, 251 (2d Cir.1999)).

In this case, the court must also take into account the conflict of interest that arises from Aetna's dual role as administrator and payor of some plans in the TMS Class. See McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 133 (2d Cir. 2008); see also Defs.' Reply at 3; Pl.'s Mem. at 12. Such a conflict does not operate to change the standard of review in a denial of benefits case from arbitrary and capricious to de novo; instead, courts must weigh the conflict as "a factor in determining whether there is an abuse of discretion." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995) (quoting Firestone Tire, 489 U.S. at 115) (internal alterations omitted); see also

McCauley, 551 F.3d at 133. "The weight properly accorded [such a] conflict varies in direct proportion to the 'likelihood that the conflict affected the benefits decision.'" Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 139 (2d Cir. 2010) (quoting Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008)) (internal alterations omitted). Thus, "[t]he conflict should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision[.]" Id. Conversely, "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." Id. at 140 (citing Hobson, 574 F.3d at 83).

In this case, the court need not decide whether Aetna's conflict of interest provides a basis for dialing back deference under the arbitrary and capricious standard. As explained in greater detail below, even if the court were to assign no weight to Aetna's conflict, it would nonetheless conclude that there are issues of material fact as to whether Aetna acted arbitrarily and capriciously by denying TMS benefits during the Class Period. See infra at 19–26. Thus, for the limited purposes of deciding Aetna's Motion for Summary Judgment, the court assumes that Aetna's conflict of interest does not warrant any dialing back of deference under the arbitrary and capricious standard.

2.      Administrative Record

Meidl asks the court to consider testimony from an expert witness, Dr. Mark S. George, who is a TMS researcher and clinician. See Pl.'s Mem. at 13. Meidl offers this expert testimony to show that CPB 469 ignored or misread key evidence showing that TMS was an effective treatment of depression during the Class Period. Id. at 13, 14. Meidl also relies on Dr. George to show that Aetna's criteria for evaluating TMS' efficacy conflicted with the requirements of the class members' plans. Id. at 13.

Aetna objects to Dr. George's testimony on the grounds that it falls outside of the administrative record. See Defs.' Mem. at 26–27. In addition, if the court does consider Dr. George's testimony, Aetna offers rebuttal expert testimony through Dr. Stephen E. Hall. See generally Defendants' Exhibit 5 ("DX 5") (Doc. No. 156-3).

"The decision whether to consider evidence from outside the administrative record is within the discretion of the district court." Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003). However, under either the arbitrary and capricious standard or the de novo standard, "the presumption is that judicial review 'is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence.'" Id. (quoting DeFelice v. Am. Int'l Life Assurance Co. of N.Y., 112 F.3d 61, 67 (2d Cir.1997)); see also Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ., 819 F.3d 42, 60 (2d Cir. 2016). "The doctrine limiting review of ERISA claims to evidence before the plan administrator was developed to prevent federal courts from becoming substitute plan administrators and thus to serve ERISA's purpose of providing a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." Daniel v. UnumProvident Corp., 261 F. App'x 316, 318 (2d Cir. 2008) (internal quotation marks omitted). In line with this rationale, courts have declined to consider extra-record evidence that merely challenges the merits of the fiduciary's decision to deny benefits, but admitted extra-record evidence when they have concerns about the fairness and adequacy of the procedures used to develop the record. See, e.g., Zervos v. Verizon New York, Inc., 277 F.3d 635, 646–47 (2d Cir. 2002) (not finding good cause where the extra-record evidence "appears to be aimed at bolstering [the party's] legal position and not at

providing a fuller review of [the] claim"); Richard v. Fleet Fin. Grp. Inc. Ltd. Employee Benefits Plan, 367 F. App'x 230, 233 (2d Cir. 2010) (holding that extra-record evidence might be admissible to assist "procedural inquiries," but is not admissible to challenge the administrator's "substantive determination"); Tretola v. First Unum Life Ins. Co., No. 13 CIV. 231 PAE, 2014 WL 2815586, at *2 (S.D.N.Y. June 23, 2014) ("[T]he admission of extrinsic evidence is appropriate when 'the fairness of the ERISA appeals process cannot be established using only the record before the administrator.') (quoting DeFelice, 112 F.3d at 66); Wenger v. Prudential Ins. Co. of Am., No. 12 CIV. 1896 KBF, 2013 WL 5441760, at *4 (S.D.N.Y. Sept. 26, 2013) (admitting extra-record evidence because it was unrelated to the merits of the administrator's denial-of-benefits decision).

For example, the Second Circuit has found good cause for introducing extra-record evidence where there is a demonstrated conflict of interest and the procedures employed in arriving at the claim determination were flawed, see Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 294–95 (2d Cir.2004), or where the administrative record's incompleteness prevents the court from conducting a proper review of the administrator's decision, see Zervos, 277 F.3d at 646–47; Paese v. Hartford Life & Acc. Ins. Co., 449 F.3d 435, 441 (2d Cir. 2006). Likewise, district courts have admitted extra-record evidence relating to procedural issues, such as "the "parameters of the administrative record," Mitchell v. First Reliance Standard Life Ins. Co., 237 F.R.D. 50, 53 (S.D.N.Y. 2006) (internal quotation marks omitted); whether the administrator of the plan had a conflict of interest, see id.; or whether the procedures afforded to the plaintiff were sufficient, see Babino v. Gesualdi, 278 F. Supp. 3d 562, 586 (E.D.N.Y. 2017). In contrast, the Second Circuit has found that good cause did not exist where the

administrator "followed the steps in handling [the plaintiff's] application and appeal that it followed for any other insured[,]" Zervos, 277 F.3d at 647, or "where an insurer gave the claimant 'ample time to submit additional materials' and had already discussed the claimant's case with the two treating physicians whose testimony was to be introduced," Locher, 389 F.3d at 295 (quoting Muller, 341 F.3d at 125–26).

