UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER MEIDL, on his own behalf and on behalf of the certified class | : | CIVIL ACTION NO. |
| | : | 3:15 CV 01319 (JCH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AETNA INC., *et al.*, | : | FEBRUARY 15, 2019 |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

TABLE OF CONTENTS

Page

I.   BACKGROUND ................................................................................................. 2

    A.   Factual Summary, Class Certification, and Denial of Summary Judgment ........... 2

    B.   Settlement Conference and Negotiations ................................................................ 3

II.  DESCRIPTION OF THE SETTLEMENT ..................................................... 4

    A.   The Settlement Payment and Plan of Allocation. ................................................... 4

    B.   Release of Certain Claims against Aetna. ............................................................... 6

    C.   Other Provisions ...................................................................................................... 6

        1.   Notice to the Class. ........................................................................................ 6

        2.   Incentive award for named Plaintiff. ............................................................. 7

        3.   Attorneys' fees and expenses. ........................................................................ 7

III. THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR
     PRELIMINARY APPROVAL ......................................................................... 7

    A.   Legal Standard for Preliminary Approval ............................................................... 7

    B.   The Proposed Settlement Satisfies the Standard for Preliminary Approval. ......... 10

        1.   The Class representative and Class Counsel have adequately
           represented the Class ...................................................................................... 10

        2.   The Settlement was negotiated at arm's length. ........................................... 11

        3.   The relief provided for the Class is adequate. .............................................. 12

           a.   The recovery for the Class is exceptional. .................................... 13

           b.   Costs, risks, and delay of trial and appeal. .................................... 14

           c.   The proposed Plan of Allocation is fair and adequate. .................. 15

           d.   Proposed award of attorneys' fees and expenses. .......................... 15

        4.   The Settlement treats Class members equitably relative to each
           other. .............................................................................................................. 16

IV.  THE NOTICE PLAN SATISFIES RULE 23 ................................................ 16

V.   PROPOSED SCHEDULE ............................................................................... 17

VI.  CONCLUSION ................................................................................................. 18

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bourlas v. Davis Law Assocs.*,
　237 F.R.D. 345 (E.D.N.Y. 2006) ............................................................ 9

*Boyd v. Coventry Health Care Inc.*,
　299 F.R.D. 451 (D. Md. 2014) ............................................................ 13

*City of Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*
　*Goldberger v. Integrated Res., Inc.*,
　209 F.3d 43 (2d Cir. 2000) ............................................................ 10

*D'Amato v. Deutsche Bank*,
　236 F.3d 78 (2d Cir. 2001) ............................................................ 9

*In re Fremont Corp. Litig.*,
　No. 07-2693 (C.D. Cal. Aug. 10, 2011) ............................................................ 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
　No. 05-MD-1720, 2019 WL 359981 (E.D.N.Y. Jan. 28, 2019) ......................................... 8, 10

*In re Platinum & Palladium Commodities Litig.*,
　No. 10-CV-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ............................................ 8

*In re Syncor ERISA Litig.*,
　No. 03-2446 (C.D. Cal. Oct. 22, 2008) ............................................................ 13

*In re WorldCom, Inc. ERISA Litig.*,
　No. 02 Civ. 4816(DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ................................... 13

*In re WorldCom, Inc. Secs. Litig.*,
　388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................ 15

*Karic v. Major Auto. Cos.*,
　No. 09 CV 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ................................... 15

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
　No. 3:15-cv-1113 (VAB), 2016 WL 10033380 (D. Conn. July 12, 2016) ........................... 9, 16

*Macedonia Church v. Lancaster Hotel, LP*,
　No. 05–0153 (TLM), 2011 WL 2360138 (D. Conn. June 9, 2011) .................................... 7

*McReynolds v. Richards–Cantave*,
　588 F.3d 790 (2d Cir. 2009) ............................................................ 9

*Mehling v. N.Y. Life Ins. Co.*,
　248 F.R.D. 455 (E.D. Pa. 2008) ............................................................ 14

