UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER MEIDL, on his own behalf and on behalf of all others similarly situated, | : : : | CIVIL ACTION NO. 3:15 CV 01319 (JCH) |
| Plaintiff, | : : | |
| v. | : : : | |
| AETNA INC., and AETNA LIFE INSURANCE COMPANY, | : : : | |
| Defendants. | : | |

### SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement" or "Settlement"), dated as of February 15, 2019, is made and entered into by and among Plaintiff Christopher Meidl ("Plaintiff") and the members of the certified class (the "Class"; together, "Plaintiffs"); and Defendants Aetna Inc. and Aetna Life Insurance Co. ("Defendants," "Aetna Defendants," or "Aetna") (with Plaintiff and Aetna Defendants collectively referred to herein as the "Parties").

## I.     BACKGROUND OF THE LITIGATION

In this lawsuit (the "Action"), Plaintiff claims, on behalf of the Class, that Aetna violated the Employee Retirement Income Security Act of 1974 ("ERISA") and breached the terms of employee welfare benefit plans by improperly denying coverage for Transcranial Magnetic Stimulation ("TMS") to treat major depression based on an Aetna coverage policy that found TMS to be an experimental, investigational, or unproven treatment. In the operative complaint, Plaintiff asserts claims for benefits under 29 U.S.C. § 1132(a)(1)(B) and claims for injunctive and other equitable relief under 29 U.S.C. § 1132(a)(3).

1

6732821.1

EXECUTION COPY

In May 2017, the Court granted Plaintiff's motion for class certification under Rule 23(b)(1) and (b)(2). Dkt. No. 114. In October 2018, the Court denied Aetna's motion for summary judgment. Dkt. No. 169. Aetna denies the material allegations of the complaint and denies that the Class is entitled to the benefits, injunctive relief, or other remedies it seeks.

After the Court's summary judgment decision, the Parties engaged in arms-length, good faith settlement discussions and exchanged settlement demands and offers. On January 10, 2019, after a day-long settlement conference with Magistrate Judge Merriam, the Parties reached an agreement in principle. On January 17, 2019, the Parties executed a term sheet. After Judge Merriam entered an order authorizing Aetna to provide Plaintiff with confirmatory information, Dkt. No. 201, Aetna provided Plaintiff with that additional information concerning the claims for TMS coverage made by Class members—both denied post-service claims and denied pre-authorization requests—and the percentage of billed charges paid by Aetna on paid TMS claims. Based on that confirmatory information, as well as the extensive discovery record in the Action, and the Parties' arms-length discussions, the Parties now enter the settlement embodied in this Settlement Agreement (the "Settlement"). The Parties are agreeing herein to settle, compromise, and fully resolve all Released Claims, in exchange for the consideration provided in this Settlement.

## II.      TERMS AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY AGREED by and among Plaintiffs and Aetna Defendants, by and through their respective counsel, as follows:

**A. Definitions.**

1. As used in this Settlement, the following terms have the meanings specified below:

1.1      "Affiliated Entities" means (i) any current, former, or future direct or indirect

2

6732821.1

EXECUTION COPY

parents, subsidiaries, or affiliates of Defendants; (ii) any employees, agents, representatives, contractors, administrators, officers or directors of Defendants or their direct or indirect parents, shareholders (all natural persons in the definition of Affiliated Entities are collectively referred to as "Affiliated Individuals"); (iii) any corporations in which any such Affiliated Entity or Affiliated Individual is a shareholder in excess of 5%, employee, officer or director; (iv) any partnerships or any other unincorporated forms of business, or limited liability companies, in which any Affiliated Entity or Affiliated Individual owns an interest in excess of 5%; (v) any employee welfare benefits plans (including any self-funded or insured plans) in which any Plaintiff or Class member participates or participated; (vi) any fiduciary, recordkeeper, claims administrator, plan sponsor, or plan administrator of such employee welfare benefits plans; (vii) any trusts of which any Affiliated Entity or Affiliated Individual is a grantor, trustee, or beneficiary; and (viii) any independent review organization that reviewed any claims for benefits or requests for coverage for TMS for any Class member. Affiliated Entities also means any corporations, business entities, partnerships or other unincorporated forms of business, or limited liability companies, that are controlled directly or indirectly by Defendants, Affiliated Entities, or Affiliated Individuals, or that are directly or indirectly under "common control" with Defendants, Affiliated Entities, or Affiliated Individuals as that term is defined under ERISA Section 4001(a)(14)(B), 29 U.S.C. § 1301(a)(14)(B).

