## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER MEIDL, on his own behalf | : | CIVIL ACTION NO. |
| and on behalf of the certified class | : | 3:15 CV 01319 (JCH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AETNA INC., *et al.*, | : | MAY 20, 2019 |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD FOR CLASS REPRESENTATIVE

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.    BACKGROUND ............................................................................. 2

    A.    Factual Summary, Class Certification, and Denial of Summary Judgment .......... 2

    B.    Settlement and Preliminary Approval ................................................. 3

II.   LEGAL STANDARDS ...................................................................... 4

III.  A FEE AWARD EQUAL TO ONE-THIRD OF THE COMMON FUND IS FAIR AND REASONABLE IN THIS CASE ........................................................ 5

    A.    Class Counsel Provided the Class with Quality Representation (*Goldberger* Factor 4) ............................................................................... 5

        1.    The change in Aetna's TMS policy is a substantial non-monetary benefit to Class members ........................................................ 5

        2.    The Settlement also provides significant monetary relief to Class members ........................................................................ 6

        3.    The scope of the release provided by Class members is reasonable .......... 8

    B.    Class Counsel Faced Substantial Risks To Prevail in the Litigation (*Goldberger* Factor 3) ............................................................................... 8

    C.    The Requested Fee Is Smaller Than Class Counsel's Lodestar and Reasonably Reflects the Time and Labor Invested by Class Counsel (*Goldberger* Factor 1)... 9

        1.    Class Counsel invested significant time and labor in the case ................... 9

        2.    The lodestar check confirms the reasonableness of the fee request .......... 10

    D.    The Magnitude and Complexities of the Litigation, and Fee Request in Relation to the Settlement, Support the Requested Fee (*Goldberger* Factors 2 and 5) ................................................................................ 11

    E.    Public Policy Considerations Support the Requested Fee (*Goldberger* Factor 6) ....................................................................................... 14

    F.    Class Members Have Ample Opportunity To Assess This Fee Request ............. 15

IV.   THE COURT SHOULD AWARD CLASS COUNSEL THEIR OUT-OF-POCKET EXPENSES ................................................................................. 15

V.     THE COURT SHOULD APPROVE THE INCENTIVE AWARD FOR THE
NAMED PLAINTIFF ................................................................................................. 16

VI.   CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amara v. Cigna Corp.*,
    Civil No. 3:01-CV-2361 (JBA), 2018 WL 6242496 (D. Conn. Nov. 29, 2018) ............... 15, 16

*Anwar v. Fairfield Greenwich Ltd.*,
    Master File No. 09-cv-118 (VM), 2012 WL 1981505 (S.D.N.Y. June 1, 2012)...................... 15

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................................................ 4

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)................................................................................................. 4

*Clark v. Ecolab Inc.*,
    No. 07 Civ. 8623 (PAC), 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ................................ 12

*Espenscheid v. DirectSat USA, LLC*,
    688 F.3d 872 (7th Cir. 2012)............................................................................................... 16

*Fleisher v. Phoenix Life Ins. Co.*,
    Civil Action Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814 (S.D.N.Y.
    Sept. 9, 2015) ............................................................................................................... 12, 16

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)....................................................................................... 4, 5, 8, 14

*In re Colgate-Palmolive Co. ERISA Litig.*,
    36 F. Supp. 3d 344 (S.D.N.Y. 2014)............................................................................ 11, 12, 14

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................................ 12

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................................. 12

*Kemp-DeLisser v. St. Francis Hosp. & Med. Ctr.*,
    No. 15-cv-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016) .................................... 15

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998)................................................................................................ 11

*McDaniel v. Cty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)................................................................................................. 4

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
   818 F.2d 278 (2d Cir.1987) ........................................................................... 15

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ......................................................................... 7

*Willix v. Healthfirst, Inc.*,
   No. 07 Civ. 1143 (ENV) (RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...................... 12

*Zeltser v. Merrill Lynch & Co.*,
   No. 13 Civ. 1531 (FM), 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ................................ 12

