# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER MEIDL, on his own behalf and on behalf of all others similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AETNA INC.; AETNA LIFE INS. CO.; ) <br> and MCMC, LLC, ) <br> ) <br> Defendants. ) | NO: 3:15-CV-01319-JCH <br><br><br><br><br><br><br><br><br> MAY 20, 2019 |

### DECLARATION OF ANDREW N. GOLDFARB
### IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES
### AND INCENTIVE AWARD FOR NAMED PLAINTIFF

I, Andrew N. Goldfarb, declare and state as follows:

1. I am over the age of eighteen. I am an attorney with Zuckerman Spaeder LLP, 1800 M Street NW, Suite 1000, Washington, DC 20036. My business telephone number is (202) 778-1822. My business facsimile number is (202) 822-8106. My business e-mail address is agoldfarb@zuckerman.com.

2. I am licensed to practice in New York, the District of Columbia, and California, and have been admitted to this Court *pro hac vice* (phv 07743).

3. Our firm is counsel to Plaintiff Christopher Meidl, on his own behalf and on behalf of the certified Class, in the above-captioned matter.

4. I am responsible for the day-to-day management of this action. I have personal knowledge of the facts set forth herein.

5. I submit this Declaration in support of Plaintiff's Motion for Attorneys' Fees and Expenses and Incentive Award for Named Plaintiff.

**I.    Class Counsel**

6.     On February 26, 2019, the Court preliminarily appointed the firms of Zuckerman Spaeder LLP ("Zuckerman") and Psych-Appeal, Inc. to serve as Class Counsel. ECF No. 205.

**A.    Zuckerman Spaeder LLP**

7.     Founded in 1975, Zuckerman is a national litigation boutique that represents individual and institutional clients in high-stakes civil and criminal cases. Zuckerman counts among its ranks many of the nation's leading lawyers, including former federal prosecutors and public defenders, as well as attorneys who have served in congressional offices and federal agencies. The firm is frequently named to *The National Law Journal*'s "Midsize Hot List," and was recognized by The American Lawyer as a finalist for its "Litigation Boutique of the Year" each year it has selected firms for such distinction. Zuckerman is also the top-listed firm for white collar criminal defense in Best Lawyers, with more attorneys recognized in that category than any other firm in the country, and in 2016 *U.S. News and World Report* ranked the firm in the top-tier nationally for commercial litigation. The firm's attorneys have extensive experience in matters related to securities violations, tax controversy, political law, legal ethics, food and drug law, and health care fraud.

8.     The vast majority of Zuckerman's revenue, approximately 90%, is generated by hourly fee paying business, with a small minority of revenue generated by contingent fee litigation such as this case. Zuckerman sets its hourly rates annually to be competitive with peer firms in the national market for complex litigation. Zuckerman has hundreds of clients who are invoiced and pay the firm's established hourly rates on a monthly basis. Zuckerman's rates do not account for the assumption of risk that comes from taking cases on a full contingency basis, as in this case.

9. D. Brian Hufford, Jason S. Cowart, and I were the attorneys at Zuckerman with principal responsibility for this matter.

10. Mr. Hufford holds a Bachelor of Arts and a Master of Urban Affairs from Wichita State University. He graduated from Yale Law School in 1985. After law school, he spent two years in the Honors' Attorney program for the U.S. Department of the Treasury and six years as a litigation associate at Davis Polk. Mr. Hufford then moved to one of the oldest plaintiff-side class action securities law firms in the country, founded by the dean of the class action bar, Abraham Pomerantz. By the time he left the firm, at the end of 2013, he was a named partner (Pomerantz Grossman Hufford Dahlstrom & Gross LLP) ("Pomerantz"). While Pomerantz was historically a firm that focused on § 10(b) securities litigation, Mr. Hufford created a successful new practice group, focusing on ERISA-based litigation brought on behalf of healthcare providers and their patients against health insurers. In 2014, Mr. Hufford moved his practice to Zuckerman.

11. While at Pomerantz, Mr. Hufford led litigation that resulted in two of the largest recoveries ever obtained in health insurance class actions. His work on litigation against United Healthcare led to a $350 million settlement to reimburse providers and subscribers whose ERISA rights had been violated (*American Medical Ass'n et al. v. United HealthCare Corp., et al.*, Master File No. 00 Civ. 2800 (LMM) (GWG) (S.D.N.Y. 2010)). Similar consolidated actions against Health Net resulted in a $250 million settlement (*McCoy v. Health Net, Inc., et al.* (03-cv-1801), *Wachtel v. Health Net, Inc., et al.* (01-cv-4183), and *Scharfman v. Health Net, Inc., et al.* (05-cv-0301) (D.N.J. 2008)).

