UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER MEIDL, on his own behalf | : | CIVIL ACTION NO. |
| and on behalf of all others similarly situated, | : | 3:15 CV 01319 (JCH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AETNA INC., *et al.*, | : | |
| | : | JUNE 25, 2019 |
| Defendants. | : | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES AND EXPENSES**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 3

I.      IN COMPLEX ERISA CASES SUCH AS THIS, THE COURT MAY LOOK TO OUT-OF-DISTRICT RATES TO DETERMINE A REASONABLE HOURLY RATE ........................................................................ 4

II.      CLASS COUNSEL'S HOURLY RATES ARE REASONABLE WHETHER COMPARED TO RATES OF NATIONAL PEER FIRMS OR TO RATES OF THE IN-DISTRICT PRACTITIONERS NOW PROSECUTING COMPLEX ERISA CASES ................................................................................. 5

     A.      This Case Implicates Specialized Expertise That Justifies Consideration of Out-of-District Rates ............................................................................ 5

     B.      Class Counsel Has Exceptional Experience and Expertise in Complex ERISA Cases Like This One ..................................................................... 7

         1.      Additional information on the background and experience of attorneys who participated in this case .......................................... 7

         2.      Class Counsel has specialized expertise challenging insurance company policies, practices, and guidelines under ERISA ........... 9

         3.      The hourly rates Class Counsel used to calculate the lodestar are set annually after review of peer firms in the national market for complex litigation, and Class Counsel's clients pay those rates in hourly fee arrangements .................................. 11

     C.      Comparison to In-District Practitioners Confirms Why the Court Should Find Class Counsel's Hourly Rates Reasonable in This Case ...... 13

     D.      Class Counsel Likely Achieved a Better Outcome for the Class Than an In-District Attorney ........................................................................... 15

CONCLUSION ....................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
   522 F.3d 182 (2d Cir. 2008) .................................................................. 11, 16

*DeMaria v. Horizon Healthcare Servs., Inc.*,
   No. 2:11-cv-7298 (WJM), 2016 WL 6089713 (D.N.J. Oct. 18, 2016) .................................. 12

*Edwards v. N. Am. Power & Gas, LLC*,
   No. 3:14-cv-01714 (VAB), 2018 WL 3715273 (D. Conn. Aug. 3, 2018) ............................... 14

*Frommert v. Conkright*,
   223 F. Supp. 3d 140 (W.D.N.Y. 2016) ............................................................ 5

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ........................................................ 3, 4, 6, 15, 17

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014) ........................................................... 5, 6

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir.1974) ................................................................. 16, 17

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*,
   880 F.3d 620 (2d Cir. 2018) ..................................................................... 16

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998) ..................................................................... 17

*Palmer v. Midland Funding, LLC*,
   No. 3:14-CV-00691 (JCH), 2015 WL 1897457 (D. Conn. Apr. 27, 2015) ....................... 11, 13

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010) ............................................................................. 16

*Pfeifer v. Wawa, Inc.*,
   Civ. No. 16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ................................... 5

*S. New England Tel. Co. v. Global Naps, Inc.*,
   Civil Action No. 3:04-CV-2075 (JCH), 2008 WL 1848899 (D. Conn. Apr. 25, 2008) ............. 5

*Simmons v. N.Y.C. Transit Auth.*,
   575 F.3d 170 (2d Cir. 2009) .................................................................. 4, 15

*Sims v. BB&T Corp.*,
  No. 1:15-cv-732, 2019 WL 1993519 (M.D.N.C. May 6, 2019) ....................................... 5, 6, 13

*Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*,
  Civil No. 3:10-CV-60 (JBA), 2012 WL 4092515 (D. Conn. Sept. 17, 2012) ........................... 4

*Weil v. Cigna Health & Life Ins. Co.*,
  2:15-cv-07074-MWF-JPR, 2017 WL 3737851 (C.D. Cal. Aug. 29, 2017) ............................ 12

# INTRODUCTION

On May 20, 2019, Plaintiff Christopher Meidl, on behalf of himself and the certified class ("Class"), filed his application for attorneys' fees and expenses for Court-appointed Class Counsel Zuckerman Spaeder LLP and Psych-Appeal, Inc. (together, "Class Counsel"), and for an incentive award. ECF No. 207 ("Fee Motion").

On June 14, 2019, the Court ordered Plaintiff to supplement his Fee Motion with additional information about the billing attorneys and support for Class Counsel's rates. The order states:

> The court requests that plaintiff's counsel submit further briefing and material in support of his Motion for Attorneys Fees (Doc. No. 207). Specifically, [1] the court requests information regarding all billing attorneys including, e.g., year admitted to the Bar, experience. In addition, [2] the court requests briefing on the reasonableness of fees charged by out-of-district attorneys and whether reasonableness of rates is measured by comparison to attorney billing rates within the District. Further, [3] even if not measured by comparison to district rates, the plaintiff provides no basis for the hourly rates charged, other than his counsel's claim that 90% of their clients pay these rates.

