# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER MEIDL, on his own behalf and on behalf of all others similarly situated, | ) NO: 3:15-CV-01319-JCH ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| AETNA INC.; AETNA LIFE INS. CO.; and MCMC, LLC, | ) ) ) |
| | ) JUNE 25, 2019 |
| Defendants. | ) |

## **DECLARATION OF MEIRAM BENDAT**

I, Meiram Bendat, declare as follows:

1. I am an attorney-at-law licensed to practice in the State of California, and have been admitted to this Court.

2. I am the founder of Psych-Appeal, Inc. ("Psych-Appeal") and am counsel to Plaintiff and the certified class in the above-captioned action. I have personal knowledge of the facts contained in this declaration and, if called, could and would testify competently thereto under oath.

3. On February 26, 2019, this Court preliminarily appointed the firms of Zuckerman Spaeder LLP ("Zuckerman") and Psych-Appeal to serve as Class Counsel representing the certified class (the "Class").

4. On May 20, 2019, I submitted a declaration in support of Plaintiff's original Motion for Award of Attorneys' Fees and Expenses and Incentive Award ("First Declaration"). Dkt. 207-3. The First Declaration described my education, background, training, and experience in novel ERISA class action litigation. *Id.* at ¶¶ 5-11. I was admitted to the California bar in

1998. I was also licensed as a psychotherapist in 2008 by the California Board of Behavioral Sciences.

5. The First Declaration also explained that I set my rates to be competitive in the specialized area in which I practice, that numerous courts have approved my rates, and that numerous clients pay Psych-Appeal's hourly rates. *Id.* at ¶¶ 13-14. Among the clients who pay Psych-Appeal's full hourly rates are institutional mental health providers.

6. I now submit this Declaration in support of the supplemental submission concerning Plaintiff's Motion for Award of Attorneys' Fees and Expenses.

7. I founded Psych-Appeal as the country's first private law firm exclusively devoted to mental health insurance advocacy. I have focused on helping people with mental health and substance use disorders advocate for access to meaningful care and challenge unlawful coverage denials. My firm helps clients file appeals and, if necessary, pursue litigation to obtain benefits. As a leader in the field, my firm helps shape mental health public policy and provides strategic support to mental health think tanks, legislators, and regulators.

8. Psych-Appeal focuses on representing individuals, clinicians, institutional providers, and national mental health advocacy organizations.

9. In doing so, I frequently comes across situations that require specialized ERISA expertise because they concern relatively untested mental health parity statutes and/or the development of internal coverage guidelines whose propriety turns on the interplay between the written plan terms and the ways in which mental healthcare is diagnosed and treated. I also learn of issues that present opportunities for impact mental health-related litigation because I am active in legal and advocacy efforts to improve access to mental health treatment.

10. When I encounter such situations, I have at numerous times in the past had to

2

identify other practitioners to partner with to think through the issues and to pursue litigation that we conclude is meritorious. Because of my own legal practice and my other activities in the mental health space, I am generally aware of the community of lawyers who litigate plaintiff-side ERISA cases that implicate issues beyond individual claims for benefits. I have learned that there few lawyers and law firms in the country that litigate complex plaintiff-side ERISA healthcare cases, including class actions, and even fewer willing to do so on a full contingency basis. And I have found that there are even fewer lawyers and law firms that have the requisite experience, ERISA expertise, and resources to develop and litigate such cases effectively. That is particularly the case because, in an ERISA case of any size or complexity, insurance companies themselves are usually represented by large, national law firms and are prepared to expend considerable resources to defend themselves.

11. For all of these reasons, I have repeatedly partnered with Zuckerman Spaeder on cutting-edge mental health litigation around the country, including the cases I listed in the First Declaration. The leaders of Zuckerman's ERISA plaintiffs' practice, Brian Hufford and Jason Cowart, are recognized as national thought leaders on the effective use of ERISA on behalf of patients in the area of behavioral health. As a firm, Zuckerman is committed to investing the resources necessary to litigate these cases effectively. I have also worked very closely with numerous other partners and associates at Zuckerman on cases; they too are knowledgeable about ERISA and are rigorous and effective litigators.

12. I have not worked with, nor am I aware of, lawyers or law firms in the District of Connecticut that are engaged as lead counsel in cases like the *Meidl* case, which challenged Aetna's company-wide policy that coverage for TMS was excluded under all Aetna-administered plans as experimental and investigational for the treatment of major depression. I say this with no

6873176.1

intent to disparage the Connecticut legal community in the least. Rather, it is simply my experience that few plaintiffs' firms have the substantive expertise, sophisticated litigation experience, and willingness to invest in such cases against well-funded adversaries. As I have dedicated my professional life to working to ensure that patients have fair and meaningful access to mental health treatment, it is my view that such work is extraordinarily important.

Executed this 25th day of June 2019 in Los Angeles, CA.

_____
Meiram Bendat