Meidl does not dispute that Dr. George's evidence lies outside of the administrative record. See Pl.'s Mem. at 13. Instead, he argues that there is good cause to consider this expert testimony because "Dr. George's evidence is relevant to a determination of whether Aetna acted reasonably." [2] Id. at 13–14. Specifically, Meidl claims that Dr. George's testimony will show that CPB 469 (1) improperly interpreted the scope of the experimental and investigational provisions in the class members' plans; (2) omitted evidence that is "important to an assessment of whether TMS was

_____

[2] Meidl advances two additional arguments in favor of the court's consideration of Dr. George's expert testimony, neither of which have merit.

First, Meidl appears to suggest that it was procedurally improper for Aetna to challenge the admissibility of Dr. George's evidence in its summary judgment briefing, and that Aetna should have instead raised this challenge in a motion to strike. See Pl.'s Mem. at 13. However, Rule 56(a)(4) of the Local Rules of Civil Procedure of the United States District Court of Connecticut was amended on May 4, 2017, to expressly prohibit "[m]otions to strike (a) statements made in a Rule 56(a) statement or (b) the supporting evidence[.]" Instead, "where a party believes that asserted facts are not supported by the evidence, or wishes to object that a fact cannot be presented in a form that would be admissible in evidence, the party should make those arguments in its summary judgment briefing, not as motions to strike." Chapco, Inc. v. Woodway USA, Inc., 282 F. Supp. 3d 472, 487–88 (D. Conn. 2017); see also Fed. R. Civ. P. 56 Advisory Committee's Note ("[T]here is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.").

Second, Meidl argues that the court's consideration of his breach-of-fiduciary-duty claims are not confined to the administrative record. See Pl.'s Mem. at 13. However, this argument is moot because the court has concluded that Meidl has only alleged a denial-of-benefits claim. See, supra, 10. As Meidl concedes, the court may only consider extra-record evidence of a denial-of-benefits claim upon a showing of good cause. See Pl.'s Mem. at 13; see also Halo, 819 F.3d at 60 ("[W]hen reviewing claim denials, whether under the arbitrary and capricious or de novo standards of review, district courts typically limit their review to the administrative record before the plan at the time it denied the claim.").

reasonably considered experimental and investigational during the class period"; (3) "misread the scientific evidence"; and (4) "did not result from a principled reasoning process[.]"[3] Id. As these proposed uses of Dr. George's testimony make clear, Meidl's purpose for introducing this expert evidence is to challenge the merits of Aetna's decision to deny TMS benefits. Dr. George's testimony does not assist the court in evaluating the fairness of Aetna's internal procedures for deciding TMS claims, as Dr. George conceded that he had no knowledge about Aetna's internal processes or deliberations. See DX 1 at 330:16–332:8. Although Meidl asserts that Aetna's analysis failed to consider important scientific studies, see Pl.'s Mem. at 20–22, he does not argue that the administrative record before the court is incomplete or otherwise inadequate for assessing the reasonableness of Aetna's decision, see id. at 13–14. Nor does Meidl argue that Aetna's procedures for handling claims prevented Meidl or other class members from bringing evidence to Aetna's attention during the internal appeals process. See id. Indeed, Meidl's administrative appeals record contains letters from Dr. Michelle Cochran that, like Dr. George's expert report, review the scientific literature on TMS' effectiveness in order to challenge CPB 469's classification of TMS as experimental and investigational. See DX 6 at 236–240; Corr. Am. Compl. at ¶ 37. Thus, not only did Meidl appear to have "ample time to submit additional materials," Muller, 341 F.3d at 125, but the administrative record already contains expert testimony

---

[3] In his Deposition, Dr. George admitted that he had no knowledge about Aetna's internal processes or deliberations in developing CPB 469. See Defendants' Exhibit 1 (Doc. No. 135) at 330:16–332:8. Thus, notwithstanding Meidl's claim that Dr. George's testimony will show that CPB 469 "did not result from a principled reasoning process," Pl.'s Mem. at 13, this testimony only goes to the merits of Aetna's decision to classify TMS as experimental and investigational. It does not shed light on the process by which Aetna arrived at that decision.

similar to that of Dr. George, see DX 6 at 236–240.  As a result, Meidl's purported

reasons for offering Dr. George's testimony do not provide a good-cause basis for

admitting this extra-record evidence.  See Ramsteck v. Aetna Life Ins. Co., No. 08-CV-

0012(JFB)(ETB), 2009 WL 1796999, at *8 (E.D.N.Y. June 24, 2009) (excluding extra-

record testimony offered solely to refute the reasonableness of the plan administrator's

decision).[4]

The court is not persuaded otherwise by the two district court cases that Meidl

cites in his Opposition brief.  See Pl.'s Mem. at 14.  First, Meidl references Reittinger v.