*Menkes v. Stolt-Nielsen S.A.*,
　270 F.R.D. 80 (D. Conn. 2010) ............................................................ 9

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002).................................................................. 14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)..................................................................... 9

*Williams v. Rohm & Haas Pension Plan*,
   658 F.3d 629 (7th Cir. 2011).................................................................. 14

**STATUTES**

29 U.S.C. 1102....................................................................................... 2

**OTHER AUTHORITIES**

*Manual for Complex Litig.* (Fourth) § 21.632–34 (2004)........................... 7

**RULES**

Fed. R. Civ. P. 23.......................................................................... 8, 10, 12, 16

Plaintiff Christopher Meidl, individually and on behalf of the certified class (the "Class"), respectfully seeks preliminary approval of the proposed class action settlement (the "Settlement") with Defendants Aetna Inc. and Aetna Life Insurance Co. ("Defendants," "Aetna Defendants" or "Aetna") and an order that Plaintiff notify the Class about the Settlement. The Settlement, if approved, will provide significant monetary relief to people in health plans administered by Aetna who were denied insurance coverage for transcranial magnetic stimulation ("TMS") as a treatment for major depression from September 2009 to July 2016.

The proposed Settlement would create a $6.2 million common fund. The Class's total billed charges for denied TMS claims are in the range of $6.5 million according to Aetna's records. The fact that the Settlement will allow Class members to recover substantial amounts on these claims without any need for reprocessing, coupled with Aetna's 2016 decision, in the middle of this litigation, to no longer uniformly consider TMS experimental and investigational, is a tremendous victory for the Class. That is because even if Plaintiffs were to prevail at trial and on appeal, Class members' claims for insurance coverage would be subject to reprocessing by Aetna, meaning that some claims would likely be denied again. And based on Aetna's claim records, even those claims that Aetna agreed to cover would be reimbursed at substantially less than billed charges. Under the Settlement and proposed Plan of Allocation, all Class members will receive significant monetary relief to address the allegedly improper claim and coverage denials, and Plaintiff currently estimates that those who paid out-of-pocket for TMS will be eligible to receive about 70% of what they likely would have received upon successful reprocessing. Given the risks of litigation and the time value of money, the Settlement is an extremely favorable one for the Class.

For the reasons presented herein, the proposed Settlement easily satisfies the standards for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure.

I.      BACKGROUND

     A.      **Factual Summary, Class Certification, and Denial of Summary Judgment**

From September 3, 2009 to July 29, 2016 (the "Class Period"), Aetna denied Class members' claims for coverage of TMS to treat major depression. Aetna claimed that TMS fell under the provision in each of those Class member's plans excluding coverage for experimental and investigational treatments. Aetna's exclusion decisions all rested on a categorical policy, Clinical Policy Bulletin 469 ("CPB 469"), that Aetna developed and uniformly applied to all TMS claims. In every iteration of CPB 469 in effect during the Class Period, Aetna stated that TMS for depression was experimental and investigational. On July 29, 2016, in the midst of this litigation, Aetna changed CPB 469 to cover TMS for the first time.[1]

The Class alleges that during the Class Period, Aetna violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1102, et seq., by (i) violating its fiduciary duties of prudence and loyalty in the development and maintenance of CPB 469 (Count One), and (ii) wrongfully denying claims for TMS benefits (Count Two) pursuant to CPB 469. The Class seeks injunctive and equitable relief, including an order that Aetna reprocess the requests for TMS coverage that it denied. At the outset of the case Plaintiff also sought to require Aetna to change its policy of uniformly rejecting coverage for TMS, a change Aetna made during the course of the litigation.

---

[1] The revised policy of TMS that Aetna promulgated on July 29, 2016, and any claims that might arise concerning that revised policy, are not at issue in this litigation and the Settlement does not concern or address them.