1.2     "Class" means the class certified by the Court (Dkt. No. 114 at 52):

[A]ll participants or beneficiaries in Aetna Plans administered by Aetna (or any of its operating divisions) who, from September 3,

3

6732821.1

EXECUTION COPY

2009, to July 29, 2016, were denied health insurance coverage for TMS for the treatment of major depression using one of the codes for Experimental, Investigational, or Unproven Services. The TMS Class includes both persons whose post-service claims for reimbursement were denied and persons whose pre-service requests that Aetna confirm coverage for TMS were denied.

1.3    "Class Counsel" means D. Brian Hufford, Jason S. Cowart, and Andrew N. Goldfarb of Zuckerman Spaeder LLP and Meiram Bendat of Psych-Appeal, Inc.

1.4    "Class List" means the list of names and last known mailing addresses of all Class members whom Aetna Defendants are able to identify using their best efforts by twenty (20) days after the date on which the Preliminary Approval Order is entered by the Court.

1.5    "Class member" means a person who is a member of the Class, except that a member of the Class shall cease to be a Class member if that person submits a valid Opt-Out Form or is otherwise excluded from the Class by Order of the Court.

1.6    "Class Period" means the period from September 3, 2009 to July 29, 2016.

1.7    "Class representative" means Christopher Meidl.

1.8    "CPB 469" means Aetna's Clinical Policy Bulletin No. 469: Transcranial Magnetic Stimulation and Cranial Electrical Stimulation.

1.9    "Effective Date," or the date upon which the Settlement embodied in this Settlement becomes effective, means the date on which the Order of Final Approval of Settlement, substantially in the form of Exhibit C to this Settlement, becomes final as a matter of law (which the Parties hereby deem to be thirty-five (35) days after entry of the judgment if no appeal is filed). If an appeal is filed, the Effective Date shall be the date on which the final mandate is issued affirming the

6732821.1

EXECUTION COPY

judgment.

1.10   "Incentive Amount" means an award to the Class representative, to be paid out of

the Settlement Amount. Plaintiff intends to request an Incentive Amount of

twenty thousand dollars ($20,000).

1.11   "Individual Share" means the amount of the Settlement Fund allocated and paid to

each of the Class members, as determined by the Settlement Administrator in

accordance with the Plan of Allocation and settlement administration process

described in this Settlement.

1.12   "Notice of Proposed Settlement" means the Notice of Proposed Settlement of

Class Action and Fairness Hearing, substantially in the form attached hereto as

Exhibit B.

1.13   "Person" means an individual, corporation, partnership, limited partnership,

association, joint stock company, estate, legal representative, trust, unincorporated

organization, and any other type of legal entity, and their spouses, heirs,

successors, predecessors, representatives, or assigns.

1.14   "Plan of Allocation" means the Plan of Allocation to be proposed by Plaintiff and

approved by the Court.

1.15   "Preliminary Approval Order" means the order to be entered by the Court,

substantially in the form attached hereto as Exhibit A, that among other things

preliminarily approves the terms and conditions of this Settlement, directs that

notice of the proposed Settlement and Fairness Hearing be provided to the Class,

and schedules a Fairness Hearing concerning the final approval of the Settlement.

5

EXECUTION COPY

1.16    "Released Claims" means any and all past, present and future claims, actions,

causes of action, rights or liabilities, costs, expenses, losses, debts, or claims,

regardless of forum, contingent or non-contingent, accrued or unaccrued, known

or unknown, arising out of or related to: (i) a denial of health insurance coverage

for TMS for the treatment of major depression (including any requests associated

with a diagnosis of major depression, even if there were also other non-depression

diagnoses) during the Class Period, including post-service claims for

reimbursement and pre-service requests that Aetna confirm coverage; or (ii) any

challenge to the development or application of any iteration of CPB 469 in effect

prior to July 29, 2016. Released Claims include, but are not limited to, any and all

claims, actions, rights or causes of action arising under federal, state, or local

statutory or common law or mandate that were raised or could have been raised in

the Action concerning any statutory rights under ERISA or coverage for TMS

under the terms of an employee benefits plan insured or administered by Aetna

during the Class Period.