**Statutes**

29 U.S.C. § 1132(a)(1)(B) ..................................................................................... 13

29 U.S.C. § 1132(a)(3) ........................................................................................... 13

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................ 13

Fed. R. Civ. P. 23(b) ............................................................................................ 13

Fed. R. Civ. P. 23(b)(1) ........................................................................................ 3

Fed. R. Civ. P. 23(b)(2) ........................................................................................ 3

Fed. R. Civ. P. 23(f) ............................................................................................. 13

Fed. R. Civ. P. 23(h) ......................................................................................... 4, 15

Plaintiff Christopher Meidl, on behalf of himself and the certified class ("Class"), respectfully submits his memorandum in support of his motion for attorneys' fees and expenses and for an incentive award to be paid from the Settlement amount.

Court-appointed Class Counsel Zuckerman Spaeder LLP and Psych-Appeal, Inc. (together, "Class Counsel") diligently prosecuted this action to achieve an exceptional result for the Class. In fact, the litigation achieved exactly what the Plaintiff sought—a change in Aetna's policy of uniformly denying insurance coverage for transcranial magnetic stimulation ("TMS") as a treatment for major depression, and significant monetary relief for people whose claims for TMS for major depression were denied by Aetna based on that uniform policy.

During the litigation, Aetna changed its clinical policy for TMS to cover TMS in certain circumstances, and cited this lawsuit as one of the factors that contributed to the change. Moreover, as part of the settlement, Class Counsel secured significant monetary relief for the Class—$6.2 million. ***This amount represents 98% of the total amount the Class was billed for TMS claims that Aetna denied***. Unsurprisingly, this is at the very highest end of the range of ERISA class-action settlements. Given the risks that Class Counsel faced in every phase of this case, the results Class Counsel produced are exceptional by any measure.

On February 26, 2019, the Court preliminarily approved the Settlement. ECF No. 205. Consistent with the preliminary approval order, Plaintiff now asks the Court to award attorneys' fees to Class Counsel equal to 33.3% of the Settlement amount, or $2,066,667. Significantly, though Class Counsel assumed significant risk by litigating the case on full contingency, the requested award will result in Class Counsel receiving less than their lodestar. The requested award is consistent with awards in common fund ERISA cases, is warranted by the significant relief that Class Counsel obtained for the Class, as well as the effort undertaken by Class

Counsel to litigate the case successfully to the brink of trial. Plaintiff also seeks approval to reimburse Class Counsel for $105,168.88 in reasonably incurred out-of-pocket litigation expenses.

Finally, the Court should approve an incentive award of $20,000 for the named Plaintiff. Mr. Meidl was a diligent and zealous advocate for the Class throughout the litigation and settlement negotiations, and personally invested hundreds of hours of time to the case.

I.     **BACKGROUND**

     A.     **Factual Summary, Class Certification, and Denial of Summary Judgment**

From September 3, 2009 to July 29, 2016 (the "Class Period"), Aetna denied Class members' claims for coverage of TMS to treat major depression. Aetna did so based on its conclusion that TMS fell under the provision in each of those Class member's plans excluding coverage for experimental and investigational treatments. Aetna's exclusion decisions all rested on a categorical policy, Clinical Policy Bulletin 469 ("CPB 469"), that Aetna developed and uniformly applied to all TMS claims. Every iteration of CPB 469 in effect during the Class Period stated that TMS for depression was experimental and investigational. On July 29, 2016, in the midst of this litigation, Aetna changed CPB 469 to cover TMS for the first time.[1]

The Class alleged that during the Class Period, Aetna violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1102, *et seq.*, by (i) violating its fiduciary duties of prudence and loyalty in the development and maintenance of CPB 469 (Count One), and (ii) wrongfully denying claims for TMS benefits (Count Two) pursuant to CPB 469. The Class sought injunctive and equitable relief, including an order that Aetna reprocess the requests

---

[1] The revised policy of TMS that Aetna promulgated on July 29, 2016, and any claims that might arise concerning that revised policy, are not at issue in this litigation and the Settlement does not concern or address them.

for TMS coverage that it denied. Plaintiff also sought to require Aetna to change its policy of uniformly rejecting coverage for TMS, which Aetna did during the course of the litigation.