12. Mr. Hufford was named by *Law360* as a "Health MVP" in 2015, 2016, and 2017. He was chosen as a Plaintiff's Attorney "Trailblazer" in 2017 by *The National Law Journal*. He has successfully argued landmark health care appeals, including:

   a. *N. Jersey Brain & Spine Ctr. v. Aetna Inc.*, 2015 WL 5295125 (3d Cir. Sept. 11, 2015), and *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 2015 WL 5313631 (3d Cir. Sept. 11, 2015), which established a new Third Circuit standard for provider standing to sue under ERISA;

   b. *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015), which held that a health plan administrator may be sued under ERISA for both benefits and ERISA violations; and

   c. *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011), concerning the scope of ERISA preemption.

13. Mr. Cowart graduated from the University of Michigan in 1993 and Northwestern University Law School in 1999. Upon graduation, he served as a Law Clerk to the Honorable Richard Enslen, Chief Judge of the United States District Court for the Western District of Michigan. Thereafter, from 2000 through 2005, Mr. Cowart was a Litigation Associate at Sidley Austin LLP, specializing in complex commercial litigation. From 2005 through 2013, Mr. Cowart was an Associate and then a Partner at Pomerantz, specializing in ERISA, securities, antitrust, and consumer fraud class action litigation. In 2014, Mr. Cowart joined Zuckerman as a partner when he and Mr. Hufford moved their practice there.

14. In addition to the cases cited above, Mr. Hufford and/or Mr. Cowart have also served as co-lead counsel in other national health care litigation against United, Aetna, WellPoint, CIGNA, and Blue Cross and Blue Shield entities, including:

   d. *Wit v. United Behavioral Health*, No. 14-CV-02346-JCS (N.D. Cal.) (trial victory in March 2019 for class of more than 50,000 people with behavioral health or substance abuse disorders);

   e. *Alexander v. United Behavioral Health*, No. 14-CV-02346-JCS (N.D. Cal.);

f. *Craft v. Health Care Serv. Corp.*, 84 F. Supp. 3d 748, 749 (N.D. Ill. 2015);

g. *Conn. Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*, 128 F. Supp. 3d 501, 504 (D. Conn. 2015);

h. *Blue Cross & Blue Shield of Rhode Island v. Korsen et al.*, No. 09-cv-00317-L-LDA (D.R.I. 2014); and

i. *Des Roches v. Cal. Physicians' Svc., et al.*, No. 16-cv-02848-LHK (N.D. Cal.).

15. I am a 1990 graduate of Harvard College, and received my J.D. from Georgetown University Law Center in 1995. After four years at a boutique firm focused on food and drug law, I spent six years as a trial attorney in the United States Department of Justice, where I was a core member of the team that successfully prosecuted the federal government's civil RICO action against the tobacco industry. In 2005, I moved to Zuckerman, where I have litigated a wide variety of civil and criminal matters, along with a focus on pharmaceutical and health law. Class action litigation has been a focus of my litigation work, including ERISA class actions. In addition to this case, class action or putative cases I have litigated or am currently litigating include:

a. *Weil v. Cigna Health and Life Ins. Co.*, No. 2:15-cv-07074-MWF-JPR (C.D. Cal.) (resulted in $2.75 million settlement and significant injunctive relief for people with major depression who had been denied coverage for transcranial magnetic stimulation);

b. *Peterson v. UnitedHealth Group, Inc.*, No. 14-2101 (PJS/BRT) (D. Minn.) (putative class action concerning United's use of benefit payments from one United-administered plan to offset an alleged prior overpayment to the same provider by another United-administered plan); and

c. *O'Dowd v. Anthem, Inc., et al.*, No.: 1:14-cv-02787-KLM-NYW (D. Colo.) (motion for final approval of class settlement pending in case alleging that Anthem Colorado's use of a different fee schedule for certain out-of-network behavioral health services compared to out-of-network medical and surgical services violates ERISA).

B.   **Psych-Appeal, Inc.**

16. The accompanying Declaration of Meiram Bendat summarizes Mr. Bendat's education, training, experience, and expertise.

## II.   Plaintiff's Retention of Class Counsel in this Case

17. In July 2015, Plaintiff retained Zuckerman to litigate his claims against Aetna on behalf of himself and a class of similarly situated individuals.

## III.   Hours Expended

18. As of May 17, 2019, Class Counsel have collectively spent about 2,675 hours on this case since its inception. The principal activities have been (a) conducting an extensive pre-suit investigation; (b) doing legal and factual research, including evaluating the case under Rule 23; (c) drafting pleadings; (d) conducting extensive class-related discovery, including deposing Aetna witnesses and preparing and defending the deposition of the named Plaintiff; (e) briefing the motion for class certification, which was granted in May 2017; (f) prevailing on Aetna's Rule 23(f) petition to the Second Circuit, which sought immediate review of the class certification decision; (g) pursuing factual and expert discovery on the merits of Aetna's policy, including conducting depositions of key Aetna personnel and Aetna's expert; (h) preparing a brief in opposition to Aetna's motion for summary judgment, which motion was denied in October 2018; (i) engaging in settlement negotiations and related work, including a day-long mediation with Magistrate Judge Merriam, and analyzing claim data from Aetna to confirm the scope of the putative class and their alleged injuries; and preparing papers seeking Court approval of the settlement; (j) meeting and conferring with the client regularly; and (k) case strategy and management throughout the case.