ECF No. 209. In this supplemental brief and the accompanying declarations, Plaintiff responds to the three components of the Court's request.

First, Plaintiff provides the requested additional information about all of the billing attorneys for Zuckerman Spaeder and Psych-Appeal, Inc. That information demonstrates that Class Counsel's rates are reasonable. Class Counsel—and specifically, the four lawyers who worked most on the case—have the specialized ERISA experience that this case required. Unlike many ERISA lawyers who handle individual benefit denials (often in the pension benefits context), Class Counsel has a proven track record of successfully representing ERISA beneficiaries in more complex cases that focus on behavioral health treatment issues and that require expertise in class certification, the internal coverage policies and guidelines that drive

coverage and benefits denials, the interplay between such policies and guidelines and written plan documents, and the ways in which those policies can be challenged under ERISA.

Second, the Court should measure the reasonableness of Class Counsel's rates by comparing them to the "national rates" charged by firms that specialize in complicated ERISA matters such as this one. Many courts have held that it is appropriate to look outside the District when evaluating the reasonableness of ERISA class counsel's rates because of the specialized nature of ERISA litigation and the likelihood that experienced ERISA attorneys can produce superior results. Indeed, in this action with a certified national class, the Court *must* look outside the District to some degree: as the Declaration of Mark Kindall of West Hartford -based Izard, Kindall & Raabe, LLP indicates, in 2015 there was no firm in the District that was actively pursuing and bringing cases like this one. Indeed, there is still no in-district firm prosecuting ERISA behavioral health care cases like this one. Finally, even if the Court compares Class Counsel's rates to the two firms in Connecticut (one based in the State, one the Hartford office of a national firm) that, in the last few years, have begun to do more complex ERISA health care (but not mental health) cases, the Declaration of James K. Robertson, Jr. of Connecticut's Carmody Torrance Sandak & Hennessey LLP shows that those firms have rates that approach and even exceed Class Counsel's.

Third, Class Counsel used hourly rates that are set annually to be competitive in the national complex litigation markets in which they practice (including ERISA). As described below, Zuckerman Spaeder conducts a comparative review of peer and competitor firms to set rates for use in hourly fee arrangements, which is how the vast majority of its engagements are structured. Thus, its rates are "real"—that is clients agree to, and do, pay its rates on a regular

schedule, including the rates of Messrs. Hufford, Cowart, and Goldfarb. Psych-Appeal similarly has clients that pay Mr. Bendat's rates in hourly billing arrangements.

Courts in districts throughout the country have approved Class Counsel's requests for a percentage of the common fund in connection with ERISA class action settlements. Both explicitly and implicitly, these courts have uniformly found Class Counsel's rates to be reasonable.

## ARGUMENT

To respond to the Court's June 14 docket order, Plaintiff first explains why the unique claims and objectives of this case—in contrast to an "ordinary" ERISA claim for individual benefits—justifies the Court's consideration of out-of-district or "national" rates. To support the reasonableness of Class Counsel's rates, Plaintiff next provides the requested additional background information about the particular lawyers who litigated the case; describes the process by which Zuckerman sets rates for complex cases (like this one), which rates Plaintiff used to calculate Class Counsel's lodestar in this case;[1] and explains that Zuckerman's hourly fee-paying clients overwhelmingly pay the charged rates. Finally, Plaintiff shows that there were no in-district firms litigating cases like this one when Class Counsel brought the case in 2015, and that the few practitioners in Connecticut currently litigating similarly complex ERISA cases have rates comparable to those of Class Counsel.[2]

---

[1] The Supplemental Declaration of Andrew N. Goldfarb describes a small correction to the calculation used in the Fee Motion that results in a decrease in the lodestar by less than $7,400. Suppl. Goldfarb Decl. ¶ 6. With the additional time Class Counsel will spend implementing the Settlement, the requested fee will result in a "negative multiplier" (a multiplier less than one) compared to the lodestar. *Id.* ¶ 7.

[2] In the Fee Motion, Plaintiff set out and applied the law in this Circuit for determining a reasonable fee in a settlement that creates a common fund for a class. As described therein, in light of the exceptional results obtained for the Class and the other *Goldberger* factors, Plaintiff requests a fee based on a percentage of the common fund (33.3%), the approach that is the

I.      **IN COMPLEX ERISA CASES SUCH AS THIS, THE COURT MAY LOOK TO OUT-OF-DISTRICT RATES TO DETERMINE A REASONABLE HOURLY RATE.**

Whether as a check to confirm the reasonableness of the percentage-of-the-fund or as the primary method to determine a reasonable fee, in performing a lodestar calculation, the Court must determine the appropriate hourly rate to apply in calculating the lodestar. While there is a presumption that courts should look first to in-district rates to determine a "reasonable fee," the Second Circuit has recognized that in-district rates should not apply where a litigant establishes that "a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009). Litigants may establish the reasonableness of hiring out-of-district counsel at higher rates by establishing "counsel's special expertise in litigating the particular type of case" or "that local counsel possessing requisite experience were unwilling or unable to take the case" or "that no in-district counsel possessed such expertise." *Id.* at 176. As described below, this case presents the circumstances warranting consideration of out-of-district rates—Class Counsel has extensive "special expertise" in the kind of case at issue here, local counsel with the requisite experience did not exist in 2015 when the case was filed, and as a result the outcome for the Class was better.