Verizon Communications Inc., No. CIV.1:05CV1487(FJS/R), 2006 WL 3327676

(N.D.N.Y. Nov. 15, 2006), for the proposition that "federal district courts have permitted

discovery in ERISA cases to assist the courts in determining whether the plan

administrator's decision was based upon a consideration of the relevant factors and

whether there has been a clear error of judgment."  Pl.'s Mem. at 14.  However,

Reittinger makes clear that such extra-record review is only appropriate upon a showing

of good cause.  Reittinger, 2006 WL 3327676, at *3.  "Consistent with a recognition that

evidence outside the administrative record may be considered in a de novo or an

arbitrary and capricious review upon good cause shown, federal district courts have

permitted discovery in ERISA cases to assist the courts in determining whether the plan

administrator's or fiduciary's decision was based upon a consideration of the relevant

_____

[4] Meidl does not argue that Aetna's conflicted role as payor and evaluator provides a basis for the good cause exception.  See Pl.'s Mem. at 13–14 (arguing for the good cause exception on the grounds that Dr. George's testimony will help the court determine "whether Aetna acted reasonably").  It is worth noting, however, that "a conflicted administrator does not per se constitute good cause," Locher, 389 F.3d at 296, and that Meidl bears the affirmative burden of establishing that a conflict of interest warrants expansion of the administrative record, see Krizek v. Cigna Grp. Ins., 345 F.3d 91, 97–98 (2d Cir. 2003).

factors and whether there has been a clear error of judgment." Id. (emphasis added and internal quotation marks omitted). As such, this case does not help litigants who, like Meidl, fail to make such a showing.

Meidl also cites to Zisel v. Prudential Ins. Co. of Am., 845 F. Supp. 949 (E.D.N.Y. 1994). Pl.'s Mem. at 14. In that case, the district court admitted extra-record expert medical testimony regarding the proper interpretation of the plaintiff's plan, even though the court was reviewing the administrator's denial of benefits for abuse of discretion. See Zisel, 845 F. Supp. at 952–53. However, just one year later, the Second Circuit in Miller v. United Welfare Fund rejected Zisel's broad approach to reviewing extra-record evidence under the arbitrary and capricious standard. See Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995). Specifically, the Miller court "follow[ed] the majority of our sister circuits in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record." Id. In arriving at this conclusion, the Second Circuit expressly declined to adopt the Fifth Circuit's "broader scope of review," which "allow[ed] district courts to look beyond the administrative record to review the administrator's plan interpretations." Id. Subsequently, district courts have consistently excluded extra-record testimony regarding plan interpretations in cases that apply the arbitrary and capricious standard. See, e.g., Anderson v. Sotheby's Inc. Severance Plan, No. 04 CIV. 8180(SAS)(DF), 2005 WL 1412965, at *1 (S.D.N.Y. June 13, 2005) (distinguishing between the arbitrary and capricious standard, under which "district courts may only consider the evidence that the fiduciaries themselves considered," and de novo review, under which "evidence regarding the proper interpretation of the terms of a plan . . . is generally admissible.");

Leccese v. Metro. Life Ins. Co., No. 05-CV-6345 CJS, 2007 WL 1101096, at *5 (W.D.N.Y. Apr. 12, 2007) (same).

Thus, the court will disregard the expert testimony from both Dr. George and Dr. Hall. However, the court will consider the deposition testimony of three Aetna administrators who were personally involved in the development and administration of CPB 469: (1) Dr. Robert McDonough, the head of Aetna's clinical policy unit; (2) Dr. Savio Cheng, a member of the clinical policy unit; and (3) Dr. Mark Friedlander, a member of Aetna's Clinical Policy Council and the company's lead behavioral health medical director. See Defs.' Mem. at 4–5. Although no party has challenged the admissibility of these three Depositions, the court notes that it may rely on testimony that describes the process by which plan administrators arrived at their determinations, including testimony about the types of evidence that administrators considered when denying a claim. See Zervos, 277 F.3d at 646–47 (disregarding extra-record testimony from defendant's medical experts, but relying on the testimony from defendant's medical policy director that explained how defendant determined that a treatment was experimental and investigational); Black v. Bowes, No. 05 CIV. 108 (GEL), 2006 WL 3771097, at *6 (S.D.N.Y. Dec. 21, 2006) (testimony from plan administrators is admissible if it "help[s] show what evidence the administrators reviewed"). Other than these three depositions, the court will limit its review to the administrative record, which "properly consists of the evidence before the entity that decided the claim when that decision was rendered." Pruter v. Local 210's Pension Tr. Fund, 858 F.3d 753, 762 (2d Cir. 2017) (internal quotation marks omitted).

       3.    Merits

Based on a careful consideration of the administrative record and the testimony

of Dr. McDonough, Dr. Cheng, and Dr. Friedlander, the court concludes that there are several issues of material fact as to whether Aetna's denial of TMS benefits was based on an arbitrary and capricious interpretation of the class members' plans.

In determining whether a plan administrator properly interpreted plan documents, courts "construe ERISA plans according to federal common law, and interpret them in an ordinary and popular sense as would a person of average intelligence and experience." Pepe v. Newspaper & Mail Deliveries'-Publishers' Pension Fund, 559 F.3d 140, 146–47 (2d Cir. 2009) (internal citations and quotation marks omitted). Under the arbitrary and capricious standard, deference must be given to an administrator's reasonable interpretation of ambiguous plan language, i.e., "language that is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." See Pagan, 52 F.3d at 443. However, "[e]ven when trustees of a pension plan are entitled to deference in interpreting the terms of the plan, deference cannot be so broad as to permit them to graft additional requirements onto unambiguous plan definitions." Zervos, 277 F.3d at 647 (quoting Gallo v. Madera, 136 F.3d 326, 330 (2d Cir.1998)). Thus, "[w]here the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." Gallo, 136 F.3d at 330–31.