After class-related discovery, Plaintiff moved for class certification. In May 2017, the Court granted the motion, certifying the following class under Rule 23(b)(1) and (b)(2):

> [A]ll participants or beneficiaries in Aetna Plans administered by Aetna (or any of its operating divisions) who, from September 3, 2009, to July 29, 2016, were denied health insurance coverage for TMS for the treatment of major depression using one of the codes for Experimental, Investigational, or Unproven Services. The TMS Class includes both persons whose post-service claims for reimbursement were denied and persons whose pre-service requests that Aetna confirm coverage for TMS were denied.

Dkt. 114 at 52. The Court also appointed Zuckerman Spaeder LLP and Psych-Appeal, Inc. as counsel for the Class ("Class Counsel"). *Id.*

The parties proceeded to conduct discovery on the merits of Plaintiff's claims. After extensive briefing and argument, in October 2018, the Court denied Aetna's motion for summary judgment. Dkt. 169. The Court set the case for trial to begin on March 11, 2019.

### B.    Settlement Conference and Negotiations

The Court also directed the parties to participate in a pre-trial settlement conference mediated by Magistrate Judge Merriam. Dkt. 180. In advance of the settlement conference, Aetna provided Class Counsel with information about the size and composition of the Class for the entire Class Period, and the parties engaged in arms-length settlement discussions and exchanged settlement demands. Declaration of Andrew N. Goldfarb in Supp. of Mot. for Prelim. Approval ¶ 5 (Exhibit C hereto). On January 10, 2019, after an all-day settlement conference with Judge Merriam, the parties reached an agreement in principle. *Id.* ¶ 6. On January 17, 2019, the parties executed a term sheet. They then proceeded to negotiate the Settlement Agreement that is the basis for this motion. *Id.* ¶ 7. The Settlement Agreement is attached as Exhibit A hereto.

During the drafting and negotiations of the Settlement Agreement, Aetna provided Class Counsel with extensive data about the size and composition of the Class for the full Class Period. The data included all of the codes that Aetna used when it denied requests for coverage or benefits for TMS for major depression on the grounds that TMS was Experimental, Investigational, or Unproven. In addition, Aetna provided Class Counsel with claim data documenting each Class member's claims for TMS and/or requests for pre-authorization and the billed charges for TMS for each Class member who filed a post-service claim for benefits. This information allowed Plaintiff to confirm the information that underlies the terms of the Settlement, evaluate the risks of continuing to litigate and the benefits of the proposed Settlement, and confirm Plaintiff's conclusion that the Settlement is a reasonable and favorable one for the Class. *Id.* ¶¶ 6, 14.

## II.      DESCRIPTION OF THE SETTLEMENT

The proposed Settlement has two major components: (1) payment by Aetna of a $6.2 million "Settlement Amount," and (2) a release of certain claims against Aetna related to TMS.

### A.      The Settlement Payment and Plan of Allocation.

Under the Settlement Agreement, Aetna will pay the Settlement Amount of $6.2 million (*see* Settlement Agreement § 1.18) into an account administered by a third-party administrator approved by the Court (the "Settlement Administrator"). Within 30 days after preliminary approval, Aetna will pay $150,000 of the Settlement Amount to contribute to the costs of notice. *Id.* § 2.7. The rest of the Settlement Amount will be paid within 30 days after the Effective Date of the Settlement. *Id.* § 2.8.

The Settlement Fund will consist of the Settlement Amount, less notice costs, any named plaintiff incentive award, and attorneys' fees and expenses approved by the Court. *Id.* § 1.19.

The Settlement Administrator will distribute the Settlement Fund to members of the Class according to the Plan of Allocation attached as Exhibit B to this Motion. *Id.* § 2.11.