1.17    "Settlement Administrator" means the entity appointed by the Court to perform

the notice and settlement administration duties described in this Settlement as

overseen by Class Counsel. In the motion for preliminary approval, Plaintiff and

Class Counsel shall propose and recommend a Settlement Administrator to the

Court with experience handling cases that involve protected health information

("PHI"), as defined by 45 C.F.R. § 160.103 and applicable state laws.

1.18    "Settlement Amount" means six million two hundred thousand dollars

($6,200,000). The Parties agree that the Settlement Amount will be maintained

6732821.1

EXECUTION COPY

and held by the Settlement Administrator as a fund for purposes of making payments pursuant to an Order granting Final Approval to the Settlement and the Court-approved Plan of Allocation. The Parties agree that the Settlement Amount is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended and Treas. Reg. §1.468B-1, 26 C.F.R. § 1.468B-1, et seq., and will be administered by the Settlement Administrator as such. The Parties agree to cooperate with the Settlement Administrator and one another to the extent reasonably necessary to carry out the provisions of this section.

1.19   "Settlement Fund" means the amount of the Settlement Amount, after the deduction of Class Counsel's costs and attorneys' fees, the Settlement Administrator's expenses and fees, and the Incentive Amount.

## B.  Operative Terms of Settlement.

2.1   The Parties will work cooperatively in filing and submitting all appropriate motions and proposed orders with the Court in order to obtain preliminary and final approval of the Settlement.

2.2   Class Counsel will retain and oversee the Settlement Administrator appointed by the Court.

2.3   Within twenty (20) days after the Preliminary Approval Order is entered by the Court, Aetna will provide the Class List to the Settlement Administrator as authorized by the Court in that Preliminary Approval Order.

2.4   Within sixty (60) days after the Preliminary Approval Order is entered by the Court, the Settlement Administrator will, pursuant to this Settlement and the

7

6732821.1

EXECUTION COPY

Preliminary Approval Order, and under the supervision of Class Counsel, cause the individuals listed on the Class List to be notified either (i) by mailing the Notice of Proposed Settlement by first-class U.S. mail to each person's last known address as determined by the Settlement Administrator by "presorting" the addresses provided to the Settlement Administrator by Aetna, i.e., checking and updating those addresses using the National Change of Address database maintained by the United States Postal Service; or (ii) by providing the Notice of Proposed Settlement using another method that satisfies Rule 23. To the extent a Notice of Proposed Settlement sent by U.S. mail is returned because the addressee is no longer found at the address to which the notice was sent (or for any other reason), the Settlement Administrator will use its best efforts to obtain correct current addresses and thereafter remail the Notice of Proposed Settlement by first-class U.S. mail.

2.5     Should the Court grant preliminary approval to the Settlement, then the following provisions also apply:

     (a)     At such time as the Settlement Administrator causes the individuals listed on the Class List to be mailed the Notice of Proposed Settlement via U.S. mail or to receive the Notice of Proposed Settlement by another acceptable method under Rule 23 as required under Section 2.4, the Notice of Proposed Settlement will include the Opt-Out of Settlement Form ("Opt-Out Form"), as approved by the Court, to the Class.

     (b)     In order for a member of the Class to be excluded from the Class, the member of the Class must request exclusion by sending a complete,

6732821.1

EXECUTION COPY

signed, and valid Opt-Out Form to the Settlement Administrator at the address described in the Notice of Proposed Settlement, and the Opt-Out Form must be postmarked no later than forty (40) days after the Notice of Proposed Settlement is mailed or otherwise provided. With regard to any member of the Class who submits a timely and valid Opt-Out Form, that member of the Class shall be excluded from the Class, shall not be a Class member, and shall not be entitled to participate in the Settlement.