After class-related discovery, Plaintiff moved for class certification. In May 2017, the Court granted the motion, certifying the following class under Rule 23(b)(1) and (b)(2):

> [A]ll participants or beneficiaries in Aetna Plans administered by Aetna (or any of its operating divisions) who, from September 3, 2009, to July 29, 2016, were denied health insurance coverage for TMS for the treatment of major depression using one of the codes for Experimental, Investigational, or Unproven Services. The TMS Class includes both persons whose post-service claims for reimbursement were denied and persons whose pre-service requests that Aetna confirm coverage for TMS were denied.

ECF No. 114 at 52. The Court also appointed Zuckerman Spaeder LLP and Psych-Appeal, Inc. as counsel for the Class ("Class Counsel"). *Id.*

The parties proceeded to conduct discovery on the merits of Plaintiff's claims. After extensive briefing and argument, in October 2018, the Court denied Aetna's motion for summary judgment. ECF No. 169. The Court set the case for trial to begin on March 11, 2019.

### B. Settlement and Preliminary Approval

The Court directed the parties to participate in a pre-trial settlement conference mediated by Magistrate Judge Merriam. ECF No. 180. In advance of the settlement conference, Aetna provided Class Counsel with additional information about the size and composition of the Class, and the parties engaged in arms-length settlement discussions and exchanged settlement demands and offers. On January 10, 2019, after an all-day settlement conference with Judge Merriam, the parties reached an agreement in principle. On February 15, 2019, the parties executed the Settlement Agreement and Plaintiff submitted his unopposed motion for preliminary approval. ECF No. 203. On February 26, 2019, the Court granted that motion. ECF No. 205.

## II.    LEGAL STANDARDS

Rule 23 states that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Settlement Agreement authorizes Class Counsel to seek up to 33.3% of the settlement fund as payment for its time and expenses. ECF No. 203-2 § 2.9. Moreover, the Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This rule applies in ERISA cases. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 248-50 (2d Cir. 2007) (upholding percentage-of-the-fund fee award in ERISA class action settlement).

In *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), the Second Circuit set out the factors for the Court to consider in evaluating a proposed fee: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." 209 F.3d at 50 (alterations omitted). Determination of a reasonable fee is committed to the sound discretion of the district court. *Goldberger*, 209 F.3d at 47.

In cases where a settlement yields a common fund for distribution to class members, courts in the Second Circuit generally calculate attorneys' fees as a percentage of the common fund. *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (finding percentage method to be the trend in the Second Circuit). Under this approach, the fee is a reasonable percentage of the total value of the settlement fund created for the class. *Goldberger*, 209 F.3d at 47. Courts using the percentage-of-the-fund method look at class counsel's lodestar—the

reasonable hours billed by a reasonable hourly rate, adjusted based on factors such as the risk of the litigation and the performance of the attorneys—as a "cross check on the reasonableness of the requested percentage." *Id.* at 50 (internal quotation marks omitted)

## III.   A FEE AWARD EQUAL TO ONE-THIRD OF THE COMMON FUND IS FAIR AND REASONABLE IN THIS CASE.

Consideration of the *Goldberger* factors confirms that 33.3% of the Settlement amount—an amount less than Class Counsel's lodestar—is a reasonable fee in this case.

### A.   Class Counsel Provided the Class with Quality Representation (*Goldberger* Factor 4).

"[T]he quality of representation is best measured by results, and . . . such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger*, 209 F.3d at 55 (internal quotation marks and citation omitted). Here, through the litigation and Settlement, Class Counsel—who are national leaders in the field of ERISA litigation, including class actions, on behalf of plaintiffs, providers, and others, *see* Declaration of Andrew N. Goldfarb ¶¶ 7-15; Declaration of Meiram Bendat ¶¶ 5-11—achieved for the 1,164 member Class the two primary goals Plaintiff had at the outset of the case: (i) a change in Aetna's categorical policy of denying all claims and coverage for TMS for major depression on the grounds that TMS is experimental, investigational, or unproven; and (ii) monetary relief for Class members whose requests for coverage and benefits for TMS were denied on that basis.