19. As of May 17, 2019, Zuckerman has spent about 2,569 hours on this case; Psych-Appeal has spent 60.1 hours on this matter. *See* Bendat Decl. ¶ 15. I estimate that Class Counsel

will spend another 30 hours on the case in connection with settlement-related activities, including preparing the motion for final approval, addressing any objections to the Settlement that the Settlement Administrator may receive through the notice period, which runs until June 11, 2019, and preparing for and participating in the Fairness Hearing currently scheduled for July 10, 2019.

20. The 2,675 hours spent to date by Class Counsel on this matter represent a significant investment of time on a risky, contingent matter with no guarantee of success. The vast majority of revenue earned by Zuckerman comes from billable time, and those hours could have been spent on billable matters that would have generated substantial revenue for Zuckerman. This investment of time was particularly significant because Zuckerman and Psych-Appeal are relatively small firms that do not have the personnel or resources of much larger law firms. In short, the time devoted by Class Counsel to this case was a major investment of both firms' resources to the financial detriment of other uses of that time.

21. Based on Class Counsel's extensive experience representing patients and providers, I think it unlikely that attorneys would have been willing to commence individual lawsuits on a contingency basis against Aetna, a sophisticated and well-funded adversary, to challenge its former policy categorically denying coverage for TMS for depression. That is because (a) the amounts at issue for individual patients were relatively small, and (b) the litigation risks were substantial, given Aetna's numerous colorable defenses. Thus, the necessary time and financial investment to litigate an individual case against Aetna would likely far exceed any recovery, and thus would not be economically rational. Consistent with that, to the best of my knowledge, no such individual lawsuits challenging Aetna's TMS policy were ever commenced.

**IV.  Class Counsel's Lodestar**

22. To facilitate a "lodestar check" by the Court, the following charts reflect the current rates charged by each timekeeper who billed time in this matter, and total hours expended by each timekeeper. Class Counsel uses its current hourly rates because "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). Class Counsel's total lodestar through May 17, 2019 equals $2,067,882.25, broken down as follows:

   **A.  Zuckerman Spaeder LLP**:

| Timekeeper | Hourly Rate ($) | Hours |
|---|---|---|
| D. Brian Hufford | 1,095 | 208.15 |
| Paula Junghans | 995 | 29.70 |
| Jason S. Cowart | 940 | 301.00 |
| David Reiser | 890 | 4.00 |
| Andrew N. Goldfarb | 820 | 1,546.00 |
| Carlos T. Angulo | 795 | 10.80 |
| William K. Meyer | 785 | 1.40 |
| Caroline E. Reynolds | 785 | 1.60 |
| Adam Abelson | 650 | 1.80 |
| Vanessa Isabel Garcia | 560 | 2.80 |
| Devon Galloway | 560 | 9.20 |
| Andrew Caridas | 535 | 36.80 |
| Richard A. Kraus | 425 | 6.70 |
| Laura Eller | 375 | 6.00 |
| Kimberly Gainey | 375 | 9.70 |
| Nina J. Falvello | 375 | 5.90 |
| Jer-Wei (Jay) Chen | 355 | 21.00 |
| Lori V. Duignan | 355 | 238.00 |
| Patrick Schmidt | 345 | 0.70 |
| Mark T. Landers | 330 | 3.60 |
| Cara London | 320 | 38.60 |
| Ashley C. Voss | 315 | 16.10 |
| Melissa D. Lovell | 305 | 54.80 |
| Tareq Nascher | 229 | 5.50 |
| Kimberley Wilson | 205 | 9.30 |
| **TOTAL HOURS** | | **2,569.15** |

Thus, Zuckerman's lodestar is $1,999,202.75.[1]

### B. Psych-Appeal, Inc.

| Timekeeper | Hourly Rate ($) | Hours |
|---|---|---|
| Meiram Bendat | 900 | 60.1 |

*See* Bendat Decl. ¶ 15. The Psych-Appeal lodestar is $54,090.