Courts in this District have recognized that acceptance of out-of-district rates is proper "where the expertise and speciality justify it." *Tyco Healthcare Grp. LP v. Ethicon Endo-*

---

preferred method in the Second Circuit. Moreover, Plaintiff explained, in the context of a lodestar check, that Class Counsel's basic lodestar is almost identical to requested percentage of the common fund, a fact that supports the reasonableness of the fee request. Here, unlike in *Goldberger*, 209 F.3d at 56, Plaintiff does not request an enhancement to Class Counsel's lodestar (based on rates used in the lodestar check) to give them a multiplier—indeed, any multiplier above one would result in a fee that exceeds the amount that Plaintiff requests—one-third of the common fund.

*Surgery, Inc.*, Civil No. 3:10-CV-60 (JBA), 2012 WL 4092515, at *2 (D. Conn. Sept. 17, 2012); *S. New England Tel. Co. v. Global Naps, Inc*., Civil Action No. 3:04-CV-2075 (JCH), 2008 WL 1848899, at *2 (D. Conn. Apr. 25, 2008). And courts in this Circuit and around the country have repeatedly found that ERISA cases require the specialized expertise that justifies application of out-of-district rates. *See, e.g.*, *Sims v. BB&T Corp*., No. 1:15-cv-732, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) ("Typically a reasonable rate is calculated by looking at the local market, . . . but a national market rate is appropriate for matters involving complex issues requiring specialized expertise, such as ERISA class actions."); *Frommert v. Conkright*, 223 F. Supp. 3d 140, 150–51 (W.D.N.Y. 2016); *Pfeifer v. Wawa, Inc*., Civ. No. 16-497, 2018 WL 4203880, at *14 (E.D. Pa. Aug. 31, 2018) ("[T]he complex and difficult nature of this class action ERISA case demands a quality of service for which relatively expensive representation is to be expected.") (citation omitted); *see also In re Colgate-Palmolive Co. ERISA Litig*., 36 F. Supp. 3d 344, 350 (S.D.N.Y. 2014) (noting that "a higher fee is warranted in ERISA cases as compared with some other types of cases" because "ERISA concerns a highly specialized area of law" and "relatively few lawyers have the expertise to litigate the types of claims in this case").

## II. CLASS COUNSEL'S HOURLY RATES ARE REASONABLE WHETHER COMPARED TO RATES OF NATIONAL PEER FIRMS OR TO RATES OF THE IN-DISTRICT PRACTITIONERS NOW PROSECUTING COMPLEX ERISA CASES.

### A. This Case Implicates Specialized Expertise That Justifies Consideration of Out-of-District Rates.

There are several features of this case that support the Court's consideration of out-of-district rates. First and most importantly, this is not a "garden variety" ERISA case concerning

an individual challenge to a denial of benefits.[3] After Aetna denied Plaintiff's pre-service and post-service claims for TMS coverage and benefits, and then rejected his appeals in 2013-2014, Mr. Meidl was interested in pursuing litigation against Aetna. He believed both that Aetna's denial of his specific TMS claims under his health plan was wrong, and also that Aetna's policy at the time—that TMS was *always* experimental and investigational for treating major depression—was improper. Meidl Decl. ¶ 8. Thus, Mr. Meidl (and Class Counsel's) primary objective was to challenge Aetna's clinical TMS policy, because that was the root of Aetna's denial of Mr. Meidl's claims and those similarly situated. Given the cost of TMS—a full course of TMS costs thousands of dollars, *e.g.*, Corrected Am. Compl. ¶ 40 (ECF No. 112)—Mr. Meidl also wanted to obtain a remedy that would give people a way to recoup at least a share of their out-of-pocket expenditures for TMS during the period in which Aetna uniformly denied such claims. While an individual suit seeking ERISA benefits might realize the second objective—the payment of benefits—at least for the individual plaintiff, it would not accomplish the larger, more impactful objectives: the change in policy and relief for all people impacted by the old policy.