In this case, there is an issue of material fact as to whether Aetna inserted new terms into the class members' plans by requiring evidence that TMS was more effective than alternative treatments for depression that were covered by Aetna during the Class

Period ("covered alternative treatments").  As noted above, the plans expressly classify a treatment as experimental and investigational if it satisfies any of the following criteria (the "Plan Criteria"):

(1) The treatment is "[n]ot approved by the US Food and Drug Administration (FDA) to be lawfully marketed for the proposed use";

(2) There are "insufficient outcomes data from controlled trials published in peer-reviewed literature to substantiate its safety and effectiveness for the illness or injury involved";

(3) The treatment is "[s]ubject to review and approval by any institutional review board for the proposed use"; or

(4) The treatment is "[t]he subject of an ongoing clinical trial that meets the definition of a Phase 1, 2 or 3 clinical trial set forth in the FDA regulations, regardless of whether the trial is actually subject to FDA oversight."

See, supra, at 2.  While the second Plan Criterion requires evidence of a treatment's "effectiveness," none of the Plan Criteria expressly require evidence of a treatment's superior effectiveness.  Nor would it be reasonable for Aetna to read a superior effectiveness requirement into the Plan Criteria.  As the Second Circuit made clear in Zervos, an ERISA administrator acts arbitrarily and capriciously when he "require[s] that a treatment be superior to another existing treatment in order to avoid exclusion under the policy's experimental/investigational language while the language itself requires only that the treatment be effective—not more effective than alternatives[.]"  Zervos, 277 F.3d at 647.

In this case, Meidl comes forward with evidence to suggest that Aetna used a superior effectiveness standard to classify TMS as experimental and investigational during the Class Period.  For example, when describing Aetna's definition of experimental and investigational, Dr. McDonough testified:

> [T]he relevant question is not whether it has an effect compared to, a measureable effect compared to a sham, but really are health outcomes improved compared to, or do you have evidence that would lead us to conclude that it is [sic] <u>better</u> outcomes that would <u>compare</u> to what is the standard of care treatment for the condition[.]

Plaintiff's Exhibit 4 ("PX 4") (Doc. No. 161-2) at 112:25–113:9 (emphasis added).  Later in his Deposition, Dr. McDonough stated that Aetna's "working operative definition" of experimental and investigational was whether "there's evidence for a clinically significant improvement in health outcome compared to standard alternatives."  <u>Id.</u> at 157:10–19.  Admittedly, it is not clear from this testimony whether Aetna required evidence that a treatment was <u>more</u> effective than covered alternative treatments, or whether Aetna merely required evidence that a treatment was <u>as</u> effective as covered alternative treatments.  A fact finder could reasonably draw either inference from Dr. McDonough's statements.  Thus, resolving all ambiguities in favor of the non-moving party, the court concludes that there is an issue of fact as to whether Aetna acted arbitrarily and capriciously by imposing a superior effectiveness standard that was not found in the class members' plans.  <u>See</u> <u>Island Software & Computer Serv., Inc. v. Microsoft Corp.</u>, 413 F.3d 257, 264 (2d Cir. 2005) (stressing that all inferences must be drawn in favor of the non-moving party at the summary judgment stage, even when the better inference supports the movant's position).

Apart from whether Aetna imposed a superior effectiveness requirement on TMS, there are issues of fact as to whether Aetna acted arbitrarily and capriciously by denying TMS benefits on the basis of criteria found in Aetna's Clinical Policy Council Charter (the "Charter Criteria").  This Charter is an internal document that provides guidance to Aetna's Clinical Policy Council, the entity responsible for reviewing and approving CPB

469.  Defs.' L.R. 56(a)1 at ¶ 4; Pl.'s L.R. 56(a)2 at ¶ 4; <u>see generally</u> Plaintiff's Exhibit 28 ("PX 28") (Doc. No. 161-21) (the Charter).  The Charter directs the Clinical Policy Council to consider whether the following five criteria are met when "determining whether a medical technology is medically necessary and established":

> (1) The technology must have final approval from the appropriate governmental regulatory bodies.
>
> (2) The scientific evidence must permit conclusions concerning the effect of the technology on health outcomes.
>
> (3) The technology must improve the net health outcome.
>
> (4) The technology must be as beneficial as any established alternatives.
>
> (5) The improvement must be attainable outside the investigational settings.

PX 28 at 57661–62.  The Charter lists additional considerations under each of the five Charter Criteria.  <u>Id.</u>  For example, under the fourth Charter Criterion, the Charter states that "[t]he technology must be no more costly (taking into account all health expenses incurred in connection with the technology) than any equally effective established alternative."  <u>Id.</u>  Likewise, under the fifth Charter Criterion, the Charter states that "the technology should be reasonably expected to satisfy the above listed criteria" – the first four Charter Criteria and their subparts – when the technology is "used under the usual conditions of medical practice."  <u>Id.</u> at 57662.

A cursory comparison of the Charter Criteria and Plan Criteria confirms that no reasonable reader could equate the two.  Giving the language of the plans its ordinary and popular meaning, <u>Pepe</u>, 559 F.3d at 146–47, no person of average intelligence and experience would interpret the Plan Criteria as authorizing Aetna to classify treatments as experimental and investigational when they cost more than covered alternative

treatments. The Plan Criteria make no reference to a treatment's costs, and no one would reasonably conflate a treatment's cost effectiveness with its medical effectiveness.