The Plan of Allocation provides payment to all Class members. Class members will receive either the greater of (i) a fixed minimum amount, which Plaintiff expects to be approximately $1,500, and (ii) a proportional share of the Settlement Fund based on their "Recognized Loss." Exhibit B. The Plan of Allocation methodology is designed to provide real monetary relief for all Class members for the injury common to every member of the Class—the categorical denial of TMS coverage, whether a denial of a pre-authorization coverage request or a post-service claim for benefits. In addition, all Class members who paid out of pocket for TMS will be eligible to receive a pro rata share of the billed charges for their denied TMS claims when that pro rata share exceeds the Minimum Amount. As part of the notice plan, Class members will receive a sheet that states the total amount that Aetna's records show they were billed for all TMS that they received during the Class Period. Class members who think they paid more for TMS during the Class Period than Aetna's records show will be able to submit evidence to the Settlement Administrator showing the total amount they paid for TMS during the Class Period.

Plaintiff requests that the Court appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq") to serve as the Settlement Administrator to oversee and implement the provision of Notice to the Class and to administer the Settlement in accordance with the Settlement and Plan of Allocation. Epiq has significant experience serving as the administrator of class action settlements, including cases that require the maintenance, handling, and protection of protected health information ("PHI"). *See* Goldfarb Decl. ¶ 13.

**B.     Release of Certain Claims against Aetna.**

Upon the Effective Date of the Settlement, the Class members will release Aetna (and related entities) from Released Claims (Settlement Agreement § 2.16), which are defined in part as:

> [A]ny and all past, present and future claims, actions, causes of action, rights or liabilities, costs, expenses, losses, debts, or claims, regardless of forum, contingent or non-contingent, accrued or unaccrued, known or unknown, arising out of or related to: (i) a denial of health insurance coverage for TMS for the treatment of major depression (including any requests associated with a diagnosis of major depression, even if there were also other non-depression diagnoses) during the Class Period, including post-service claims for reimbursement and pre-service requests that Aetna confirm coverage; or (ii) any challenge to the development or application of any iteration of CPB 469 in effect prior to July 29, 2016.

*Id.* § 1.16.

**C.     Other Provisions.**

In addition to the foregoing, the proposed Settlement also contains the following provisions:

1.     <u>Notice to the Class.</u> Section 2.4 of the Settlement Agreement provides for the Settlement Administrator to send out the "Notice of Proposed Settlement of Class Action and Fairness Hearing" ("Notice of Settlement") to members of the Class within 60 days after the Preliminary Approval Order is entered by the Court. The proposed Notice of Settlement is attached as Exhibit B to the Settlement Agreement. Aetna will provide the Settlement Administrator the names and last known addresses of the Class members. The Settlement and proposed preliminary approval order contain specific provisions regarding the handling of this information, to ensure compliance with HIPAA and state privacy laws. The Settlement Administrator will use its best efforts to locate and notify Class members. As further described

-6-

*infra* Section IV, notice will occur principally by first-class U.S. Mail and a follow-up mailed notice, supported by a Settlement website, and dedicated telephonic support.

Under Section 2.5, if the Court preliminarily approves the Settlement, members of the Class will have the opportunity to opt-out of the Settlement. The Notice of Settlement explains the opt-out and objection procedures and includes an opt-out form. Ex. B to Settlement Agreement. To be valid, a mailed opt-out form must be postmarked within 40 days after the Notice of Settlement is issued. An objection must be received by the Court within 40 days after the Notice of Settlement is issued.

        2.    <u>Incentive award for named Plaintiff.</u> The Settlement Agreement provides that Plaintiff and Class Counsel shall file a motion requesting that the Court approve an incentive award for the named Plaintiff of $20,000, to reflect his important contributions to this case. Settlement Agreement §§ 1.10, 3.8.

        3.    <u>Attorneys' fees and expenses.</u> Class Counsel will be paid their expenses and a portion of the Settlement Amount as their attorneys' fees in the amounts approved by the Court. Attorneys' fees will be at most 33.3% of the Settlement Amount. *Id.* §§ 2.9, 3.8.