2.6     The Settlement Administrator will keep confidential from all persons, except as authorized in writing by a Class member or as ordered by the Court, the Class List and all other PHI of members of the Class, which includes names, addresses, and any other personally identifiable information that can be used on its own or combined with other information to identify, contact, or locate an individual, or to identify an individual in context. The Settlement Administrator shall maintain a unique member identifier system so that it can communicate with Class members, Class Counsel, Aetna, and Aetna's counsel to the extent needed to provide the necessary reports in Section 2.13 and to facilitate settlement administration.  Any permitted disclosures of Class member information under this Section or any other section of the Settlement shall be limited to the minimum necessary to satisfy the Settlement's requirements.  Class members who ask the Settlement Administrator for contact information for Class Counsel shall be provided such information and a form prepared by the Settlement Administrator through which the Class member can authorize the Settlement Administrator to share his or her identity and/or PHI with Class Counsel to assist in answering questions or in

6732821.1

EXECUTION COPY

facilitating the Settlement. Without limitation of the foregoing limitations and restrictions, Class Counsel will ensure that the Settlement Administrator executes an agreement substantially in the form of Exhibit A to the Discovery Confidentiality Order in the Action (D.E. 59), and all permitted disclosures of Class members' information under this Settlement shall be subject to the additional protections governing Confidential Health Information in that order. Within sixty (60) days after completion of all payments and related settlement administration by the Settlement Administrator, the Settlement Administrator shall destroy the Class List and any PHI related to this Settlement and provide a written certification of same to Class Counsel and Aetna's counsel.

2.7     Within thirty (30) days after the date of the Preliminary Approval Order, in consideration of the releases and dismissals under this Settlement, Aetna will pay $150,000 of the Settlement Amount (the "Initial Amount") into an account administered by the Settlement Administrator ("the Initial Amount Account"), subject to completion of necessary documentation, including W-9 forms. The Parties will cooperate to execute an appropriate escrow agreement for the Initial Amount Account within fifteen (15) days after execution of this Settlement. Should the Settlement not obtain final approval from the Court, the Initial Amount shall be returned within ten (10) court days, less amounts incurred by the Settlement Administrator after entry of the Preliminary Approval Order for Settlement administration activities, including notice costs.

2.8     Within thirty (30) days after the Effective Date, in consideration of the releases and dismissals under this Settlement, Aetna will pay the Settlement Amount less

6732821.1

EXECUTION COPY

the Initial Amount into the account administered by the Settlement Administrator, subject to completion of necessary documentation, including W-9 forms.

2.9     The Settlement Amount, after reduction for notice costs, will first be used to pay Class Counsel's costs and expenses. Class Counsel will then be paid the Court-approved portion of the remaining Settlement Amount as their attorneys' fees, which Class Counsel represents will be at most one-third of the Settlement Amount. The Class representative will then be paid the Incentive Amount in the amount approved by the Court. Class Counsel also will seek the Court's approval for payment of attorneys' fees immediately upon payment by Aetna of the Settlement Amount following the Effective Date, notwithstanding the existence of any collateral attack on the Settlement or any part thereof. In the event that, as the result of any successful collateral attack, the award of attorneys' fees or costs is reduced or reversed, Class Counsel shall make appropriate refunds or repayments to the Settlement Fund, plus interest actually accrued, within thirty (30) days of such reduction or reversal, which obligation shall survive the execution, delivery, and/or termination of this Settlement.  Aetna shall take no position on any of the applications discussed in this Section.  Any denial or modification by the Court of the payment amounts discussed in this Section shall not invalidate or result in termination of the Settlement.

2.10    Defendants shall have no liability or responsibility for any payments, fees, or costs under the Settlement aside from the Settlement Amount. Under no circumstances shall Defendants be required to pay any amounts in furtherance of

6732821.1

EXECUTION COPY

this Settlement and its administration other than the payment of the Settlement Amount.

2.11    The Settlement Administrator will, inter alia, administer the Settlement and make payments to the Class members pursuant to this Settlement, the Preliminary Approval Order, and the Order of Final Approval of Settlement (including the Plan of Allocation approved therein). Defendants shall play no role in, and will have no liability for, the administration of the Settlement or in determining the sufficiency of claims or the amount of claims under the Settlement.  The Settlement Administrator's responsibilities shall include all administrative, accounting, and tax compliance matters related to settlement payments and administration.

2.12    Expenses related to the administration of the Settlement and fees of the Settlement Administrator are to be paid from the Settlement Amount.