#### 1.   The change in Aetna's TMS policy is a substantial non-monetary benefit to Class members.

First, by bringing and prosecuting this action, Class Counsel helped to secure a change in Aetna's TMS policy. In an internal meeting in May 2016, Aetna cited this case as a basis for the policy change, which became effective on July 29, 2016. ECF No. 161-30 at 5 (Ex. 39 to Pl.'s

Opp'n to Mot. for Summ. J.). This is a highly significant victory for Class members. Class members now have another safe and effective treatment option available to them. Class Counsel's ability to secure this change is particularly important for this patient population, who because of their major depression are often not well equipped to navigate their health plans' administrative processes or to advocate effectively for themselves.

  2. <u>The Settlement also provides significant monetary relief to Class members.</u>

   In addition to the major change to Aetna's TMS policy, Class Counsel obtained exceptional monetary relief for Class members. According to the information in Aetna's records, the Settlement amount of $6.2 million is, in total, **98% of the total amount of billed charges**— that is, the amount that the providers charged Class members for TMS services—for denied TMS claims. Goldfarb Decl. ¶ 28. Aetna's records show that if all those claims had been deemed covered by Aetna in the first place, Aetna would have paid substantially less than the billed amount—reflecting reductions under plan payment schedules, co-pays, deductibles, and co-insurance obligations. Indeed, even after deduction of the requested Incentive Award, attorneys' fees and expenses, and notice costs, Plaintiff estimates that Class members who receive *pro rata* distributions are likely to receive approximately 70% of what they likely would have received if their claims were all deemed covered. *Id.* ¶ 29.[2] As indicated in Plaintiff's motion for preliminary approval of the settlement, the recovery obtained in this case far exceeds other approved ERISA settlements, which range from 3.2% to 20% of the class's maximum damages. See ECF No. 203-1 at 13-14 (citing cases).

---

[2] Under the preliminarily approved plan of allocation, every Class Member, including persons whose pre-authorization request for coverage for TMS was denied, will receive a minimum amount, which is expected to be $1,500.

In certain respects, the results that Class Counsel produced are better than those that could have been achieved even if the Class prevailed on every legal issue in the case. The Settlement avoids the need to reprocess claims, and provides significant benefits to *all* Class Members immediately. Had the case not settled, Class Counsel would have pursued an order directing Aetna to reprocess Class members' TMS claims under an evidence-based standard that recognized TMS as a safe and effective treatment for depression. Under such an order, Aetna would have reconsidered its TMS denial decisions, including pre-service requests for coverage, to determine if TMS was medically necessary and thus covered by a Class member's health plan. It is likely that Aetna would have concluded that TMS was not medically necessary for some Class members under their plans, and thus denied coverage and/or benefits. Those Class members would then have had to pursue internal and then potentially external appeals of those denials, consuming Class members' valuable time and resources. And, for Class members who Aetna determined were entitled to benefits, Aetna would likely have sought to subject those claims to deductibles, co-pays, and other co-insurance obligations.

The Settlement gives Class members both certainty of recovery and the benefit of the time value of money—by receiving money sooner, Class members can earn interest on, invest, or spend the money, rather than being forced to wait until resolution of the litigation, which could take years, to receive an amount that might well be less. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

In addition, Class Counsel designed a Plan of Allocation that allows for distributions to be made automatically without requiring individual Class members to do anything; accordingly, Class Counsel expect that, after payment of attorneys' fees, expenses, and any incentive award

for the named Plaintiff, the Settlement Administrator will be able to distribute nearly all of the Settlement amount to Class members.

           3.      <u>The scope of the release provided by Class members is reasonable.</u>

As part of the Settlement, Class Counsel also negotiated a reasonable release, pursuant to which Class members will release Aetna from "Released Claims," as that term is defined in the Settlement Agreement. Importantly, Class Counsel negotiated a release that preserves individual Class members' ability to challenge Aetna's current TMS policy, medical necessity determinations for coverage of TMS made under Aetna's current TMS policy, or claims challenging Aetna's failure to pay for TMS approved under that policy.