### C. LeClair Ryan, P.C.

23. Class Counsel retained LeClair Ryan, P.C., to serve as Connecticut counsel for the Plaintiff. LeClair Ryan provided valuable local counsel services throughout the case. Its time records show the firm invested time in the case as follows:

| Timekeeper | Hourly Rate ($) | Hours |
|---|---|---|
| Elizabeth K. Acee | 400 | 22.90 |
| Daniel P. Elliott | 265 | 6.20 |
| Jacob M. Pylman | 240 | 13.00 |
| Shaleem S. Yaqoob | 190 | 0.10 |
| Susan Deyo | 185 | 3.50 |
| **TOTAL HOURS** | | **45.70** |

Thus, LeClair Ryan's lodestar is $14,589.50.

## V. Litigation Expenses

24. The table below reflects the total litigation expenses incurred by Zuckerman by category. As the table indicates, all expenditures, such as the cost of Plaintiff's expert, database hosting fees, non-local travel expenses, and legal research costs, represent normal litigation costs:[2]

| Description | Amount ($) |
|---|---|
| Court costs | 2,159.87 |
| Expert/Consultant Fee | 29,100.00 |

---

[1] Upon request, Class Counsel will provide time records for the listed timekeepers for *in camera* review by the Court.
[2] Upon request, Class Counsel will provide receipts for the listed expenses to the Court.

| | |
|---|---:|
| Process Service | 740.00 |
| Express Delivery | 1,056.93 |
| Courier | 88.27 |
| Transcripts/Deposition Fees | 14,343.86 |
| Medical Records | 168.44 |
| Certificate of Good Standing | 51.00 |
| Auto Rental | 266.66 |
| Telephone Reimbursed | 141.73 |
| Computer Research | 797.83 |
| Pacer - Docket Research | 385.20 |
| Local Transportation | 563.71 |
| Non-Local Travel and Related Expenses | 17,605.78 |
| Meal Reimbursement | 192.62 |
| Document Database Hosting | 12,570.93 |
| Literature Retrieval for Expert Discovery | 2,443.47 |
| Photocopy | 6,717.60 |
| Facsimile/Telecopy | 14.00 |
| Postage | 49.49 |
| Lexis/Nexis Research | 1,504.82 |
| Westlaw Research | 12,363.62 |
| **TOTAL** | **103,325.83** |

25.    LeClair Ryan incurred expenses as follows, according to its records:

| **Category of Expense** | **Amount ($)** |
|---|---:|
| Pacer - Docket Research | $32.90 |
| Copy Charges | $888.70 |
| Express Delivery | $125.35 |
| Postage | $9.10 |
| Court costs | $775.00 |
| **TOTAL** | **$1,831.05** |

26.    Psych-Appeal did not incur expenses. Bendat Decl. ¶ 18. Thus, Class Counsel's reasonable expenses incurred in the litigation total $105,168.88.[3]

---

[3] This total includes Class Counsel's anticipated expenses associated with the final approval hearing on July 10, 2019.

## VI. Incentive Award for Named Plaintiff/Class Representative

27. Class Counsel's experience is that individuals are reluctant to serve as named plaintiffs or class representatives in cases challenging health insurance practices that affect people with mental illness. It remains the unfortunate reality that many persons with mental health conditions feel, and are, stigmatized because of their illness. Accordingly, individuals are often understandably reluctant to be the public face of a lawsuit challenging practices that adversely impact people with mental health issues, because participation requires a degree of disclosure and invites close, critical scrutiny of their mental health histories. Compounding the problem is that persons struggling with mental health issues may be compromised in their ability to advocate for themselves and to serve effectively as a named plaintiff. Mr. Meidl willingly shared highly personal details about his own behavioral health. As a result, he shined light on a uniform clinical policy concerning TMS that he alleged to be wrong and illegal, and pursued relief that would ensure that not just he, but others with major depression who seek TMS from Aetna, receive insurance benefits for TMS. He was an exceptionally dedicated and zealous advocate for the interests of the Class, conferred regularly with Class Counsel about the facts and legal theories, and participated actively in discussions concerning the litigation and settlement strategy. He prepared and sat for a full-day deposition. Mr. Meidl deserves substantial credit for his role in the case and its outcome, and deserves a $20,000 incentive award.

## VII. Monetary Recovery for the Class

28. Data produced by Aetna for the full Class Period show total billed charges for the Class of approximately $6.34 million. The Settlement Amount of $6.2 million represents 98% of this total.

29. Data produced by Aetna show that for claims for TMS that Aetna has paid, it has on average paid substantially less than the billed charge amount, reflecting reductions based on

plan terms, co-insurance, and deductible obligations. After deduction of the requested Incentive Award, attorneys' fees, and notice costs from the Settlement Amount, Class Counsel currently estimate that Class members who receive *pro rata* distributions from the Settlement Fund are likely to receive approximately 70% of what they likely would have received if their claims were all deemed covered.

30. I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this 20th day of May, 2019, in Washington, DC.

/s/ Andrew N. Goldfarb
Andrew N. Goldfarb, Esq.