Second, to accomplish those objectives, Plaintiff needed counsel with experience using ERISA to challenge systemic policies and practices that underlie coverage and benefits denials, and in particular those related to mental health.[4] Numerous courts have found that such expertise in ERISA justifies higher rates. *See, e.g.*, *Sims*, 2019 WL 1993519, at *2 (approving hourly rates

---

[3] By highlighting the differences between the objectives, claims, and necessary discovery in this case, as compared to more traditional individual benefit cases, Plaintiff in no way diminishes the importance and value of those cases and the attorneys who prosecute them.

[4] "Counsel's fees should reflect the important public policy goal of 'providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'" *Colgate-Palmolive*, 36 F. Supp. 3d at 352 (quoting *Goldberger*, 209 F.3d at 51). Cases like this one that seek to improve access to treatments for people with major (treatment-resistant) depression fall squarely within the category of "common fund cases that serve the public interest."

of up to $1,060 in recognition that "ERISA litigation is a 'rapidly evolving and demanding area of law'" with a "significant risk of nonpayment," and so "recovery requires navigating novel issues and applying specialized skills."); *see also* cases cited in Sec. I, *supra*. Challenging Aetna's policy required Class Counsel to examine and prove facts concerning the reasonableness of Aetna's process for developing and updating its TMS policy , the standards and criteria it used to do so, and the relationship of those things to the reasonableness of Aetna's interpretation of the written terms of Aetna's plans. This was not a typical ERISA claim, and therefore out-of-district rates are appropriate to consider.

**B.    Class Counsel Has Exceptional Experience and Expertise in Complex ERISA Cases Like This One.**

1.    Additional information on the background and experience of attorneys who participated in this case.

In declarations accompanying the Fee Motion, Class Counsel described the background, training, and experience of the four lawyers most responsible for the representation—Messrs. Hufford, Cowart, Goldfarb, and Bendat. Dkt. Nos. 207-2 and 207-3.

The Court requested more information about all of the lawyers who billed time in the case. ECF No. 209. Set forth below is a chart (which is also attached to the Suppl. Goldfarb Decl. as Ex. 1) listing the case's billing lawyers, including their year admitted to the Bar, office, title, current hourly rate, and number of hours billed as of the filing of the Fee Motion.

| Zuckerman Timekeeper (Bar admission year) | Office | Position | Hourly rate ($)* | Hours (as of Fee Motion) |
|---|---|---|---|---|
| D. Brian Hufford (1989) | NY | Partner | 1,095 | 208.15 |
| Paula M. Junghans (1976) | DC/Balt | Partner | 995 | 29.70 |
| Jason S. Cowart (2000) | NY | Partner | 940 | 301.00 |
| David Reiser (1982) | DC | Counsel | 890 | 4.00 |
| Andrew N. Goldfarb (1995) | DC | Partner | 820 | 1,546.00 |
| Carlos T. Angulo (2000) | DC | Partner | 795 | 10.80 |
| William K. Meyer (1982) | Balt | Counsel | 785 | 1.40 |

| | | | | |
|---|---|---|---|---|
| Caroline E. Reynolds (2003) | DC | Partner | 785 | 1.60 |
| Adam Abelson (2010) | Balt | Associate | 650 | 1.80 |
| Vanessa Isabel Garcia (2014) | NY | Associate | 560 | 2.80 |
| Devon Galloway (2015) | NY | Associate | 560 | 9.20 |
| Andrew Caridas (2012) | DC | Associate | 535 | 36.80 |
| Richard A. Kraus (2017) | NY | Associate | 425 | 6.70 |
| Laura Eller (1996) | DC | Staff Attorney | 375 | 6.00 |
| Kimberly Gainey (2007) | DC | Staff Attorney | 375 | 9.70 |
| Nina J. Falvello (1996) | DC | Staff Attorney | 375 | 5.90 |
| Lori V. Duignan | NY | Paralegal | 355 | 238.00 |
| Melissa D. Lovell (2019) | DC | Legal Researcher | 305 | 54.80 |

\* For people no longer at Zuckerman, the chart lists the rate for the last year that they were at firm.

This information confirms that other than Messrs. Hufford, Cowart, and Goldfarb, the other lawyers assisted in discrete or short-term capacities.[5] Also, attached to the Supplemental Goldfarb Declaration are the website bios for all Zuckerman lawyers who have billed time in the case and who are currently at the firm. The bios provide additional information about each lawyer's background and experience.