Likewise, the Charter's broad requirement that a treatment's benefits be attainable when "used under the usual conditions of medical practice" has no basis in the text of the Plan Criteria, which carefully limits the exclusion of experimental and investigational treatments to treatments that (1) lack evidence of their medical effectiveness, (2) are not approved by the FDA for their proposed use, (3) are subject to review and approval by an institutional review board, or (4) are the subject of ongoing clinical trials that meet the definition of a Phase 1, 2 or 3 clinical trial set forth in the FDA regulations. See, supra, at 2. These differences between the Plan Criteria and Charter Criteria are no less substantial than the types of deviations from a plan's language that courts in this Circuit have routinely found to be arbitrary and capricious. See, e.g., Zervos, 277 F.3d at 647 (requiring evidence of a treatment's superior effectiveness was arbitrary and capricious when the plan only required evidence of a treatment's effectiveness); Kekis v. Blue Cross & Blue Shield of Utica-Watertown, Inc., 815 F. Supp. 571, 579 (N.D.N.Y. 1993) (applying the dictionary definition of experimental and investigative was arbitrary and capricious when the plan set forth specific definitions of both); Kulakowski v. Rochester Hosp. Serv. Corp., 779 F. Supp. 710, 716 (W.D.N.Y. 1991) (excluding "investigational" treatments was arbitrary and capricious because the plan only expressly excluded "experimental" treatments).

Meidl therefore raises an issue of material fact when he offers evidence suggesting that Aetna developed CPB 469 using Charter Criteria, including those

criteria not found in the Plan Criteria. For example, Dr. McDonough testified that Aetna "consider[s] the standard plan definition, <u>as well as</u> the criteria in our charter" when creating a CPB. PX 4 at 158:7–12 (emphasis added). A reasonable fact finder could infer from this testimony that Aetna develops CPBs using Charter Criteria that are distinct from those included in the "standard plan definition."

Such an inference is also supported by the testimony of Dr. Cheng, who admitted that all five of the Charter Criteria must be satisfied for Aetna to conclude that a technology is "established," <u>i.e.</u>, to conclude that the treatment "has been shown by strong scientific evidence that it is safe and effective for therapeutic purposes." Plaintiff's Exhibit 3 ("PX 3") (Doc. No. 161-1) at 66:20–67:13. As noted above, there is no basis in the language of the plans to conclude that all of the Charter Criteria are included in the Plan Criteria. <u>See</u>, <u>supra</u>, at 23–24. Notably, Dr. Cheng also testified that he did not consult the plans themselves when developing and updating CPB 469, <u>see</u> <u>id.</u> at 66:16–19, but instead relied on the Charter Criteria for his definition of experimental and investigational, <u>see</u> <u>id.</u> at 59:23–60:9. Dr. Friedlander likewise stated that the Charter "lays out a number of factors that the Council has to consider" when Aetna determines whether a treatment is experimental and investigational, although he did not specify which factors in particular must be considered. Plaintiff's Exhibit 5 ("PX 5") (Doc. No. 161-3) at 35: 10–18. However, if all ambiguities are resolved in Meidl's favor, as they must be at this stage, this statement provides additional evidence from which a reasonable fact finder could infer that Aetna considered Charter Criteria that were not found in the Plan Criteria when developing CPB 469. Taken together, this testimonial evidence is sufficient to raise an issue of material fact as to whether Aetna

acted arbitrarily and capriciously by denying TMS benefits on the basis of requirements not found in the class members' plans.

      B.    <u>Injunctive Relief</u>

Aetna also argues that summary judgment is warranted on a class wide basis because Meidl has not satisfied the legal requirements for the relief being sought by the TMS Class. <u>See</u> Defs.' Mem. at 34. Specifically, the court certified the TMS Class to seek an order requiring Aetna to reprocess class members' TMS claims. <u>See</u> Class Certification Ruling at 6, 52. In doing so, the court classified Meidl's requested reprocessing order as a form of retrospective injunctive relief. <u>Id.</u> at 7. In light of this Ruling, Aetna argues that the TMS Class must satisfy the traditional four-factor test for injunctive relief, as set forth by the Supreme Court in <u>eBay Inc. v. MercExchange</u>, L.L.C., 547 U.S. 388 (2006). <u>See</u> Defs.' Mem. at 34. Under this test, a plaintiff must "demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." <u>See</u> <u>eBay</u>, 547 U.S. at 391.

Aetna, however, misreads the case law. Where a plan administrator is found to have arbitrarily and capriciously denied benefits in violation of section 1132(a)(1), the Second Circuit has directed courts to return the claim to the administrator for reconsideration unless there is no possible evidence that could support a denial of benefits. <u>See</u> <u>Miles</u>, 720 F.3d at 490 ("[R]emand for reconsideration [is] required 'unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a useless formality[.]'") (quoting <u>Miller</u>, 72 F.3d at

1071).  Notwithstanding the fact that a reprocessing order is a form of retrospective injunctive relief, the Second Circuit has never suggested that a plaintiff must meet eBay's traditional four-factor test for injunctive relief in order to secure a reprocessing order under section 1132(a)(1).  See id. (remanding the claim to the administrator, without making any reference to the traditional elements of injunctive relief); Miller, 72 F.3d at 1073–74 (same).  Accordingly, district courts in this Circuit have routinely issued reprocessing orders under section 1132(a)(1) without inquiring into whether the plaintiff satisfies the traditional elements for injunctive relief.  E.g., Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan, 217 F. Supp. 3d 608, 635 (N.D.N.Y. 2016); Benjamin v. Oxford Health Ins., Inc., No. 3:16-CV-00408 (CSH), 2018 WL 3489588, at *9 (D. Conn. July 19, 2018).

Nor does the case law cited in Aetna's briefs provide the court with any basis for deviating from this "usual practice."  Durgin v. Blue Cross & Blue Shield of Vermont, 353 F. App'x 538, 540 (2d Cir. 2009).  In support of its position, Aetna points to cases in which the plaintiff sought equitable relief under section 1132(a)(3).  See Defs.' Mem. at 34–35 (citing, inter alia, Nechis v. Oxford Health Plans, Inc., 421 F.3d 96 (2d Cir. 2005)).  These cases, however, are unpersuasive, as the Supreme Court has expressly limited equitable relief under section 1132(a)(3) to "those remedies 'that were typically available in equity.'"  Nechis, 421 F.3d at 103 (quoting Great–West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002)).  Neither the Supreme Court nor the Second Circuit has placed such limitations on injunctive relief sought under section 1132(a)(1).