## III.    THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

### A.    Legal Standard for Preliminary Approval.

Judicial review of proposed class settlements has three phases. First, the Court determines whether the proposed settlement deserves preliminary approval. If so, class members then receive notice describing the settlement. Thereafter, the Court decides whether to grant final approval. *See Macedonia Church v. Lancaster Hotel, LP*, No. 05–0153 (TLM), 2011 WL 2360138, at *9-10 (D. Conn. June 9, 2011) (citing *Manual for Complex Litig.* (Fourth) § 21.632–34 (2004)).

Under the revised Rule 23 in effect as of December 2018, the Court should order that notice be given to the Class if the parties show that the Court will likely be able to approve the proposed Settlement as "fair, reasonable, and adequate" under the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B)(i). The Rule 23(e)(2) factors are whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

   (i)   the costs, risks, and delay of trial and appeal;

   (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

However, because the notice, opt-out, and objection process will provide additional important information about the Settlement, "at the preliminary approval stage . . . 'it is not necessary to exhaustively consider the factors applicable to final approval.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 359981, at \*14 n.24 (E.D.N.Y. Jan. 28, 2019) (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2014 WL 3500655, at \*12 (S.D.N.Y. July 15, 2014)).

The identification of factors governing approval of a class settlement in the revised Rule 23 is not intended to displace factors that the Circuits have used to assess settlements, but rather "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment (Subdivision (e)(2)). Consistent with the Rule 23(e)(2)

factors, the Second Circuit "determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citations omitted). In the Second Circuit, courts have granted preliminary approval of a class action settlement "where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval . . . ." *See Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 3:15-cv-1113 (VAB), 2016 WL 10033380, at *4 (D. Conn. July 12, 2016) (quoting *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006)). Indeed, there is a presumption of fairness when the settlement resulted from arm's-length negotiations and plaintiffs' counsel has the necessary experience and ability, and has engaged in the discovery, necessary to effective representation of the class's interests. *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010) (citing *McReynolds v. Richards–Cantave*, 588 F.3d 790, 803 (2d Cir. 2009)). The Second Circuit has a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation omitted).[2]

---

[2] The factors that courts in the Second Circuit have applied to determine whether a settlement is fair, reasonable, and adequate are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

(Continued…)

**B.      The Proposed Settlement Satisfies the Standard for Preliminary Approval.**

As shown below, the Settlement easily satisfies the factors set out in Rule 23(e)(2). Accordingly, the Court will likely be able to approve the Settlement as fair, reasonable, and adequate. The Court should preliminarily approve the Settlement and order that notice be given to the Class.

> 1.     The Class representative and Class Counsel have adequately represented the Class.

The Court is likely to find that both the Class representative and Class Counsel have adequately represented the Class, contributing substantially to the favorable outcome reflected in the Settlement.

Class Representative. In certifying the Class, the Court found that Mr. Meidl's claims were typical of those of other Class members and that his interests were aligned with those of the Class members. Dkt. 114 at 25-34. Mr. Meidl has been a diligent, attentive, and unwavering advocate for the interests of the Class throughout the case. Indeed, cases about mental health treatment cannot succeed without individuals like Mr. Meidl, who willingly cast a light on his own serious depression to help others. Mr. Meidl publicly disclosed highly private, personal information to vindicate the rights of all persons situated similarly to him. He demonstrated extraordinary courage to serve as the named plaintiff and has made it possible to obtain substantial relief for the Class. Mr. Meidl dedicated hundreds of hours to the case. He closely followed case developments throughout the case; prepared for and gave a full-day deposition;

---

*See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). A district court recently suggested that "there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C-D) factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 359981, at *13.

met in-person with Class Counsel to discuss litigation and trial strategy; conferred with Class Counsel in advance of key submissions and hearings; and attended key events in the case, including the successful settlement conference on January 10, at which he advocated effectively for the Class. *See* Goldfarb Decl. ¶ 15.