2.13    The Settlement Administrator will maintain a complete and accurate record of all payments or anticipated payments to Class members, as well as all valid Opt-Outs, using the unique identifier for each Class member discussed in Section 2.6, as well as all claims, preauthorization requests and particular health plans to which each such payment, anticipated payment, or Opt-Out relates, which shall be subject to examination by Class Counsel and Aetna's counsel on reasonable notice. At least seven (7) days prior to the filing of a motion for final approval, the Settlement Administrator will provide Aetna's counsel with a copy of the schedule of anticipated payments as it exists at that point in time. An updated

6732821.1

EXECUTION COPY

copy of this report will also be provided to Aetna and its counsel upon completion

of all payments under this Settlement.

2.14   Aetna agrees not to challenge any claims for payments from the Settlement Fund

by Class members, or any determinations made by the Settlement Administrator,

so long as they are made substantially in accordance with the Order of Final

Approval of Settlement (including the Plan of Allocation approved therein).

2.15   No Class member shall have any claim against Class Counsel, the Settlement

Administrator, Defendants' counsel, or Defendants or their Affiliated Entities

based upon any distribution made substantially in accordance with the Order of

Final Approval of Settlement (including the Plan of Allocation approved therein).

2.16   Upon the Effective Date, Class members, on their own behalf and on behalf of

any of his or her respective predecessors, successors, assigns, assignors,

representatives, attorneys, agents, trustees, insurers, heirs, estates, beneficiaries,

executors, administrators, and any natural, legal, or juridical person or entity to

the extent he, she, or it is or will be entitled to assert any claim on behalf of any

Class member (the "Releasing Parties"), will fully, finally, and forever release,

relinquish, and discharge all of the Defendants and their Affiliated Entities from,

and shall forever be enjoined from prosecution of Defendants and their Affiliated

Entities for, any and all Released Claims.

2.17   With regard to the release described above, Class members expressly

acknowledge certain principles of law applicable in some states, such as Section

1542 of the Civil Code of the State of California, which provide that a general

release does not extend to claims that a creditor does not know or suspect exists in

13

EXECUTION COPY

his or her favor at the time of executing the release, which if known by him or her

must have materially affected his or her settlement with the debtor. Class

members expressly waive all rights related to the Released Claims under Section

1542 of the Civil Code of the State of California, which reads as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE
> RELEASE, WHICH IF KNOWN BY HIM OR HER
> MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.**

Class members acknowledge that they may have claims that are covered by the

terms of the Settlement that they have not yet discovered. Class members

acknowledge that they intend to release any and all such known, unknown or

unsuspected Released Claims. Notwithstanding the choice of law provision in the

Settlement, to the extent that California or other law may be applicable and

enforceable, Class members hereby agree that the provisions of Section 1542 of

the Civil Code of the State of California and all similar federal or state laws,

rights, rules, or legal principles of any other jurisdiction that may be applicable

here are hereby knowingly and voluntarily waived and relinquished by Class

members, and Class members agree and acknowledge that this provision is an

essential term of the Settlement and this release.

2.18    If, prior to final approval of the Settlement and before the expiration of the

deadline for submitting an Opt-Out Form, a Class member initiates a separate

action raising one or more Released Claims, (i) Aetna shall provide a copy of the

Preliminary Approval Order to counsel for the plaintiff in such action; and (ii) the

6732821.1

EXECUTION COPY

plaintiff in such action shall within ten (10) days of receiving the Preliminary

Approval Order or the deadline for submitting a valid Opt-Out Form, whichever

is earlier, withdraw the complaint without prejudice or submit a valid Opt-Out

Form. Class Counsel agree to cooperate in good faith with the Aetna Defendants

as necessary to notify such Class member about this Action.

2.19    Plaintiff and Class Counsel shall not disparage Defendants in relation to the

Action or the subject matter thereof; nor shall Defendants as companies, or

employees of Defendants who were directly involved in defending the Action, or

Defendants' counsel, disparage Plaintiff or Class members in relation to the

Action or the subject matter thereof. Plaintiff and Class Counsel may discuss the

Settlement with Class members. Statements reflecting or referring to information

in the public record of the Action, and statements of the Parties or their counsel

that they are pleased that the matter has been resolved, shall not constitute

disparagement in violation of this paragraph.