In short, Class Counsel achieved a remarkably favorable result for the Class that supports the reasonableness of the requested fee.

**B.**      **Class Counsel Faced Substantial Risks To Prevail in the Litigation (*Goldberger* Factor 3).**

"[L]itigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. At the outset of the case, Class Counsel faced numerous, substantial risks to a successful outcome. The most significant risks were (i) whether the evidence would bear out their theory that Aetna's conduct in denying TMS claims for major depression was sufficiently uniform such that the case was susceptible to class treatment; and (ii) whether they would be able to prove that Aetna violated plan terms and ERISA. The only way to succeed was to invest the time and resources in discovery on both issues. While Plaintiff ultimately succeeded on his motion for class certification, and elicited evidence to defeat Aetna's summary judgment motion, Aetna, represented by highly sophisticated counsel with considerable experience defending class actions and ERISA cases, presented numerous legal and factual arguments at both stages. *See* Aetna's Opp'n to Mot. for Class Cert. (ECF No. 100); Aetna Mot. for Summ. J. (ECF No. 133).

Those risks remained in the case. Although Plaintiff believes he would have a strong chance of prevailing at trial and on any subsequent appeals, the Class would face both procedural and substantive obstacles to obtain the reprocessing remedy sought. First, Plaintiff would have had to prevail at trial. Aetna would have sought to narrow or decertify the Class, and would assert a slew of merits defenses, such as evidence to support the reasonableness of its TMS policy. Assuming a decision for Plaintiff on liability, the parties would then litigate the precise form of the reprocessing remedy. Plaintiff would also have to defeat Aetna's post-trial appeals, which would likely include attempts to decertify the Class and to reverse any judgment or remedy ordered by the Court. Plaintiff estimates it would take eighteen months to two years to obtain a final judgment. Only thereafter, and assuming Plaintiff continued to prevail on all issues, would Aetna begin reprocessing Class members' claims. And while reprocessing would remedy the claims alleged here, it is also likely that Aetna would again deny coverage and benefits to many Class members. Those Class members would face the prospect of more administrative ERISA appeals and new litigation to challenge those new denials.

Put simply, Class Counsel faced numerous and substantial risks in this litigation, any one of which could deprive Class members of any relief (and Class Counsel of any fee). These risks further support the reasonableness of the fee request.

**C.    The Requested Fee Is Smaller Than Class Counsel's Lodestar and Reasonably Reflects the Time and Labor Invested by Class Counsel (*Goldberger* Factor 1).**

1.    <u>Class Counsel invested significant time and labor in the case.</u>

The relief obtained results directly from Class Counsel's expertise and its investment of significant time and effort in this case. As the attached declarations show, as of this filing Zuckerman lawyers have invested approximately 2,569 hours to the case, and Psych-Appeal

invested 60.1 hours. Goldfarb Decl. ¶¶ 18-20; Bendat Decl. ¶ 15.[3] This investment was necessary to litigate zealously against a well-funded adversary with sophisticated counsel. Among other activities, Class Counsel researched the factual and legal theories; prepared the complaint; engaged in class discovery followed by briefing a successful class certification motion; engaged in merits discovery followed by successfully defeating Aetna's motion for summary judgment; and then conducted arms-length negotiations, which involved extensively analyzing a substantial volume of claims data to evaluate and confirm the scope of the Class and the risks and benefits of proceeding to trial or negotiating a resolution. Goldfarb Decl. ¶ 18.

In addition, Class Counsel litigated this case efficiently and staffed it leanly: only four people at Zuckerman billed more than 55 hours on the case, and the matter was principally handled by a single lawyer, who accounted for 60% of the total hours. *Id.* ¶ 22.A.