As summarized in the First Goldfarb Declaration and in the material accompanying the Supplemental Goldfarb Declaration, the three lead Zuckerman attorneys have between 20 and 34 years' experience in complex civil litigation. Mr. Hufford and Mr. Cowart have dedicated much of their practice for the last decade to health care class action ERISA cases, like the one at bar, that challenge insurance company policies, practices, and guidelines that impact access to mental

---

[5] Only one other partner, and one associate, billed at least 11 hours on the case. Ms. Junghans (29.7 hours) is a highly experienced trial lawyer who got involved in the later stages of the case in anticipation of a trial. Mr. Caridas (36.8 hours) assisted Mr. Hufford and Mr. Cowart in the very early stages of the case before Mr. Goldfarb assumed primary responsibility for the litigation. The other lawyers performed limited legal and/or factual research or helped with other discrete tasks. Ms. Lovell (54.8 hours) was a law school graduate who acted as a legal researcher/librarian during the period she worked on the case. Ms. Duignan is a paralegal with over 15 years' experience. Throughout the case, she has played an indispensable role assisting Class Counsel in all facets of the litigation. Suppl. Goldfarb Decl. ¶ 9.

health treatments and services. Mr. Goldfarb led another similar case challenging Cigna's TMS policy (*Weil v. Cigna Health and Life Ins. Co.*, No. 2:15-cv-07074-MWF-JPR (C.D. Cal.)), and has led the prosecution of other complex ERISA cases in recent years. As shown below, that specialized experience benefitted Plaintiff and the Class, and Class Counsel's rates are reasonable whether the Court compares them to national firms or to the rates of the few Connecticut practitioners who have in the past few years begun doing somewhat similar ERISA cases.

        2.     <u>Class Counsel has specialized expertise challenging insurance company policies, practices, and guidelines under ERISA.</u>

Few, if any, other law firms match Class Counsel's expertise and experience in this area of law: ERISA actions against insurers that challenge the *policies, practices, or guidelines* that underlie adverse coverage decisions and/or wrongful denial of *mental health benefits*. For example, in early 2019 Zuckerman was named by Law360 as the 2018 Benefits Group of the Year for its pioneering work in this area. Ex. 3 to Suppl. Goldfarb Decl. The lead attorneys on this case have successfully prosecuted numerous ERISA class actions, as well as precedent-setting single-case claims under ERISA, against numerous insurers in addition to Aetna, including Cigna, WellPoint, Blue Cross and Blue Shield, and United Health. The First Goldfarb Declaration lists a number of these class actions, including Mr. Hufford's $350 million settlement against United in 2010, the largest settlement of an ERISA health benefits class action in history. First Goldfarb Decl. ¶ 11. And before bringing this case, Class Counsel brought the *Weil* case against Cigna for its uniform policy of denying coverage for TMS for depression.[6] Mr.

---

[6] Other cases focused on insurance company policies, practices, and guidelines related to behavioral health include *Craft v. Health Care Service Corp.*, No. 1:14-cv-05853-VMK (N.D. Ill.); *Wit v. United Behavioral Health*, No. 3:14-cv-2346-JCS (N.D. Cal.); *Alexander v. United Behavioral Health*, No. 3:14-cv-5337-JCS (N.D. Cal.); and *O'Dowd v. Anthem Health Plans, Inc.*, No. 14-cv-2787-KLM-NYW (D. Colo.).

Hufford and Mr. Cowart have been counsel of record in at least eight class actions alleging ERISA violations against insurance companies. *See* https://www.zuckerman.com/health-care-class-actions. Plaintiff respectfully submits that Class Counsel possesses the type of expertise that this case required.

Mr. Meidl's experience trying to find the right lawyer for this case is illustrative. After Aetna denied his pre-service and post-service claims for TMS coverage and benefits, and then rejected his appeals, Mr. Meidl was interested in pursuing litigation against Aetna. He did Internet research to try to identify firms that could assist him. Meidl Decl. ¶ 9. In mid-2015, Plaintiff first learned about Zuckerman, and after doing background Internet research, reached out via email to Mr. Hufford. After a series of communications with Mr. Hufford, he agreed that Zuckerman had the requisite experience and retained the firm. The fact that Zuckerman was also counsel in a similar ERISA class action case about TMS against another insurance company contributed to his decision to retain Zuckerman and to agree to serve as the lead plaintiff. *Id.* ¶ 11.[7]

The Supplemental Declaration of Psych-Appeal's Meiram Bendat also underscores Zuckerman's specialized value in cases like this one. Mr. Bendat regularly represents individuals and clinicians in challenges to insurance company decisions and policies on mental health coverage and benefits issues. Suppl. Bendat Decl. ¶ 8. In his work and involvement in professional societies and mental health advocacy efforts, he frequently comes across situations that require specialized ERISA expertise because they concern relatively untested mental health parity statutes and/or the development of internal coverage guidelines whose propriety turns on

---

[7] Plaintiff believes that Class Counsel has done "exceptional work" on behalf of him and the Class, and that the litigation has accomplished his two major objectives—a change from Aetna's policy uniformly denying coverage for TMS for major depression, and significant monetary relief to every member of the Class. *Id.* ¶¶ 14-15.

the interplay between the written plan terms and the ways in which mental healthcare is diagnosed and treated. *Id.* ¶ 9. He is generally aware of the community of lawyers who litigate plaintiff-side ERISA cases that implicate issues beyond individual claims for benefits, and has repeatedly chosen to partner with Zuckerman Spaeder precisely because of its rare combination of substantive expertise, litigation experience, and commitment to invest the resources necessary to litigate cases effectively. *Id.* ¶ 11.