Aetna also cites to the Supreme Court's decision in eBay for the proposition that the traditional elements for injunctive relief "apply in all cases seeking an injunction."

Defs.' Mem. at 35.  Aetna, however, overstates the holding in eBay.  The eBay court did not state that the traditional four-factor test applies whenever a party seeks injunctive relief under any statute.  See eBay, 547 U.S. at 390 (holding only that "this traditional test applies to disputes arising under the Patent Act").  Rather, it concluded on the basis of a statutory construction of the Patent Act that the four-factor test applies to cases seeking injunctive relief under the Patent Act.  See id. at 391–92.  Nothing in the court's opinion suggests that this holding extends beyond patent cases, much less to ERISA cases brought pursuant to section 1132(a)(1).  Indeed, Aetna does not cite to a single case in which a court relied on eBay's four-factor test for injunctive relief when determining whether to issue a reprocessing order under section 1132(a)(1).  The court's own independent searches have similarly failed to identify any such cases.  As a result, there is no basis for granting summary judgment on the grounds that the TMS Class failed to satisfy the traditional elements for injunctive relief.

C.    Class Segments

Finally, Aetna argues that it is entitled to summary judgment as to two segments of the TMS Class, namely: (1) class members who received "off label" TMS, and (2) class members whose claims are time barred by the contractual limitations provisions in their ERISA plans.  See Defs.' Mem. at 36.  In response, Meidl argues that this court's earlier decision to certify the TMS Class precludes Aetna from seeking summary judgment as to subsets of the TMS Class.  See Pl.'s Mem. at 31.  Meidl reasons that, because the court previously decided that individualized differences between class members did not provide a basis for denying class certification, Aetna cannot use summary judgment to exclude particular members from the TMS Class on the basis of their individual circumstances.  See id.  Meidl argues that, if Aetna wishes to modify the

TMS Class by excluding particular segments of class members, it should do so through Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure, not through a motion for summary judgment.  See id.; Fed. R. Civ. Proc. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

Class certification, however, does not prevent or otherwise limit Aetna's ability to raise individualized defenses against particular class members at later stages in the litigation.  The Rules Enabling Act, 28 U.S.C. § 2072(b), "forbids interpreting Rule 23 to abridge, enlarge or modify any substantive right."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 367 (2011).  Accordingly, class actions "neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights."  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 408 (2010) (plurality opinion).  Instead, they function merely as a procedural vehicle for aggregating and processing claims created by substantive law.  See Shady Grove, 559 U.S. at 408 ("A class action . . . merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits . . . [and] it leaves the parties' legal rights and duties intact and the rules of decision unchanged."); Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 488 (2d Cir. 2013) (observing that Rule 23 cannot create substantive rights, but rather serves as an "ancillary class action procedural mechanism").  Because Rule 23 does not "giv[e] plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action," class actions may not be used to deprive defendants of their rights to litigate individual defenses against individual members of a certified class. Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1048 (2016); see also Wal-Mart, 564 U.S. at 367 ("[A] class cannot be certified on the premise that [the defendant] will

not be entitled to litigate its statutory defenses to individual claims."). For this reason, district courts have taken care to address the merits of individualized defenses directed towards particular class members, including those defenses raised at summary judgment. See, e.g., Umbriac v. Am. Snacks, Inc., 388 F. Supp. 265, 273 (E.D. Pa. 1975) (observing that it is appropriate to address individualized defenses based on class members' statute of limitations through "motions to dismiss, motions for summary judgment, or . . . at trial"); Pierce v. Visteon Corp., 843 F. Supp. 2d 936, 944 (S.D. Ind. 2011) (granting summary judgment as to a subset of class members whose claims were barred by a separation agreement). Therefore, the court will address each of Aetna's two individualized defenses below.

1.  "Off Label" TMS

First, Aetna argues that summary judgment is warranted as to certain class members who received "off label" TMS, i.e., whose use of TMS was not approved by the FDA. See Defs.' Mem. at 36–37. Specifically, Aetna argues that, from 2008 until 2014, the FDA did not approve TMS for patients with multiple previous treatment failures, that is, patients whose depression had not improved after trying multiple other antidepressant medications. See id. at 37–38; Defs.' L.R. 56(a)1 at ¶¶ 21, 23. Because it is undisputed that a treatment's lack of FDA approval provides an independent basis for classifying that treatment as experimental and investigational under the class members' plans, Pl.'s Mem. at 4; Defs.' Mem. at 36–37, Aetna argues that the court should grant summary judgment as to all class members who received off label TMS, Defs.' Mem. at 36. Aetna reasons that, even if CPB 469 were found to be arbitrary and capricious, these class members would be denied TMS coverage based on their plans' exclusion of treatments that lack FDA approval. Id. at 36–37.

Aetna's argument, however, merely advances a post hoc rationalization of its

denial benefits that provides no basis for granting summary judgment. When

determining whether there is an issue of material fact as to whether an administrator's

denial of benefits was arbitrary and capricious, courts look to the reasons provided by

the administrator at the time of the denial. See Karanda v. Connecticut Gen. Life Ins.