Class Counsel. In the class certification decision, the Court also appointed Zuckerman Spaeder LLP and Psych-Appeal, Inc. as Class Counsel, finding them "qualified, experienced and able to conduct the litigation." Dkt. 114 at 35. After securing certification of the Class, Class Counsel continued to pursue final relief for the Class. Class Counsel engaged in fact and expert discovery concerning the merits of the case, uncovering evidence that was sufficient to defeat Defendants' summary judgment motion and that, in Plaintiff's view, put Plaintiff in a strong position to prevail at trial. Plaintiff's success at class certification and then summary judgment positioned the case to resolve by a negotiated resolution.

2.     The Settlement was negotiated at arm's length.

The parties reached agreement on a proposed resolution of the case after three years of hard-fought litigation, followed by three months of arms-length negotiations during which both sides had information that enabled them to evaluate the strengths and weaknesses of their respective cases. The parties were meaningfully aided in their negotiations by Judge Merriam, who gave structure to those discussions and then presided over the January 10, 2019 settlement conference. That daylong mediation culminated in an agreement-in-principle, which led the parties to negotiate first a term sheet, then the Settlement Agreement.

Plaintiff was well informed during this process. During class certification discovery in 2016, Aetna produced claim data about its decisions on requests for TMS coverage (both post-service claims and pre-authorization requests) covering about half of the Class Period. From that limited data set, Plaintiff was able to estimate the membership and characteristics of the Class to

support his motion for class certification. As a condition of settlement, however, Plaintiff demanded additional updated data about the size and characteristics of the Class covering the entire Class Period. In response to Plaintiff's inquiries, Aetna provided multiple rounds and multiple categories of claim and preauthorization data to support the Parties' best efforts to identify all Class members. Plaintiff analyzed the data thoroughly to make sure that the Settlement Amount appropriately reflected the size and scope of the Class. Goldfarb Decl. ¶ 9. Through this extensive process and data exchange, the Parties reached agreement on the parameters used to identity Class members in Aetna's data.[3] Only thereafter did Plaintiff agree to the Settlement Agreement.

### 3. The relief provided for the Class is adequate.

The Court is likely to find that the relief obtained for the Class easily satisfies the "adequacy" standard in Rule 23(e)(2), taking into account the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and the equal treatment of all Class members. Fed. R. Civ. P. 23(e)(2)(C).

As noted above, Plaintiff brought this case with two main objectives: a change in Aetna's policy of categorically denying coverage for TMS for major depression, and a mechanism by

---

[3] As part of his class certification motion in 2016, Plaintiff had identified particular codes and explanations that Aetna used to deny coverage for TMS on the grounds that TMS was experimental, investigational, or unproven. During settlement negotiations, the parties conducted a careful analysis of denial codes throughout the broader data sets produced by Aetna as part of confirmatory discovery, so that the Settlement could include all of the relevant denials of TMS as Experimental, Investigational, or Unproven Services for the entire Class Period. Class members whose claims were denied pursuant to any of the applicable codes or explanations will receive the Notice and be eligible for compensation from the Settlement Fund. *Id.* ¶ 10.

which class members could obtain insurance benefits for TMS received during the Class Period. With respect to the first objective, Aetna changed its TMS policy in July 2016—about ten months into the litigation—to cover TMS for major depression in certain circumstances. The Settlement achieves the second objective by ensuring significant monetary relief to all Class members now (rather than after additional years of litigation and appeals) and without the risk that the sought remedy (reprocessing) could result in the denial of coverage for many Class members.