2.20    Any change in law arising after the date of this filing will not be relied upon by

any party as a basis for refusing to carry out the terms of this Settlement.

2.21    Attached as Exhibit D to this Settlement are forms of notice under the Class

Action Fairness Act of 2005 ("CAFA Notices"). The Parties agree, subject to the

Court's approval, that Aetna shall mail the CAFA Notices within ten (10) days

after the Settlement is filed with the Court, and that upon mailing of the CAFA

Notices, Aetna will have complied with the notice requirements of CAFA.

6732821.1

EXECUTION COPY

**C. The Preliminary Approval Order.**

3.  After execution of this Settlement, the Parties shall request the Court to enter the Preliminary Approval Order, substantially in the form of Exhibit A to this Settlement, providing for, inter alia, preliminary approval of, notice of, and hearing on the proposed Settlement ("Fairness Hearing"). The Fairness Hearing shall occur at a date and time designated by the Court, but no sooner than one hundred twenty-five (125) days after the Preliminary Approval Order is entered by the Court (to account for the CAFA Notices and other interim steps described herein). The Preliminary Approval Order shall, inter alia, specifically include provisions that:

    3.1   Preliminarily approve the Settlement as set forth in this Settlement, subject to further hearing and determination under Rule 23(e);

    3.2   Approve the written Notice of Proposed Settlement substantially in the form of Exhibit B hereto;

    3.3   Appoint the Settlement Administrator;

    3.4   Authorize Aetna and its counsel to receive and to disclose information about Class members and their claims, including PHI necessary for settlement administration, to the Settlement Administrator and Class Counsel in order to effectuate notice and implement the Settlement;

    3.5   Direct the Settlement Administrator to issue the Notice of Proposed Settlement to the individuals listed on the Class List via mail or another method of notice that satisfies Rule 23;

    3.6   Find that the method of providing the Notice of Proposed Settlement pursuant to this Settlement constitutes the best notice practicable under the circumstances,

6732821.1

EXECUTION COPY

and that the Notice of Proposed Settlement fully satisfies the requirements of due process and the Federal Rules of Civil Procedure;

3.7    Prior to final approval of the Settlement and after the expiration of the deadline for submitting an Opt-Out Form, preliminarily enjoin Class members from asserting any Released Claims against Defendants or Affiliated Entities, pending a decision by the Court on final approval of this Settlement.;

3.8    Set a deadline for Plaintiff to file a motion for attorneys' fees and costs and the Incentive Amount that shall be 21 days prior to the deadline for submission of Opt-Out Forms or objections;

3.9    Schedule the Fairness Hearing to be held by the Court and a deadline for filing of a motion for final approval, to be no later than ten (10) days prior to the Fairness Hearing, to address at least the following matters: whether the Settlement and Plan of Allocation should be finally approved as fair, reasonable, and adequate, whether the motion by Plaintiff for attorneys' fees and costs and the Incentive Amount should be granted, and whether an order finally approving the Settlement and the Plan of Allocation should be entered;

3.10   Provide that no objection to the Settlement shall be heard and no papers submitted in support of said objection shall be received and considered by the Court at the Fairness Hearing unless the objection and reasons therefor, along with copies of any supporting papers, are filed with the Clerk of the Court and served on the Parties to this Settlement within forty (40) days of the mailing or providing of the Notice of Proposed Settlement;

17

6732821.1

EXECUTION COPY

3.11   Provide that the Fairness Hearing may be continued from time to time by Order of the Court if necessary, and without further notice to the Class; and

3.12   Approve the form of CAFA Notices, which the Court determines comply with the requirements of CAFA and which, upon mailing, will discharge Defendants' obligations pursuant to CAFA, and direct the Aetna Defendants to mail the CAFA Notices within ten (10) days of filing of the Settlement.