Zuckerman sets its hourly rates annually to be competitive with peer firms nationwide who litigate complex litigation matters. Approximately 90% of the firm's clients pay those rates pursuant to an hourly billing arrangement. *Id.* ¶¶ 8, 20. Thus, Zuckerman's rates are presumptively reasonable because its clients routinely pay them. Psych-Appeal also uses hourly billing arrangements for a significant portion of its legal services. Psych-Appeal's rates reflect its unique legal-clinical specialty. Bendat Decl. ¶¶ 13-14, 17.

2.     The lodestar check confirms the reasonableness of the fee request.

The reasonableness of Plaintiff's request is underscored by the fact that the requested fee represents a "negative" multiplier—that is, the requested fee is less than Class Counsel's lodestar. Any comparison to the percentage awards in other cases must take into account that

---

[3] Plaintiff's Connecticut counsel, LeClair Ryan, P.C., worked 45.7 hours on the case. Goldfarb Decl. ¶ 22.C.

those awards generally reflect a significant positive multiplier *over* counsel's lodestar. *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (approving multiplier of 5 in an ERISA class action settlement and finding a median multiplier of 2.1 in 53 ERISA cases).

When performing a lodestar check, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). As described above, Zuckerman and Psych-Appeal set their rates to be competitive among peer firms doing complex litigation under an hourly rate structure. Thus, Zuckerman and Psych-Appeal's rates are not "artificial" or inflated, and are not adjusted to reflect the risks inherent in this case. Goldfarb Decl. ¶ 8. Using current rates, Class Counsel's lodestar is approximately $2,067,882 as of May 17, 2019—an amount a little greater than the requested fee. *Id.* ¶ 22. Thus, even without analyzing whether a lodestar enhancement is warranted in this case due to the results obtained and the risks overcome, and ignoring the additional work that Class Counsel will do in this case as part of final approval of the settlement and settlement administration, a 33.3% fee would be *less* than Class Counsel's lodestar incurred to date. Accounting for that ongoing and future work—including drafting the motion for final approval; preparing for and participating in the final approval hearing; and monitoring the implementation of the Settlement—will only decrease the already negative multiplier further.

In short, the lodestar comparison confirms that the 33.3% fee request is eminently reasonable.

**D.** **The Magnitude and Complexities of the Litigation, and Fee Request in Relation to the Settlement, Support the Requested Fee (*Goldberger* Factors 2 and 5).**

Courts in this Circuit have recognized that "ERISA concerns a highly specialized area of law" and that "a higher fee is warranted in ERISA cases as compared with some other types of

cases." *Colgate-Palmolive*, 36 F. Supp. 3d at 350 (citation omitted); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147 (S.D.N.Y. 2010) (noting that ERISA law is "still developing" and unsettled compared other bodies of law, increasing risks for plaintiffs' counsel). At the same time, courts generally award a larger percentage of the fund as the size of the fund decreases: "it is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (approving 33% fee for first $10 million of common settlement fund); *Colgate-Palmolive*, 36 F. Supp. 3d at 349 (recognizing that the "overwhelming determinant of fee is the amount of the recovery for the class") (internal quotation marks and citation omitted). Indeed, courts in this Circuit have awarded fees equal to one-third of a common fund in settlements of a comparable size to the Settlement in this case. *E.g.*, *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531 (FM), 2014 WL 4816134, at *8 (S.D.N.Y. Sept. 23, 2014) (awarding class counsel one-third of $6.9 million common fund, a 5.1 multiplier); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV) (RER), 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund).

Courts have also found a higher percentage fee award to be appropriate where, as here, the case is litigated to "the brink of trial, after extensive and hard-fought discovery." *See Fleisher v. Phoenix Life Ins. Co.*, Civil Action Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814, at *17 (S.D.N.Y. Sept. 9, 2015) (citing Oral Arg. Tr. at 4, *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (S.D.N.Y. May 15, 2014), ECF No. 68) (where court awarded one-third fee for extensively litigated case); *In re Marsh ERISA Litig.*, 265 F.R.D. at 149 (awarding 33.3% fee and citing other ERISA cases with fee awards of one-third of a

common fund "in appropriate circumstances, and especially when, as here, the fund is not a 'mega' recovery").