3.　The hourly rates Class Counsel used to calculate the lodestar are set annually after review of peer firms in the national market for complex litigation, and Class Counsel's clients pay those rates in hourly fee arrangements.

A reasonable hourly rate is "the rate a paying client would be willing to pay." *Palmer v. Midland Funding, LLC*, No. 3:14-CV-00691 (JCH), 2015 WL 1897457, at *2 (D. Conn. Apr. 27, 2015) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)).

As a general matter, Class Counsel regularly litigate in courts across the country against well-funded insurance companies that are represented by large, sophisticated national firms (as in this case). Zuckerman Spaeder is a relatively small litigation firm that has hourly fee arrangements with the vast majority of its clients. First Goldfarb Decl. ¶ 8. Here, Zuckerman calculated its lodestar using the rates that Zuckerman presumptively and regularly charges for complex, high-stakes litigation matters. Supp. Goldfarb Decl. ¶ 11. These rates are set annually after review of information about billing rates from multiple sources regarding peer firms that engage in such litigation, including proprietary surveys published by accounting firms. *Id.* Zuckerman concentrates its analysis on firms engaged in complex litigation matters (other than intellectual property), including firms against which Zuckerman regularly competes for business

and firms that Zuckerman regularly litigates with or against. *Id.* The rates typically fall in the middle range of relevant reported rates for such firms. *Id.*

Over the past three years, Zuckerman's average realization rate (i.e., amount collected over amount billed) for its hourly billing matters is almost 95% of the charges rates. Supp. Goldfarb Decl. at ¶ 12. Zuckerman clients have paid the rates of Mr. Hufford, Mr. Cowart, and Mr. Goldfarb (as well as the other lawyers included in the lodestar) in hourly fee arrangements. *Id.* ¶ 13 (describing hourly fee engagements). Similarly, Mr. Bendat has institutional mental health providers as clients who pay his rate in hourly fee arrangements. Supp. Bendat Decl. ¶ 5. This is strong evidence that Class Counsel's rates used to calculate its lodestar in this case are reasonable because they are, in fact, rates that paying clients are willing to, and do, pay on a regular schedule.

Moreover, courts around the country have repeatedly approved Class Counsel's fee requests in connection with common-fund ERISA class action settlements, where Class Counsel has used their usual rates as part of a lodestar check to support the reasonableness of the requested percentage of the common fund.[8] Indeed, in 2010 this Court approved a fee request in a class action settlement in which Zuckerman attorneys were among class counsel, and the Court accepted Zuckerman's then-current rates as the basis for the lodestar check. *See* Order at 12-13, *Spencer v. Hartford Fin. Servs. Grp., Inc.*, Case No. 3:05-cv-1681 (JCH) (D. Conn. Sept. 21, 2010), ECF No. 258 (approving attorney fee award of 30% of settlement fund, which amounted

---

[8] *Weil v. Cigna Health & Life Ins. Co.*, 2:15-cv-07074-MWF-JPR, 2017 WL 3737851, at *4 (¶ 17) (C.D. Cal. Aug. 29, 2017); *DeMaria v. Horizon Healthcare Servs., Inc.*, No. 2:11-cv-7298 (WJM), 2016 WL 6089713, at *5 n.1 (D.N.J. Oct. 18, 2016) (finding billing rates reasonable); Final Order and Judgment Approving Settlement and Dismissing Action With Prejudice at ¶ 12, *Craft v. Health Care Serv. Corp.*, 1:14-cv-05853-VMK (N.D. Ill. Feb. 26, 2018), ECF No. 170; *see also* Amended Final Order and Judgment Approving Settlement and Dismissing Action With Prejudice at ¶ 12, *Doe v. Health Care Serv. Corp.*, No. 1:16-cv-04571-VMK (N.D. Ill. Oct. 19, 2018), ECF No. 85.

to a lodestar multiplier of 3.7, and accepting rates as basis for lodestar check) and Decl. of David S. Golub at 35 (Aug. 16, 2010), ECF No. 246 (setting forth then-current Zuckerman Spaeder rates of up to $750/hour).

### C. Comparison to In-District Practitioners Confirms Why the Court Should Find Class Counsel's Hourly Rates Reasonable in This Case.

The determination of a prevailing rate also requires a "case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Palmer*, 2015 WL 1897457, at *2 (citation omitted). ERISA class actions require the investment of "considerable resources and hold uncertain potential for recovery," making it "unsurprising that only a few firms" are willing to undertake such cases. *Sims*, 2019 WL 1993519, at *3. Such is the case in Connecticut. Indeed, in 2015 there was no in-district lawyer or firm doing cases like this one—a case challenging Aetna's clinical policy on TMS.