Co., 158 F. Supp. 2d 192, 199 n.4 (D. Conn. 2000). ERISA cases strongly warn against

deferring to an administrator's post hoc rationale for a denial of benefits. See, e.g.,

Short v. Cent. States, Se. & Sw. Areas Pension Fund, 729 F.2d 567, 575 (8th Cir. 1984)

("A post hoc attempt to furnish a rationale for a denial of pension benefits in order to

avoid reversal on appeal, and thus meaningful review, diminishes the integrity of the

Fund and its administrators."); Gill v. Bausch & Lomb Supplemental Ret. Income Plan I,

1 F. Supp. 3d 72, 93 (W.D.N.Y. 2014) ("Courts look with disfavor upon such post-hoc

rationalizations."), aff'd, 594 F. App'x 696 (2d Cir. 2014). As the Sixth Circuit has

explained, it is "problematic to, on the one hand, recognize an administrator's discretion

to interpret a plan by applying a deferential 'arbitrary and capricious' standard of review,

yet, on the other hand, allow the administrator to 'shore up' a decision after-the-fact by

testifying as to the 'true' basis for the decision after the matter is in litigation, possible

deficiencies in the decision are identified, and an attorney is consulted to defend the

decision by developing creative post hoc arguments that can survive deferential review."

Univ. Hosps. v. Emerson Elec. Co., 202 F.3d 839, 848-49 n.7 (6th Cir.2000). When

courts consider post hoc rationalizations, they "depart from the administrative record . . .

[in a way that] invites more terse and conclusory decisions from plan administrators,

leaving room for [the administrators]—or, worse yet, federal judges—to brainstorm and

invent various proposed 'rational bases' when [the administrators'] decisions are challenged in ensuing litigation." Id.; see also Skretvedt v. E.I. DuPont de Nemours & Co., 268 F.3d 167, 177 n.8 (3d Cir. 2001) (agreeing with "the policy concerns" identified by Sixth Circuit in University Hospitals of Cleveland v. Emerson Electric Company, 202 F.3d 839 (6th Cir.2000)). To guard against such concerns, courts have routinely declined to consider justifications for a denial of benefits that have no basis in the administrative record and that are raised for the first time during litigation. See, e.g., Durgin, 353 F. App'x at 541 n.3; Lanoue v. Prudential Ins. Co. of Am., No. 307CV1756JBA, 2009 WL 3157548, at *10 (D. Conn. Mar. 20, 2009), report and recommendation adopted, No. 307CV1756JBA, 2009 WL 3157545 (D. Conn. Sept. 25, 2009).

The administrative record in this case contains no evidence suggesting that TMS' lack of FDA approval was the basis for Aetna's denial of TMS coverage to any members of the TMS Class. As the court noted earlier in its Class Certification Ruling, the record shows that Aetna uniformly denied TMS benefits to class members on the basis CPB 469. See Class Certification Ruling at 21 ("[T]he defendants fail to draw the court's attention to any denials of coverage for a putative class member's TMS treatment as experimental or investigational not based on CPB 469[.]"). In its Motion for Summary Judgment, Aetna has not come forward with contemporaneous evidence suggesting that lack of FDA approval was an alternative basis for it decision to deny TMS benefits to some members of the TMS Class. See Defs.' Mem. at 36–39. Nor could a fact finder reasonably conclude from reading CPB 469 that lack of FDA approval was a basis for CPB 469's classification of TMS as experimental and investigational. As Aetna itself

notes, CPB 469 expressly based its designation of TMS as experimental and investigational on the finding that TMS' "value and effectiveness had not been established through reliable clinical research." Defs.' Mem. at 1. CPB 469 does not even hint at the possibility that TMS was classified as experimental and investigational due to lack of FDA approval. See, e.g., DX 14 at 1060 (noting only that the FDA's clearance of TMS was based on methodologically questionable evidence of TMS' effectiveness); DX 15 at 1037 (same); DX 19 at 686–687 (same). Therefore, there is no basis in the administrative record for concluding that Aetna denied TMS benefits to some members of the TMS Class because their particular use of TMS was not approved by the FDA.

### 2. Contractual Limitations Periods

Aetna also argues that summary judgment is warranted as to "all claims barred by contractual limitations periods contained in the relevant ERISA plans." Defs.' Mem. at 39. Although ERISA does not specify a statute of limitations for denial-of-benefits actions, ERISA plans often contain contractual limitations provisions that establish the period of time within which a claimant may file suit in court to challenge a denial of benefits. See Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 104–05 (2013). These provisions are enforceable, so long as the contractual limitations period is reasonable and no controlling statute dictates otherwise. See id. at 105–06.

Aetna, however, has not come forward with sufficient evidence to warrant granting its request for summary judgment as to all class members with time barred claims. As support for its request, Aetna offers the claim histories and contractual limitations provisions of three class members to illustrate, by way of example, the existence of time barred claims in the TMS Class. Defs.' L.R. 56(a)1 at ¶¶ 37, 38; Defs.'

Mem. at 39. This three-person sample, however, provides no basis for concluding that class members who are not represented in the sample are time barred by their plans' contractual limitations provisions. Instead, this sample reveals that different plans impose different contractual limitations periods. <u>Compare</u> Defendants' Exhibit 58 ("DX 58") (Doc. No. 136-18) at 1525 ("Any civil action must be filed within two years after the date of the decision on the last available level of appeal[.]") <u>with</u> Defendants' Exhibit 59 ("DX 59") (Doc. No. 136-19) at 1967 ("No legal action can be brought to recover under any benefit after 3 years from the deadline for filing claims."). It further shows that different class members applied for TMS benefits at different times during the Class Period. <u>Compare</u> DX 59 at 691 (requested TMS coverage in 2012) <u>with</u> Defendants' Exhibit 60 ("DX 60") (Doc. No. 136-20) at 701 (requested TMS coverage in 2011).