### a.    The recovery for the Class is exceptional.

The Settlement provides extraordinary monetary relief for the Class. It recovers $6.2 million on insurance claims where the total billed amount reflected in Aetna's records is in the range of $6.5 million. Goldfarb Decl. ¶ 11. Aetna's records show that if all those claims had been deemed covered by Aetna in the first place, Aetna would have paid substantially less than the billed amount—reflecting reductions under plan payment schedules, co-pays, deductibles, and co-insurance obligations. Indeed, even after deduction of the requested Incentive Award, attorneys' fees, and notice costs, Plaintiff estimates that Class members who receive pro rata distributions are likely to receive approximately 70% of what they likely would have received if their claims were all deemed covered. *Id.* ¶ 12. The recovery far exceeds approved recoveries of other approved ERISA class action settlements. *See, e.g., In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816(DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (7% of maximum damages); *In re Syncor ERISA Litig.*, No. 03-2446, Dkt. 309 (C.D. Cal. Oct. 22, 2008) & Dkt. 300 at 9 (8.7% of maximum damages); *In re Fremont Corp. Litig.*, No. 07-2693, Dkt. 277 at 10 & Dkt. 286 (C.D. Cal. Aug. 10, 2011) (10.8% of maximum losses); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (3.2% of maximum damages, with an average of $180 per class member); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir.

2011) (24.3% of maximum damages); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery).

b.   <u>Costs, risks, and delay of trial and appeal.</u>

Although Plaintiff believes he would have a strong chance of prevailing at trial and on any subsequent appeals, the Class would face both procedural and substantive obstacles to obtain the reprocessing remedy sought. First, Plaintiff would have had to prevail at trial. Aetna would have sought to narrow or de-certify the Class, and would assert a slew of merits defenses, such as evidence to support the reasonableness of its TMS policy. Assuming a decision for Plaintiff on liability, the parties would then litigate the precise form of the reprocessing remedy, including the medical necessity standard Aetna would apply when reprocessing the claims. Plaintiff would also have to defeat Aetna's likely post-trial appeals, which would likely include attempts to decertify the Class and to reverse any judgment or remedy ordered by the Court. Thus, Plaintiff estimates it would take eighteen months to two years to obtain a final judgment. Only thereafter would Aetna likely begin reprocessing Class members' claims. And while reprocessing would remedy Aetna's alleged ERISA violations, it is also likely that Aetna would again deny coverage and benefits to many Class members. Those Class members would face the prospect of more administrative ERISA appeals and new litigation to challenge those new denials.

Resolution by the Settlement eliminates the risk that the litigation could end unsuccessfully, with no recovery for the Class. It also gives the Class the benefit of the time value of a sum clearly determined by the Plan of Allocation. By receiving money sooner, Class Members can earn interest on, invest, or spend the money, rather than being forced to wait until resolution of the litigation, which could take two more years, to receive an amount that might well be less. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

-14-

At the same time, the scope of the release is fair to both parties. In consideration for the substantial benefits to Class members, the Settlement will allow Aetna to eliminate legal risks arising from or relating to its TMS policy in effect during the Class Period (except from those who opt out of the Settlement).

c.    <u>The proposed Plan of Allocation is fair and adequate.</u>

A plan of allocation must be fair and adequate. However, it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Secs. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citations omitted).

The Court will likely find this factor satisfied because the proposed Plan of Allocation will fairly and efficiently distribute the Settlement Fund to the Class. As described *supra*, all Class members will receive a significant minimum payment as a remedy for the CPB 469-based denial of TMS coverage that they suffered. In addition, Class members who paid the most out-of-pocket will receive a pro rata share of the Settlement Fund that is greater than the minimum payment. Class members who believe they should receive a greater amount will be able to submit evidence to the Settlement Administrator to support their claim for a larger share.

d.    <u>Proposed award of attorneys' fees and expenses.</u>

In light of the favorable settlement for the Class and Plaintiff's success in the course of the litigation, the Court is likely to find Plaintiff's request that Class Counsel receive an award of 33.3% of the Settlement Amount to be fair, reasonable, and adequate. *E.g.*, *Karic v. Major Auto. Cos.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016). Under the proposed schedule, Plaintiff will file, well in advance of the deadline for opt-outs and objections, a motion supporting the request to award Class Counsel their attorneys' fees and expenses. Class members will be able to evaluate the fee and expense request when deciding whether to participate in or object to the Settlement.

-15-

4.     The Settlement treats Class members equitably relative to each other.

The Settlement Agreement does not improperly grant preferential treatment to the named Plaintiff or segments of the Class. The proposed Plan of Allocation provides for distribution to Class members based on a fair and reasonable allocation formula that applies to every Class member, including the named Plaintiff, and minimizes administrative costs.

For the reasons discussed *supra*, Mr. Meidl has earned the proposed incentive award to reflect his important contribution to the successful resolution of this case. *See Kemp-DeLisser*, 2016 WL 6542707, at \*18. As part of the motion for attorneys' fees and expenses, Plaintiff will support the reasonableness of the proposed incentive award.[4]

## IV.     THE NOTICE PLAN SATISFIES RULE 23

Rule 23(e)(1)(B) requires that the Court direct that notice be given to class members who would be bound by the Settlement "in a reasonable manner." For classes certified under Rule 23(b)(1) or (b)(2), notice must be "appropriate." Fed. R. Civ. P. 23(c)(2)(A).

The notice plan proposed by Plaintiff satisfies Rule 23. Aetna will provide a "Class List" to the Settlement Administrator with the names and addresses of the members of the Class. Settlement Agreement § 2.3. The Settlement Administrator will send the Notice of Proposed Settlement directly to the persons on the Class List via first class mail, followed by a reminder notice midway through the notice period. *Id.* § 2.4. As described *supra*, each Class member will also receive individualized information about the Class member's total amount of TMS billings and total amount of denied post-service claims reflected in Aetna's records, so that the person can understand the relief they are likely to receive, and make an informed decision about how to

---

[4] In the motion for final approval of the Settlement, Plaintiff will address any of the other *Grinnell* factors not otherwise addressed in substance here, such as the reaction of the Class to the Settlement.

proceed. The Notice materials will provide Class members the address for a Settlement website, which will contain the same information provided in the Notice of Proposed Settlement, including information and instructions about opting out of the Class or objecting to the Settlement, as well as other case documents and claim forms.[5]

## V.      PROPOSED SCHEDULE

Plaintiff proposes the following schedule for the period leading up to the fairness hearing at which the Court will consider whether to grant final approval to the proposed Settlement.

| DATE | EVENT |
|---|---|
| Day 1 | Order entered granting preliminary approval |
| Day 60 | Last day to provide Class notice |
| Day 79 | Plaintiff files request for attorneys' fees and expenses and incentive award for class representative |
| Day 100 | Last day for Class members to opt out or object to Settlement |
| Day 114 | Last day for Plaintiff to file a motion for final approval of the Settlement and to respond to objections |
| Day 125 or after | Final settlement approval hearing |

---

[5] For people on the Class List whose mailed Notice is returned as undeliverable, the Settlement Administrator will use its best efforts to locate updated addresses and send the Notice to such persons at their new addresses.

## VI.    CONCLUSION

For the foregoing reasons, the Court should: (i) grant preliminary approval to the proposed Settlement Agreement; (ii) approve the proposed schedule concerning notice, opt-out, and objection deadlines; (iii) appoint Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; and (iv) set a hearing for final approval of the Settlement. A proposed order is attached as Exhibit A to the Settlement Agreement.

Respectfully submitted,

Dated:      February 15, 2019

ZUCKERMAN SPAEDER LLP

By:   /s/ Andrew N. Goldfarb

Andrew N. Goldfarb (Bar. No. 235615)
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel:    (202) 778-1800
Fax:    (202) 822-8106
*agoldfarb@zuckerman.com*

Meiram Bendat (Bar No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard
Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
*mbendat@psych-appeal.com*

D. Brian Hufford (*pro hac vice*)
Jason S. Cowart (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
*dbhufford@zuckerman.com*
*jcowart@zuckerman.com*

*Attorneys for Plaintiff Christopher Meidl and the Class*