**D.  Order of Final Approval of Settlement.**

4.   Upon approval by the Court of the Settlement embodied in this Settlement, an Order of Final Approval of Settlement shall be entered by the Court, substantially in the form of Exhibit C hereto, which shall, inter alia:

4.1   Finally approve the Settlement set forth in this Settlement;

4.2   Adjudge that the Settlement is fair, reasonable, and adequate to the Class;

4.3   Dismiss the Action against Defendants with prejudice;

4.4   Adjudge that Class members shall be deemed conclusively to have released and waived any and all Released Claims against Defendants and their Affiliated Entities;

4.5   Bar and permanently enjoin all Class members from prosecuting any and all Released Claims against Defendants or their Affiliated Entities;

4.6   Include an order on Plaintiff's and Class Counsel's requests (which Defendants do not and will not oppose) for an award of attorneys' fees, costs, expenses, and the Incentive Amount to the named Plaintiff (it being the intention of the Parties that the final judgment document include the award of attorneys' fees, costs, expenses, and the Incentive Amount to the named Plaintiff);

6732821.1

EXECUTION COPY

4.7     Reserve exclusive jurisdiction, without affecting the finality of the Order entered, with regard to:

   (a)     Implementation of this Settlement;

   (b)     Disposition of the Settlement Fund; and

   (c)     Enforcement and administration of this Settlement, including the release provisions thereof;

4.8     Find that notice to the appropriate state and federal officials has been provided as required by CAFA and that Defendants have satisfied their obligations pursuant to 28 U.S.C. § 1715;

4.9     Find as follows: With regard to the release described in Paragraph 4.5, Class members expressly acknowledge certain principles of law applicable in some states, such as Section 1542 of the Civil Code of the State of California, which provide that a general release does not extend to claims that a creditor does not know or suspect exists in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor. Class members expressly waive all rights related to the Released Claims under Section 1542 of the Civil Code of the State of California, which reads as follows:

   **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Class members acknowledge that they may have claims that are covered by the terms of the Settlement that they have not yet discovered. Class members

19

6732821.1

EXECUTION COPY

acknowledge that they intend to release any and all such known, unknown or unsuspected Released Claims. Notwithstanding the choice of law provision in the Settlement, to the extent that California or other law may be applicable and enforceable, Class members hereby agree that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable here are hereby knowingly and voluntarily waived and relinquished by Class members.

**E. Effect of Disapproval, Cancellation, or Termination.**

5.1     In the event that 7.5% or more of the members of the Class validly opt out, Aetna may, in its sole and absolute discretion, terminate this Settlement by delivering a notice of termination to Class Counsel within fifteen (15) court days of the final calculation of opt outs received by the Settlement Administrator.

5.2     If the conditions of Settlement set forth in this Settlement are not satisfied, if Aetna terminates the Settlement under Section 5.1 above, if the Court does not enter the Order of Final Approval of Settlement provided for in this Settlement, if the Court enters the Order of Final Approval of Settlement and appellate review is sought and on such review such Order is materially modified or reversed, or if one or more of the material terms of the Settlement is not approved or the Order of Final Approval of Settlement with respect to one or more of such terms is materially modified or reversed, then the Settlement shall be canceled and terminated unless the Parties can agree within forty-five (45) days (or by

6732821.1

EXECUTION COPY

agreement of the Parties to another specified time period) of such event to amend

this Settlement in such a manner as to resolve such issue.

5.3     If the Effective Date does not occur, or if this Settlement is otherwise terminated

and canceled pursuant to its terms, the Parties shall be deemed to have reverted to

their respective statuses as of the date and time immediately prior to the execution

of this Settlement.

5.4     No ruling by the Court denying in whole or in part the requests by Plaintiff and

Class Counsel for an award of attorneys' fees, costs, expenses, and an incentive

payment to the named Plaintiff will be grounds for cancellation or termination of

the Settlement, notwithstanding any language in this Settlement to the contrary.

**F.  Miscellaneous Provisions.**

6.1     The Parties hereto agree to cooperate to the extent necessary to effectuate all

terms and conditions of this Settlement.  Such cooperation shall include, but not

be limited to, reasonable extensions of time to implement the provisions of this

Settlement; any such extensions shall be in writing and subject to Court approval

in the event that they impact the Court's schedule and deadlines.

6.2     Plaintiff and Class Counsel agree that the Class List information will be used for

settlement purposes only, i.e., effectuating, supporting, and carrying out the terms

of the Settlement.

6.3     The Parties and their counsel shall not engage in any conduct intended or

designed to have the Settlement not approved, or otherwise attempt to (a)

influence members of the Class to opt out of the settlement, or (b) solicit members

21

6732821.1

EXECUTION COPY

    of the Class to pursue what would otherwise be a Released Claim outside of the Action.

6.4    All exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

6.5    This Settlement may be amended or modified only by written instrument signed by authorized representatives of all Parties or their successors in interest.

6.6    This Settlement and the exhibits attached hereto constitute the entire agreement between Class members, Class Counsel, Aetna, and Aetna's counsel.

6.7    Counsel for Aetna is authorized to sign the Settlement on behalf of its clients. Class Counsel are authorized to sign this Settlement on behalf of Plaintiff and the Class.

6.8    This Settlement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

6.9    All of the terms of this Settlement shall be governed by and interpreted in accordance with the laws of the United States and the State of Connecticut.

6.10    To the extent that any of the exhibits to this Settlement are inconsistent with any of the terms of this Settlement, there shall be a presumption that any such inconsistencies are resolved in favor of the terms of the Settlement.

6.11    Except as expressly provided for in this Settlement, each Party will bear its own costs and fees.

6.12    Neither this Settlement nor any document referred to herein nor any action taken to carry out this Settlement is or may be construed as either a finding by the Court or an admission by Defendants of any fault, wrongdoing, or liability whatsoever.

22

EXECUTION COPY

There has been no final determination by the Court as to the merits of the claims

asserted by the Class against Defendants.  In addition, entering this Settlement

and taking steps to support facilitate administration of this Settlement shall not

constitute an admission by Defendants that the Class was properly certified or

should remain certified if this Action were to be litigated.

6.13    The headings used herein are only for ease of reference, and do not modify the

terms set forth in the numbered paragraphs.

6.14    This Settlement may be executed in one or more counterparts. All executed

counterparts, taken together, shall constitute a single, enforceable instrument.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement to be executed

by their duly authorized attorneys, as of the day and year first set forth above.

CHRISTOPHER MEIDL, on his own behalf
and on behalf of the Class

Date: February 15, 2019

By: _____
    Andrew N. Goldfarb
    Federal Bar No.: phv 07743
    agoldfarb@zuckerman.com
    ZUCKERMAN SPAEDER LLP
    1800 M Street, NW, Suite 1000
    Washington, D.C. 20036
    Tel: 202.778.1800
    Fax: 202.822.8106

Elizabeth K. Acee
Federal Bar No.: ct 20986
elizabeth.acee@leclairryan.com
Daniel P. Elliott
Federal Bar No.: ct 28058
daniel.elliott@leclairryan.com
LeCLAIRRYAN, Professional Corporation
545 Long Wharf Drive, 9th Floor
New Haven, CT 06511
Tel.: 203.672.1638
Fax: 203.672.3228

D. Brian Hufford (Pro Hac Vice)
dbhufford@zuckerman.com
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, NY 10022
Tel: 212.704.9600
Fax: 212.704.4256

Meiram Bendat (Pro Hac Vice)
mbendat@psych-appeal.com
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: 310.598.3690  Ext. 101
Fax: 888.975.1957

*Counsel for the Class*

6732821.1

EXECUTION COPY

Date: February 15, 2019

AETNA INC. and AETNA LIFE
INSURANCE COMPANY

By: _____

Geoffrey M. Sigler
Federal Bar No.: phv 25472
gsigler@gibsondunn.com
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: 202.955.8500
Fax: 202.530.9635

Thomas J. Finn
Federal Bar No.: ct 20929
tfinn@mccarter.com
Paula Cruz Cedillo
Federal Bar No.: ct 23485
pcedillo@mccarter.com
McCARTER & ENGLISH LLP
CityPlace I, 36th Floor
185 Asylum Street
Hartford, Connecticut 06103
Tel.: 860.275.6700
Fax: 860.724.3397

*Counsel to Defendants Aetna Inc. and
Aetna Life Insurance Company*

24

6732821.1

EXECUTION COPY

Exhibit Summary

| | |
|---|---|
| Exhibit A | Order Preliminarily Approving Settlement and Approving Notice of Proposed Settlement and Fairness Hearing |
| Exhibit B | Notice of Proposed Settlement of Class Action and Fairness Hearing and Opt-Out Form |
| Exhibit C | Order of Final Approval of Settlement |
| Exhibit D | Class Action Fairness Act of 2005 Notices |

6732821.1