Application of these factors in the particular circumstances of this case—the complexities inherent to an ERISA class action, the size of the Settlement fund, the years of hard-fought litigation that preceded the Settlement, the fact that the requested fee is less than Class Counsel's lodestar, and the nearly 100% recovery of billed charges for denied TMS claims—strongly supports the fee request. Class Counsel first navigated the complexities of Rule 23 to achieve certification of the Class. It had to establish each of the requirements under Rule 23(a), then to demonstrate why the Class fit within at least one of the Rule 23(b) types of class actions, including rebutting a plethora of arguments made by Aetna about why the interplay between the facts, ERISA, and Rule 23 allegedly made class treatment inappropriate. Class Counsel then defeated Aetna's Rule 23(f) petition to the Second Circuit, which sought immediate review of the grant of class certification. During the merits phase of the case, Class Counsel developed substantive evidence to establish Aetna's liability on its claims under ERISA sections 502(a)(1)(B) and (a)(3), 29 U.S.C. § 1132(a)(1)(B) and (a)(3). This required discovery of the history, process, and substance behind Aetna's clinical policy on TMS, and also required Class Counsel to learn the strengths and weaknesses of the scientific evidence base for different treatments for major depression. Class Counsel then deployed that evidence to defeat Aetna's summary judgment motion, which again implicated a collection of arguments that implicated somewhat unsettled areas of ERISA and Rule 23 law.

In sum, although there are some ERISA settlements where a smaller percentage fee was awarded, in general the size of the common fund in such settlements is much larger, and the smaller percentage still provides a positive multiplier on counsel's lodestar. Here, as shown

above, a 33.3% award will not even cover Class Counsel's time-adjusted lodestar, and thus will not provide any windfall to Class Counsel.

**E.     Public Policy Considerations Support the Requested Fee (*Goldberger* Factor 6).**

"Counsel's fees should reflect the important public policy goal of 'providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'" *Colgate-Palmolive*, 36 F. Supp. 3d at 352 (quoting *Goldberger*, 209 F.3d at 51). Here, public policy considerations strongly support a comparatively larger fee award. Plaintiff and Class Counsel brought this case to vindicate the rights of people with major depression who were denied coverage for a significant treatment option. This is a patient population whose depression is marked by treatment resistance—that is, other therapies have failed to sufficiently alleviate their depression. Thus, access to the full range of treatment options is critically important. In addition, the Class is comprised of persons who, because of their major depression, may be particularly ill-equipped to challenge coverage denial decisions of their insurance company and to navigate the coverage denial and appeal process. Accordingly, Class Counsel's three and a half years of work to hold Aetna to ERISA's requirements with respect to its approach to TMS has resulted in an important expansion in the depression treatment options covered by Aetna and recovered millions of dollars for people with depression whose claims for TMS were denied.

This case indisputably served the public interest. Given that there is already a deficit between the requested fee and Class Counsel's lodestar, and that Class Counsel's time in this case could have been spent on matters for its billable clients, denying the motion will dissuade Class Counsel, and other similar lawyers and law firms, from doing this type of valuable work. This factor strongly supports the motion.

**F. Class Members Have Ample Opportunity To Assess This Fee Request.**

Courts can also consider the reaction of the class when assessing the reasonableness of a fee requested by class counsel. *Amara v. Cigna Corp.*, Civil No. 3:01-CV-2361 (JBA), 2018 WL 6242496, at *3 (D. Conn. Nov. 29, 2018) (citing cases for proposition that absence of objections by class members to a fee request weighs in favor of approving the request). Consistent with Rule 23(h), and in accord with the notice sent to the Class on April 29, 2019, this fee petition will be filed and posted to the Settlement-related website three weeks before the deadline for Class members to opt out of or object to the Settlement. Class Counsel will be prepared to address the reaction of Class members to the fee request in the motion for final approval and at the Final Approval Hearing. The notice sent to the Class described the fee to be requested by Plaintiff for Class Counsel.

**IV. THE COURT SHOULD AWARD CLASS COUNSEL THEIR OUT-OF-POCKET EXPENSES.**

"Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses." *Anwar v. Fairfield Greenwich Ltd.*, Master File No. 09-cv-118 (VM), 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir.1987)); *Kemp-DeLisser v. St. Francis Hosp. & Med. Ctr.*, No. 15-cv-1113 (VAB), 2016 WL 6542707, at *18 (D. Conn. Nov. 3, 2016); *see also* Fed. R. Civ. P. 23(h).

Here, Class Counsel have described their expenses in the Goldfarb Declaration. Goldfarb Decl. ¶¶ 24-26. That listing of expenses shows that Class Counsel have litigated the case efficiently, with no large, unreasonable, or unnecessary expenditures. *Id.* Plaintiff respectfully requests that the Court approve payment of $105,168.88 for expenses incurred by Class Counsel from the Settlement amount.

## V. THE COURT SHOULD APPROVE THE INCENTIVE AWARD FOR THE NAMED PLAINTIFF.

Incentive awards are awarded to compensate named plaintiffs "'for bearing the[] risks of [bringing an action], as well as for as any time he spent sitting for depositions and otherwise participating in the litigation as any plaintiff must do.'" *Amara*, 2018 WL 6242496, at *3 (quoting *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012)).

The named Plaintiff played an important role in this case. Mr. Meidl voluntarily shed light on his own mental health history to enable the case to be brought. He participated actively in the litigation, always with an eye to the interests of the Class. He prepared and sat for a full-day deposition. He reviewed key filings in advance of their submission, and traveled to Washington for a multiday meeting with Class Counsel about case status and strategy. He had numerous emails and phone calls with Class Counsel about case developments as they occurred. And he participated actively and effectively in the mediation with Judge Merriam that led to the Settlement. In short, Mr. Meidl invested literally hundreds of hours of time into the case, and he contributed meaningfully to the result for the Class. *See* Goldfarb Decl. ¶ 27. Plaintiff respectfully asks the Court to approve a $20,000 incentive award to reflect the named Plaintiff's critical role in this case, an award that is reasonable in light of other incentive awards by courts in this Circuit to named plaintiffs for comparable participation. *See, e.g.*, *Amara*, 2018 WL 6242496, at *3 (awarding $50,000 incentive award to actively involved named plaintiffs who, inter alia, participated in mediation sessions, attended non-trial court hearings, and assumed personal risk by participating); *Fleisher*, 2015 WL 10847814, at *24 (awarding incentive award of $25,000 to named plaintiff who spent "at least 88 hours" fulfilling his obligations as a class representative).

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court finally approve a fee of $2,066,667, which equals 33.3% of the Settlement amount, approve payment of Class Counsel's expenses from the Settlement Amount in the amount of $105,168.88, and approve a $20,000 incentive award for the named Plaintiff.


Dated: May 20, 2019

Respectfully submitted,

    /s/ Andrew N. Goldfarb

Elizabeth K. Acee
Federal Bar No.: ct 20986
elizabeth.acee@leclairryan.com
Daniel P. Elliott
Federal Bar No.: ct 28058
daniel.elliott@leclairryan.com
LeCLAIRRYAN, P.C.
545 Long Wharf Drive, 9th Floor
New Haven, CT 06511
Tel.: 203.672.1638
Fax: 203.672.3228

Meiram Bendat (Pro Hac Vice)
mbendat@psych-appeal.com
PSYCH-APPEAL, INC.
8560 West Sunset Blvd., Suite 500
West Hollywood, CA 90069
Tel: 310.598.3690 Ext. 101
Fax: 888.975.1957

Andrew N. Goldfarb
Federal Bar No.: phv 07743
agoldfarb@zuckerman.com
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, D.C. 20036
Tel: 202.778.1800
Fax: 202.822.8106

D. Brian Hufford (Pro Hac Vice)
dbhufford@zuckerman.com
Jason S. Cowart (Pro Hac Vice)
jcowart@zuckerman.com
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: 212.704.9600
Fax: 212.704.4256

*Counsel to Plaintiff Christopher Meidl and the Certified Class*