In the wake of the Court's June 14th order, and at the request of Class Counsel, James K. Robertson, Jr., a highly experienced trial attorney and leading member of the Connecticut legal community for 45 years, canvassed the District of Connecticut to assess the availability of in-district counsel for a case like this. Mr. Robertson identified only two Connecticut firms, Walsh Woodard LLC (formerly Moukawsher & Walsh, LLC) and Izard, Kindall & Raabe LLP ("IKR"), and one Connecticut attorney from a national firm, William H. Narwold of Motley Rice LLC, that have handled more complex, multi-plaintiff or class cases under ERISA litigation on behalf of plaintiffs with any regularity. Declaration of James K. Robertson, Jr. ¶ 8. Mr. Robertson's research shows that recent ERISA class action litigation in Connecticut has been led largely by out-of-state counsel, if not one of the firms above. *Id.* ¶ 9.

Walsh Woodard LLC no longer handles ERISA class action litigation. *Id.* ¶ 10. And IKR has never gotten involved in ERISA cases that concern mental health issues. Declaration of Mark

P. Kindall ¶ 5. That firm actively considered doing so a few years ago, but concluded that it did not have sufficient knowledge of the complexities and nuances of mental health issues and treatments to initiate litigation challenging coverage issues related thereto. *Id.* Accordingly, it decided to focus on other practice areas. *Id.* According to Mr. Kindall, had the firm been approached in 2015 to bring a case like that brought on behalf of Mr. Meidl, IKR would likely have declined it. *Id.* ¶ 6. Moreover, Mr. Kindall is not aware of any firm in this District that would have taken Plaintiff's case in 2015, and is not aware of any firm in this District that is now bringing such cases. *Id.*

Moreover, Mr. Robertson's research shows that the average hourly rates of Connecticut practitioners as a whole are not representative of what a reasonable hourly rate would be in this case because the vast majority of Connecticut practitioners do not have an ERISA practice, and those that do are not involved in similarly complex cases. Robertson Decl. ¶ 13. Thus, were the Court to compare Class Counsel's rates to those of any Connecticut attorneys, the appropriate comparison is to the few lawyers who are involved in a few ERISA health care class cases (though not mental health cases)—IKR and the Hartford office of Motley Rice.

Those attorneys' rates are comparable to Class Counsel's. The current rates of the lead partners at IKR range from $850 to $925 per hour. *Id.* ¶ 11; *See Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-cv-01714 (VAB), 2018 WL 3715273, at *14 (D. Conn. Aug. 3, 2018) (approving fee request based in part on IKR rates up to $920 per hour). The current billing rate for Motley Rice's Mr. Narwold is $1,100 per hour, and the current rate for the other two lawyers in Motley Rice's Hartford office, who have 13 and 12 years of experience respectively, is $775 per hour. Robertson Decl. ¶ 13.

**D.** **Class Counsel Likely Achieved a Better Outcome for the Class Than an In-District Attorney.**

The Court may look to out-of-district rates to determine the reasonableness of Class Counsel's rates in this case because Plaintiff's selection of out-of-district counsel likely produced a better result for him and the Class. *See Simmons*, 575 F.3d at 175-76. [9]

First, while Plaintiff may have been able to find a lawyer in Connecticut to pursue an individual claim for benefits, such a case likely would *not* have led Aetna to change its underlying coverage policy or to reconsider other people's denials. Class Counsel structured and litigated the case in a way that accomplished both of these objectives. Based on its extensive class action experience, Class Counsel proved that the case was entitled to class certification. Discovery showed the uniformity of Aetna's conduct; however, that uniformity was in no way clear at the outset. *See Goldberger*, 209 F.3d at 55 ("litigation risk must be measured as of when the case is filed"). During class-related discovery, Class Counsel pursued and then analyzed claim data and a sufficient sample of underlying claim files to show that Aetna had applied its policy uniformly to deny all requests for TMS, even in cases where there was superficial evidence of another reason (such as medical necessity) for the denial. Class Counsel developed this evidence and then used it to support class certification under provisions of Rule 23 that are often ignored in ERISA class actions—Rule 23(b)(1) and (b)(2). Moreover, Class Counsel countered Gibson Dunn's numerous arguments that individualized issues precluded certification, and then successfully responded to Aetna's Rule 23(f) petition to the Second Circuit filed by a leading Supreme Court advocate.

---

[9] Moreover, as shown above, at the time the case was filed in 2015 there were no in-district counsel with the requisite expertise who were pursuing cases like this one. Kindall Decl. ¶ 7; Robertson Decl. ¶¶ 8-11. That makes acceptance of Class Counsel's fees as reasonable all the more appropriate in this case.

Second, during the merits phase of the case, Class Counsel focused on evidence that lawyers handling typical ERISA benefit claims do not ordinarily address. Unlike a typical ERISA benefits case that challenges the defendant's application of a narrow set of facts (those contained in the administrative record) to a written document (generally the plan), Plaintiff's claims challenged Aetna's TMS coverage policy itself, based on the assertion that it was inconsistent with the terms of all of Aetna's written plan documents and with the fiduciary duties imposed on Aetna by ERISA. Class Counsel understood how and where it might find evidence to prove this more difficult claim. *See* Ruling re: Mot. for Summ. J. at 20-26 (discussing deposition testimony and Clinical Policy Charter), ECF No. 169. The evidence Class Counsel developed was sufficient to defeat Aetna's summary judgment motion, *id.*, and led directly to the negotiated settlement.

And finally, the results that Class Counsel achieved for the Class through the litigation and in the Settlement are exceptional. Critically, Aetna now agrees that TMS can be a medically necessary treatment for major depression and thus may be covered under health plans it administers. Fee Mot. at 5-6. And the Settlement also provides significant monetary relief to all Class members through a common fund equal to 98% of the total billed charges for denied TMS claims in Aetna's records.[10]

---

[10] In this case, if the Court were to use a lodestar-based approach as the primary method to determining a reasonable fee in this common fund settlement, and if the Court were to apply the multifactor test more often applied to fee awards in the context of fee-shifting statutes, it should still determine that Class Counsel's rates are reasonable. In *Arbor Hill*, the Second Circuit discussed a 12-factor test that district courts can use to determine a reasonable fee in fee-shifting cases. 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974)). While the Second Circuit has recently stated that "the Supreme Court has cast some doubt on whether the *Johnson* approach remains favored even for fee-shifting cases," *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 634 n.8 (2d Cir. 2018) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550-52 (2010)), if the Court considers the *Arbor Hill/Johnson* factors it should similarly conclude that 33.3% of the common fund is a reasonable

## CONCLUSION

For the foregoing reasons and those in the Fee Motion, the Court should find Class Counsel's rates reasonable and grant the Fee Motion.

Dated: June 25, 2019          Respectfully submitted,

<table>
<tr><td></td><td>  /s/ Andrew N. Goldfarb</td></tr>
<tr><td>Elizabeth K. Acee</td><td>Andrew N. Goldfarb</td></tr>
<tr><td>Federal Bar No.: ct 20986</td><td>Federal Bar No.: phv 07743</td></tr>
<tr><td>elizabeth.acee@leclairryan.com</td><td>agoldfarb@zuckerman.com</td></tr>
<tr><td>Daniel P. Elliott</td><td>ZUCKERMAN SPAEDER LLP</td></tr>
<tr><td>Federal Bar No.: ct 28058</td><td>1800 M Street, NW, Suite 1000</td></tr>
<tr><td>daniel.elliott@leclairryan.com</td><td>Washington, D.C. 20036</td></tr>
<tr><td>LeCLAIRRYAN, P.C.</td><td>Tel: 202.778.1800</td></tr>
<tr><td>545 Long Wharf Drive, 9th Floor</td><td>Fax: 202.822.8106</td></tr>
<tr><td>New Haven, CT 06511</td><td></td></tr>
<tr><td>Tel.: 203.672.1638</td><td>D. Brian Hufford (Pro Hac Vice)</td></tr>
<tr><td>Fax: 203.672.3228</td><td>dbhufford@zuckerman.com</td></tr>
<tr><td></td><td>ZUCKERMAN SPAEDER LLP</td></tr>
<tr><td>Meiram Bendat (Pro Hac Vice)</td><td>485 Madison Avenue, 10th Floor</td></tr>
<tr><td>mbendat@psych-appeal.com</td><td>New York, NY 10022</td></tr>
<tr><td>PSYCH-APPEAL, INC.</td><td>Tel: 212.704.9600</td></tr>
<tr><td>8560 West Sunset Blvd., Suite 500</td><td>Fax: 212.704.4256</td></tr>
<tr><td>West Hollywood, CA 90069</td><td></td></tr>
<tr><td>Tel: 310.598.3690 Ext. 101</td><td></td></tr>
<tr><td>Fax: 888.975.1957</td><td>*Counsel to Plaintiff Christopher Meidl and the Certified Class*</td></tr>
</table>

---

fee in this case. In applying the *Goldberger* factors in the Fee Motion, and responding here to the Court's request for additional information, Plaintiff has essentially addressed each of the *Johnson* factors. For example, the Fee Motion discussed the substantial relief that Class Counsel has obtained for the Class after litigating this case for over three years to the brink of trial. Notwithstanding that success and the risks Class Counsel assumed by litigating the case on full contingency, Plaintiff's fee request will not yield any positive multiplier over Class Counsel's unenhanced lodestar using current rates (as instructed by the Second Circuit, see *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998))—rather, in this case the requested percentage of the common fund is nearly identical to, if not less than, the lodestar.