In light of this variation, individualized proof is required to determine whether a particular class member's claim is barred by the contractual limitations provisions of his or her particular plan. The court may not rely on the claim history and plan provisions of one class member to determine whether another class member's claim is time barred. Doing so would contravene the Rules Enabling Act by "giving plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action." <u>Tyson Foods</u>, 136 S. Ct. at 1048.

As a result, there is no basis in the record for granting Aetna's request for summary judgment as to all time barred claims. If Aetna decides to raise this affirmative defense again at later stages of the litigation, it must come forward with individualized evidence as to each class member whose claim is allegedly time barred.

The court will now address whether summary judgment is warranted as to the

three class members for whom Aetna has offered individualized evidence relating to the timeliness of their suits.  For simplicity, the court refers to these members as class members 1, 2, and 3.  For the following reasons, the court concludes that there are issues of material fact as to whether each of these three class members are time barred by the contractual limitations provisions of their plans.

Class member 1's plan requires that "[a]ny civil action must be filed within two years after the date of the decision on the last available level of appeal."  DX 58 at 1525.  If, however, class member 1 files a timely voluntary appeal with either "the Medical Plan's voluntary external review program," her company's "Benefits Department," or both, the contractual limitations period is tolled from the submission of the voluntary appeal until "the date a decision is issued" on the voluntary appeal.  Id. at 1525–26.

As proof that class member 1's suit is time barred, Aetna offers a report produced by a reviewer for the external review program who reviewed class member 1's voluntary appeal of her denial of TMS benefits.  See Defs.' Mem. at 39–40 (citing DX 58 at 588–90).  Because the report is dated January 16, 2012, Aetna argues that class member 1's two-year limitations period expired no later than January 16, 2014, more than 19 months before this class action was filed.  Id. at 39–40; see also DX 58 at 588 (dated January 16, 2012).

However, the external reviewer's report did not issue a decision denying class member 1's voluntary appeal.  While the report recommends that class member 1's "health plan should not cover the proposed treatment[,]" DX 58 at 588, it does not expressly state that the class member's voluntary appeal has been denied.  Resolving

all ambiguities in favor of the non-moving party, a fact finder could reasonably conclude that the report did not terminate class member 1's voluntary appeal for tolling purposes because the report did not issue a decision denying class member 1's voluntary appeal. Rather, read in a light most favorable to class member 1, it recommended non-coverage to the plan administrator.

This conclusion is bolstered by evidence in the record relating to class members 2 and 3's voluntary appeals. Like class member 1, class members 2 and 3 have reports from external reviewers that evaluate whether their claims for TMS benefits are covered by their respective plans. See DX 59 at 692–93; DX 60 at 702–05. However, these two class members also have "Decision Notification" documents that expressly codified the external review program's determination that their voluntary appeals had been denied. See DX 59 at 691 ("Appeal determination: Health plan denial coverage: Upheld"); DX 60 at 701 (same). On the basis of this evidence, a fact finder could reasonably infer that the Decision Notification, rather than the report, constitutes the final decision denying a claimant's voluntary appeal. Thus, there is an issue of fact as to whether the date on the external review report for class member 1 is the date on which her voluntary appeal was denied for tolling purposes. Accordingly, there is an issue of fact as to when class member 1's contractual limitations period expired.

The court also concludes that summary judgment is not warranted as to class members 2 and 3, both of whom share similar contractual limitations provisions. Class member 2's plan bars him from filing a suit after three years and 90 days from "the date of the loss causing the claim." See DX 59 at 1967 (stating that no legal action can be brought after 3 years from the deadline for filing a claim); id. at 1968 (defining the

deadline for filing a claim as 90 days after the date of the loss causing the claim). Class member 3's plan similarly bars her from filing a suit after three years and 90 days from "the date of the loss." See DX 60 at 1717 (stating that no legal action can be brought after 3 years from the deadline for filing a claim); id. at 1721 (defining the deadline for filing a claim as 90 days after the date of the loss).

As evidence that class members 2 and 3 are time barred from participating in the TMS Class, Aetna points to documents in these members' appeals records that list the members' "[d]ate[s] of the requested service" for TMS. See Defs.' Mem. at 40 n.28 (citing DX 59 at 690–93, DX 60 at 701). Because each member's date of requested service ended more than three years and 90 days before the filing of this class action, Aetna argues that class members 2 and 3's suits are precluded by their contractual limitations provisions. See id.

However, Aetna provides no evidence that "the date of the requested service" referred to in these appeals records is the same as "the date of the loss" or "the date of the loss causing the claim" referred to in the class members' plans. The plan excerpts that Aetna has offered for the court's review do not provide a definition of "the date of the loss causing the claim" or "the date of the loss," much less a definition that equates these two with "the date of the requested service." Moreover, it would be reasonable to conclude on the basis of the record that "the date of the requested service" refers to a different date than "the date of the loss causing the claim" or "the date of the loss." For example, a fact finder could reasonably conclude that the "date of the loss causing the claim" refers to the date on which the claimant paid for a treatment, while "the date of the requested service" refers to the date on which the claimant received a treatment or

the date on which the claimant requested coverage of the service.  Thus, drawing all inferences in favor of the non-moving party, the court concludes that there is an issue of fact as to whether the "date of the requested service" is different from "the date of the loss causing the claim" and "the date of the loss."  Accordingly, the record does not provide a basis for concluding that there is no issue of material fact as to whether class members 2 and 3 are time barred.

## V.    CONCLUSION

For the foregoing reasons, Aetna's Motion for Summary Judgment (Doc. No. 132) is **DENIED**.

**SO ORDERED**.

Dated this 11th day of October 2018 at New Haven, Connecticut.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge