## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER MEIDL, on his own behalf and on behalf of the certified class, | : | CIVIL ACTION NO. |
| | : | 3:15 CV 01319 (JCH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AETNA INC., *et al.*, | : | JUNE 28, 2019 |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................iii

I.     BACKGROUND ............................................................................................................2

       A.     Factual Summary, Class Certification, and Denial of Summary Judgment ...........2

       B.     Settlement Conference and Negotiations..................................................................4

II.    DESCRIPTION OF THE SETTLEMENT ...................................................................4

       A.     The Settlement Payment and Plan of Allocation. ....................................................4

       B.     Release of Certain Claims against Aetna. ................................................................5

III.   DEVELOPMENTS SINCE THE COURT GRANTED PRELIMINARY
       APPROVAL TO THE SETTLEMENT.......................................................................5

       A.     Class Members Received Direct Mailed Notice. ......................................................5

       B.     Plaintiff Filed His Fee Request Well in Advance of the Opt-Out and
              Objection Deadlines. ................................................................................................7

       C.     Only Five Persons Opted Out, and No One Objected to the Settlement. ................8

       D.     The Settlement Administrator Is Prepared To Issue Checks to Class
              Members. ..................................................................................................................8

       E.     Aetna Sent the CAFA Notice. ..................................................................................8

IV.    THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR
       FINAL APPROVAL....................................................................................................9

       A.     Legal Standard for Final Approval. ........................................................................9

       B.     The Proposed Settlement Satisfies the Rule 23 Standards for Final
              Approval. ...............................................................................................................10

              1.     The Class representative and Class Counsel have adequately
                     represented the Class...................................................................................10

              2.     The Settlement was negotiated at arm's length. .........................................12

              3.     The relief provided for the Class is adequate.............................................13

                     a.     The recovery for the Class is exceptional. .......................................14

b.     Costs, risks, and delay of trial and appeal...................................... 15

c.     The Plan of Allocation is fair and adequate................................... 16

d.     Proposed award of attorneys' fees and expenses........................... 17

4.     The Settlement treats Class members equitably relative to each other. ...................................................................................................... 17

C.     The Reaction of the Class Supports Final Approval............................................. 17

V.     CONCLUSION.................................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014) ............................................................................... 14

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........................................................................... 10, 17

*Cruz v. Sal-Mark Restaurant Corp.*,
No. 1:17-cv-815 (DJS), 2019 WL 355334 (N.D.N.Y. Jan. 28, 2019) ................. 7, 17

*In re Fremont Corp. Litig.*,
No. 07-2693 (C.D. Cal. Aug. 10, 2011) ................................................................. 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................... 10, 17

*In re Sturm, Ruger & Co., Inc. Sec. Litig.*,
No. 3:09-cv-1293 (VLB), 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ................. 7

*In re Syncor ERISA Litig.*,
No. 03-2446, Dkt. 309 (C.D. Cal. Oct. 22, 2008) .................................................. 14

*In re WorldCom, Inc. ERISA Litig.*,
No. 02 Civ. 4816(DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) .................. 14

*In re WorldCom, Inc. Secs. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................... 16

*Karic v. Major Auto. Cos.*,
No. 09 CV 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) .................. 17

*Mehling v. N.Y. Life Ins. Co.*,
248 F.R.D. 455 (E.D. Pa. 2008) ........................................................................... 14

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ............................................................................... 15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ........................................................................... 10, 17

*Weil v. Cigna Health & Life Ins. Co.*,
    2:15-cv-07074-MWF-JPR, 2017 WL 3737851 (C.D. Cal. Aug. 29, 2017)............................ 16

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011)...................................................................................... 14

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008).......................................................................... 17

**STATUTES**

28 U.S.C. § 1715(b) ................................................................................................................. 8

29 U.S.C. 1102.......................................................................................................................... 3

**RULES**

Fed. R. Civ. P. 23 ......................................................................................................... 1, 9, 17

Fed. R. Civ. P. 23(b)(1).............................................................................................................. 3

Fed. R. Civ. P. 23(b)(2).............................................................................................................. 3

Fed. R. Civ. P. 23(e)(2).................................................................................................... 9, 10, 13

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................................ 7

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................................. 13, 17

Fed. R. Civ. P. 23(e)(2)(D) ...................................................................................................... 17

Plaintiff Christopher Meidl, individually and on behalf of the certified class (the "Class"), respectfully seeks final approval of the proposed class action settlement (the "Settlement") with Defendants Aetna Inc. and Aetna Life Insurance Co. (together, "Aetna"), and approval of his motion for attorneys' fees and expenses and an incentive award for the Class representative ("Fee Motion"). The Settlement, if approved, will provide significant monetary relief to people in health plans administered by Aetna who were denied insurance coverage for transcranial magnetic stimulation ("TMS") as a treatment for major depression from September 2009 to July 2016.

On February 26, 2019, the Court gave preliminary approval to the Settlement. Dkt. No. 205. On April 29, the settlement administrator mailed a detailed notice about the Settlement directly to Class members, and directed Class members to a Settlement website that provided extensive additional resources to help them evaluate the Settlement. On May 20, Plaintiff filed his Fee Motion. On June 17, the settlement administrator mailed a reminder notice to the Class. The Settlement and notice plan provided an opportunity for class members to submit additional information about their out-of-pocket expenditures for TMS, and 49 people did so. By the June 26, 2019 deadline, only five of the 1,164 potential Class members excluded themselves from the Settlement. Not a single Class member objected.

In short, the positive response of the Class, in addition to the valuable monetary relief that the Settlement will provide, overwhelmingly supports final approval of the Settlement as fair, reasonable, and adequate under Rule 23 of the Federal Rules of Civil Procedure.

If finally approved, the Settlement will create a $6.2 million common fund for the Class. Considering the information from Aetna's records and the additional submissions received by the settlement administrator from Class members, the Class's total billed charges for denied TMS

claims are about $6.6 million. Thus, the Settlement will recover 94% of the Class's total billed charges for TMS services. After accounting for any attorneys' fees, expenses, and class representative incentive award, Class members who paid out-of-pocket for TMS will be eligible to receive about 70% of what they likely would have received if Aetna had determined that all of their claims were medically necessary in the first place. In light of the fact that the retrospective relief that the Court could award in this case would be a remand to Aetna to reprocess the coverage and benefit claim denials, this is an amazingly good result for the Class. Additionally, in 2016, in part because of this case, Aetna changed its TMS policy and no longer considers TMS uniformly experimental and investigational for major depression.

In short, this litigation and proposed Settlement achieved—and, by obtaining significant guaranteed monetary relief for all Class members, in fact exceeded—Plaintiff's two main objectives for himself and the Class. Given the risks of litigation and the time value of money, the Settlement is an extremely favorable one for the Class.

## I.     BACKGROUND

Plaintiff draws the following summary of his claims and the proceedings from his motion for preliminary approval and the accompanying declaration. *See* Pl. Mem. in Supp. of Prelim. Approval at 2-4 [Dkt. No. 203-1]; Declaration of Andrew N. Goldfarb in Supp. of Prelim. Approval [Dkt. No. 203-10].

### A.     Factual Summary, Class Certification, and Denial of Summary Judgment

From September 3, 2009 to July 29, 2016 (the "Class Period"), Aetna denied Class members' claims for coverage of TMS to treat major depression. Aetna claimed that TMS fell under the provision in each of those Class member's plans excluding coverage for experimental and investigational treatments. Aetna's exclusion decisions all rested on a categorical policy, Clinical Policy Bulletin 469 ("CPB 469"), which Aetna developed and uniformly applied to all

TMS claims. In every iteration of CPB 469 in effect during the Class Period, Aetna stated that TMS for depression was experimental and investigational. On July 29, 2016, in the midst of this litigation, Aetna changed CPB 469 to cover TMS for the first time.[1]

The Class alleges that during the Class Period, Aetna violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1102, et seq., by (i) violating its fiduciary duties of prudence and loyalty in the development and maintenance of CPB 469 (Count One), and (ii) wrongfully denying claims for TMS benefits pursuant to CPB 469 (Count Two). The Class seeks injunctive and equitable relief, including an order that Aetna reprocess the requests for TMS coverage that it denied. At the outset of the case Plaintiff also sought to require Aetna to change its policy of uniformly rejecting coverage for TMS, a change Aetna made during the course of the litigation.

In May 2017, the Court certified the following class under Rule 23(b)(1) and (b)(2):

> [A]ll participants or beneficiaries in Aetna Plans administered by Aetna (or any of its operating divisions) who, from September 3, 2009, to July 29, 2016, were denied health insurance coverage for TMS for the treatment of major depression using one of the codes for Experimental, Investigational, or Unproven Services. The TMS Class includes both persons whose post-service claims for reimbursement were denied and persons whose pre-service requests that Aetna confirm coverage for TMS were denied.

Dkt. 114 at 52. The Court also appointed Zuckerman Spaeder LLP and Psych-Appeal, Inc. as counsel for the Class ("Class Counsel"). *Id.*

---

[1] The revised policy of TMS that Aetna promulgated on July 29, 2016, and any claims that might arise concerning that revised policy, are not at issue in this litigation and the Settlement does not concern or address them.

The parties proceeded to conduct discovery on the merits of Plaintiff's claims. After extensive briefing and argument, in October 2018 the Court denied Aetna's motion for summary judgment. Dkt. No. 169. The Court set the case for trial to begin on March 11, 2019.

### B. Settlement Conference and Negotiations

On November 20, 2018, the Court directed the parties to participate in a pre-trial settlement conference mediated by Magistrate Judge Merriam. Dkt. No. 180. After advance arms-length negotiations and then an all-day settlement conference with Judge Merriam on January 10, 2019, the parties reached an agreement in principle. The parties then entered a term sheet and negotiated the Settlement Agreement. Those negotiations were informed by additional data about the size and composition of the Class for the full Class Period that Aetna provided to Class Counsel. The information allowed Plaintiff to confirm the information that underlies the terms of the Settlement, evaluate the risks of continuing to litigate and the benefits of the proposed Settlement, and confirm Plaintiff's conclusion that the Settlement is a reasonable and favorable one for the Class.

## II. DESCRIPTION OF THE SETTLEMENT

The proposed Settlement has two major components: (1) payment by Aetna of a $6.2 million "Settlement Amount," and (2) a release of certain claims against Aetna related to TMS.

### A. The Settlement Payment and Plan of Allocation.

Under the Settlement Agreement, Aetna will pay the Settlement Amount of $6.2 million (*see* Settlement Agreement § 1.18 [Dkt. No. 203-02]) into an account administered by Epiq Class Action & Claims Solutions, Inc., the third-party administrator approved by the Court ("Epiq" or "Settlement Administrator"). After preliminary approval, Aetna paid $150,000 of the Settlement Amount to contribute to the costs of notice. The rest of the Settlement Amount will be paid within 30 days after the Effective Date of the Settlement. *Id.* § 2.8.

The Settlement Fund will consist of the Settlement Amount, less notice costs, any named plaintiff incentive award, and attorneys' fees and expenses approved by the Court. *Id.* § 1.19. Epiq will distribute the Settlement Fund to members of the Class according to the Plan of Allocation attached as Exhibit B to the Preliminary Approval Motion. *Id.* § 2.11.

Under the Plan of Allocation preliminarily approved by the Court, Class members will receive either the greater of (i) a fixed minimum amount of $1,500, and (ii) a proportional share of the Settlement Fund based on their "Recognized Loss"—the amount they paid out-of-pocket for TMS because of Aetna's coverage and claims denials.

**B.      Release of Certain Claims against Aetna.**

Upon the Effective Date of the Settlement, the Class members will release Aetna (and related entities) from Released Claims (*id.* § 2.16), which are defined in part as:

> [A]ny and all past, present and future claims, actions, causes of action, rights or liabilities, costs, expenses, losses, debts, or claims, regardless of forum, contingent or non-contingent, accrued or unaccrued, known or unknown, arising out of or related to: (i) a denial of health insurance coverage for TMS for the treatment of major depression (including any requests associated with a diagnosis of major depression, even if there were also other non-depression diagnoses) during the Class Period, including post-service claims for reimbursement and pre-service requests that Aetna confirm coverage; or (ii) any challenge to the development or application of any iteration of CPB 469 in effect prior to July 29, 2016.

*Id.* § 1.16.

**III.      DEVELOPMENTS SINCE THE COURT GRANTED PRELIMINARY APPROVAL TO THE SETTLEMENT**

**A.      Class Members Received Direct Mailed Notice.**

On April 29, 2019, based on mailing address information for Class members provided by Aetna and its own address-verification efforts that resulted in updated addresses for 162 people, Epiq mailed notice directly to the Class. Declaration of Angie Birdsell (Epiq) ¶¶ 8-11 (attached

as Ex. 1 hereto). Of the 74 mailings that were returned as undeliverable, Epiq re-mailed the notices to the 62 Class members for which it was able to obtain updated addresses. *Id.* ¶ 12. The notice mailing had a success rate of 98.9%. *Id.* ¶ 14.

The notice provided extensive information about all facets of the Settlement, including a description of the injunctive and monetary relief, instructions on how to opt out or object, information about how Class Counsel would be paid, as well as information about additional resources available to help Class members. The notice also informed putative Class members about the Settlement website (www.AetnaTMSSettlement.com) and contact information (email, phone, mailing address) for Epiq. *See* Ex. A to Birdsell Decl. As of June 21, 110 people had visited the website and 1,043 website pages had been viewed. *Id.* ¶ 16.

To help them evaluate the Settlement and its potential benefit to them, as part of the notice Class members also received a sheet with the total amount that Aetna's records show they were billed for all TMS that they received during the Class Period. *See id.* Class members who think they paid more for TMS during the Class Period than Aetna's records show were able to submit evidence to the Epiq showing the total amount they paid for TMS during the Class Period. Forty-nine Class members submitted such evidence. Birdsell Decl. ¶ 21. In some cases the amount submitted was less than the amount in Aetna's records, in which cases Epiq will rely on Aetna's records to set those Class members' Recognized Loss.

In addition, information about the Settlement was available to Class members though a live telephone information line during business hours and a 24-hour toll-free information line. The notice also provided contact information for Class Counsel and Epiq. *Id.* ¶ 17. As of June 21, 2019, the toll-free number had received 147 calls representing 1,442 total minutes, and

call center representatives had handled 103 inbound calls representing 1,527 minutes of use and 51 outbound calls representing 155 minutes of use. *Id.* ¶ 18.

The original deadline for opting out or objecting was June 11. Dkt. No. 205 at 9. On June 17, the Court extended the deadline to June 26, 2019. Dkt. No. 210. That same day (June 17), Epiq mailed a reminder notice to all Class members. *Id.* ¶ 13.

The notice program satisfies Fed. R. Civ. P. 23(c)(2)(B) and due process. It provided direct, mailed notice to individual putative Class Members, a mailed reminder notice, and offered ample resources through the settlement website and the toll-free telephone number maintained by the Settlement Administrator to inform Class Members about the Settlement. Notice provided to the Class in this case equals or exceeds that which other courts have found satisfy Rule 23 and due process. *See Cruz v. Sal-Mark Restaurant Corp.*, No. 1:17-cv-815 (DJS), 2019 WL 355334, *7 (N.D.N.Y. Jan. 28, 2019) (single direct mailed notice); *In re Sturm, Ruger & Co., Inc. Sec. Litig.*, No. 3:09-cv-1293 (VLB), 2012 WL 3589610, *4 (D. Conn. Aug. 20, 2012) (direct mailed notice and publication of summary notice).

### B. Plaintiff Filed His Fee Request Well in Advance of the Opt-Out and Objection Deadlines.

On May 20, 2019, Plaintiff filed his Motion for Attorneys' Fees and Expenses and Incentive Award for Named Plaintiff ("Fee Motion"). Dkt. No. 207. Those papers were posted to the Settlement website on May 23, 2019, more than a month in advance of the final deadline for opting out of, or objecting to, the Settlement. Declaration of Andrew N. Goldfarb in Support of Final Approval ¶ 6 ("Goldfarb Final Approval Decl.") (attached as Ex. 2).

On June 25, 2019, in response to the Court's order requesting more information concerning Class Counsel's fee request [Dkt. No. 209], Plaintiff made a supplemental submission in support of the Fee Motion. Dkt. No. 211.

**C.     Only Five Persons Opted Out, and No One Objected to the Settlement.**

By the June 26 deadline, of the 1,164 Class members: (i) five individuals opted out of the Settlement,[2] and (ii) no one objected to the Settlement.[3] No Class member provided notice of intent to appear at the July 10, 2019 Final Approval Hearing. Birdsell Decl. ¶ 19; Goldfarb Final Approval Decl. ¶¶ 10-11. The list of opt-outs (Ex. C. to Birdsell Decl.) is being filed under seal with the Court.

**D.     The Settlement Administrator Is Prepared To Issue Checks to Class Members.**

To facilitate the provision of notice and Settlement administration, Aetna provided Epiq with information about the TMS claims for each Class member. *See* Birdsell Decl. ¶ 6. Thus, Epiq can calculate each Class member's monetary payment pursuant to the Plan of Allocation previously approved by the Court, taking into account the additional information submitted by 49 Class members. If this Court grants final approval to the Settlement and Plan of Allocation, Epiq will issue checks directly to Class members. *Id.* ¶ 21.

**E.     Aetna Sent the CAFA Notice.**

In February 2019, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"), Aetna timely mailed notice to the appropriate state official of each state in which a

---

[2] The Settlement Administrator received one timely but incomplete opt-out form from the spouse of a deceased Class member. Class Counsel contacted the person by telephone to address the incomplete form, and provided additional explanation about the Settlement. The person telephoned back the next day and confirmed that she wished to be excluded from the Class. Goldfarb Final Approval Decl. ¶ 9.

[3] Class Counsel received a written objection and statement of intent to appear from one Class member, both dated June 6, 2019. The written objection reflected a clear misunderstanding of the proposed Plan of Allocation and of the amount of monetary relief for which the Class member would be eligible. Undersigned counsel contacted the Class member by phone and explained the proposed Plan of Allocation, and that she had the opportunity to submit records to substantiate her out-of-pocket expenditures for TMS. The Class member subsequently withdrew her objection and notice of intent to appear by letter dated June 10. The Class member submitted information to the Settlement Administrator documenting her out-of-pocket expenditures for TMS. *Id.* ¶ 10.

Class member resides, as well as to the Attorney General of the United States. Goldfarb Final

Approval Decl. ¶ 5. No recipient of the CAFA notice raised any objection to the Settlement.

## IV. THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR FINAL APPROVAL

### A. Legal Standard for Final Approval.

Under Rule 23(e)(2), the factors by which to evaluate if the Settlement is fair, reasonable,

and adequate are whether:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The identification of factors governing approval of a class settlement in

the revised Rule 23 is not intended to displace factors that the Circuits have used to assess

settlements, but rather "to focus the court and the lawyers on the core concerns of procedure and

substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P.

23(e)(2) advisory committee's note to 2018 amendment.

Consistent with the Rule 23(e)(2) factors, courts in the Second Circuit have applied the

following factors in determining whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; [and] (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

See *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). A district court recently stated that "there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C-D) factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). The Second Circuit has a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation omitted).

**B.  The Proposed Settlement Satisfies the Rule 23 Standards for Final Approval.**

In February 2019, the Court concluded that it would likely be able to approve the Settlement as fair, reasonable, and adequate. As nothing about the Settlement has changed and the reaction of the Class overwhelmingly supports the Settlement, the Court should confirm its preliminary judgment and grant final approval. As shown below, the Settlement easily satisfies the factors set out in Rule 23(e)(2).

1.  <u>The Class representative and Class Counsel have adequately represented the Class.</u>

The Class representative and Class Counsel have adequately represented the Class, contributing substantially to the favorable outcome reflected in the Settlement.

<u>Class Representative</u>. In certifying the Class, the Court found that Mr. Meidl's claims were typical of those of other Class members and that his interests were aligned with those of the

Class members. Dkt. 114 at 25-34. This holding was based, at least in part, on the fact that Plaintiff's claims sought the same relief for himself that he sought for every other Class member: an end to Aetna's uniform policy of categorically denying all claims for coverage of TMS to treat major depression, and the creation of a mechanism through which all Class members could have their TMS coverage claims fairly adjudicated. Pl. Mem. in Supp. of Mot. for Class Cert. at 12-17 ("Class Cert. Br.") [Dkt. No. 89]. Mr. Meidl has been a diligent, attentive, and unwavering advocate for these class-wide interests. Indeed, cases about mental health treatment cannot succeed without individuals like Mr. Meidl, who willingly cast a light on his own serious depression to help others. Mr. Meidl publicly disclosed highly private, personal information to vindicate the rights of all persons situated similarly to him. He demonstrated extraordinary courage to serve as the named plaintiff and has made it possible to obtain substantial relief for the Class. Mr. Meidl dedicated hundreds of hours to the case. He closely followed case developments throughout the case; prepared for and gave a full-day deposition; met in-person with Class Counsel to discuss litigation and trial strategy; conferred with Class Counsel in advance of key submissions and hearings; and attended key events in the case, including the successful settlement conference on January 10, at which he advocated effectively for the Class. *See* Goldfarb Decl. in Supp. of Prelim. App. ¶ 15 [Dkt. No. 203-10]; Fee Motion at 16 [Dkt. No. 207-1].

Class Counsel. In the class certification decision, the Court also appointed Zuckerman Spaeder LLP and Psych-Appeal, Inc. as Class Counsel, finding them "qualified, experienced and able to conduct the litigation." Dkt. 114 at 35. Plaintiff had submitted evidence showing these firms' demonstrated experience and expertise in ERISA cases challenging the internal coverage criteria that ERISA administrators use to deny claims. Class Cert. Br. at 17-18 and Ex. Y thereto;

*see also* Fee Motion at 5, 12-13. After prevailing on a hard-fought class certification motion, Class Counsel focused on the merits issues in the case. They engaged in targeted fact and expert discovery that enabled them to uncover evidence supporting the conclusion that CPB 469 was based on criteria found in an internal Aetna document that were not reasonably interpreted to be contained in Aetna's written plans. This evidence was sufficient to defeat Aetna's summary judgment motion and, in Plaintiff's view, put Plaintiff in a strong position to prevail at trial. Plaintiff's success at class certification and then summary judgment led directly to the Settlement.

Plaintiff's original and supplemental submissions in connection with the Fee Motion further explained the role that Class Counsel played in the case and the successful result that Class Counsel achieved for the Class.

2.     The Settlement was negotiated at arm's length.

As described previously (*see* Pl. Mem. in Supp. of Prelim. Approval at 11-12; Goldfarb Decl. in Supp. of Prelim. Approval ¶¶ 5-12 [Dkt. No. 203-10]), the parties reached agreement on a proposed resolution of the case after three years of hard-fought litigation, followed by three months of arm's-length negotiations during which both sides had information that enabled them to evaluate the strengths and weaknesses of their respective positions. The parties were meaningfully aided in their negotiations by Judge Merriam, who gave structure to those discussions and then presided over the January 10, 2019 settlement conference. That daylong mediation culminated in an agreement-in-principle, which led the parties to negotiate first a term sheet, then the Settlement Agreement.

Plaintiff was well informed during this process. During class certification discovery in 2016, Aetna produced claim data about its decisions on requests for TMS coverage (both post-service claims and pre-authorization requests) covering about half of the Class Period. From that

limited data set, Plaintiff was able to estimate the membership and characteristics of the Class to support his motion for class certification. As a condition of settlement, however, Plaintiff demanded additional updated data about the size and characteristics of the Class covering the entire Class Period. In response to Plaintiff's inquiries, Aetna provided multiple rounds and multiple categories of claim and preauthorization data to support the parties' best efforts to identify all Class members. Plaintiff analyzed the data thoroughly to make sure that the Settlement Amount appropriately reflected the size and scope of the Class. Through this extensive process and data exchange, the parties reached agreement on the parameters used to identity Class members in Aetna's data. Only thereafter did Plaintiff agree to the Settlement Agreement.

3.    <u>The relief provided for the Class is adequate.</u>

The relief obtained for the Class easily satisfies the "adequacy" standard in Rule 23(e)(2), taking into account the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class members' claims; the terms of any proposed award of attorneys' fees, including timing of payment; and the equal treatment of all Class members. Fed. R. Civ. P. 23(e)(2)(C).

As noted above, Plaintiff brought this case with two main objectives: a change in Aetna's policy of categorically denying coverage for TMS for major depression, and a mechanism by which class members could obtain insurance benefits for TMS received during the Class Period. With respect to the first objective, Aetna changed its TMS policy in July 2016—about ten months into the litigation—to cover TMS for major depression in certain circumstances. The Settlement more than achieves the second objective by ensuring significant monetary relief to all Class members immediately (rather than after additional years of litigation and appeals) and

without the risk that the remedy sought (reprocessing) could result in the denial of coverage for many Class members.

a.    The recovery for the Class is exceptional.

The Settlement provides extraordinary monetary relief for the Class. It recovers $6.2 million on insurance claims where the total billed amount reflected in Aetna's records, plus records submitted by Class members, is in the range of $6.6 million. Aetna's records show that if all those claims had been deemed covered by Aetna in the first place, Aetna would have paid substantially less than the billed amount—reflecting reductions under plan payment schedules, co-pays, deductibles, and co-insurance obligations. Indeed, Plaintiff estimates that, even after deduction of the requested incentive award, attorneys' fees and expenses, and notice costs, Class members who receive pro rata distributions are likely to receive approximately 70% of what they likely would have received if their claims were all deemed covered (Goldfarb Final Approval Decl. ¶¶ 7-8)—even though money damages were not available in this case. This type of monetary recovery far exceeds that in other approved ERISA class action settlements where money damages were "on the table." *See, e.g.*, *In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816(DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (7% of maximum damages); *In re Syncor ERISA Litig.*, No. 03-2446, Dkt. 309 (C.D. Cal. Oct. 22, 2008) & Dkt. 300 at 9 (8.7% of maximum damages); *In re Fremont Corp. Litig.*, No. 07-2693, Dkt. 277 at 10 & Dkt. 286 (C.D. Cal. Aug. 10, 2011) (10.8% of maximum losses); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (3.2% of maximum damages, with an average of $180 per class member); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (24.3% of maximum damages); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery).

b.    Costs, risks, and delay of trial and appeal.

Although Plaintiff believes he would have a strong chance of prevailing at trial and on any subsequent appeals, the Class would face both procedural and substantive obstacles if the case does not settle. First, Plaintiff would have to prevail at trial. Aetna would seek to narrow or de-certify the Class, and would assert a slew of merits defenses, such as evidence to support the reasonableness of its TMS policy. Assuming a decision for Plaintiff on liability, the parties would then litigate the precise form of the reprocessing remedy, including the medical necessity standard Aetna would apply when reprocessing the claims. Plaintiff would also have to defeat Aetna's post-trial appeals, which would likely include attempts to decertify the Class and to reverse any judgment or remedy ordered by the Court. Thus, Plaintiff estimates it would take eighteen months to two years to obtain a final judgment. Only thereafter would Aetna likely begin reprocessing Class members' claims. And while reprocessing would remedy Aetna's alleged ERISA violations, it is also likely that Aetna would again deny coverage and benefits to many Class members. Those Class members would face the prospect of more administrative ERISA appeals and new litigation to challenge those new denials.

Approving the Settlement eliminates the not-insubstantial risk that the litigation could end unsuccessfully, with no recovery for the Class. It also gives the Class the benefit of the time value of a sum clearly determined by the Plan of Allocation. By receiving money sooner, Class Members can earn interest on, invest, or spend the money, rather than being forced to wait until resolution of the litigation, which could take two more years, to receive an amount that might well be less. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

At the same time, the scope of the release is fair to both parties. In consideration for the substantial benefits to Class members, the Settlement will allow Aetna to eliminate legal risks

arising from or relating to its TMS policy in effect during the Class Period (except from those who opt out of the Settlement).

### c. The Plan of Allocation is fair and adequate.

A plan of allocation must be fair and adequate. However, it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Secs. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citations omitted).

The Court should find this factor satisfied. The Plan of Allocation will fairly and efficiently distribute the Settlement Fund to the Class. As described *supra*, all Class members will receive a significant minimum payment as a remedy for the CPB 469-based denial of TMS coverage that they suffered. In addition, Class members who paid the most out-of-pocket will receive a *pro rata* share of the Settlement Fund that is greater than the minimum payment. Class members who believe they should receive a greater amount were able to submit evidence to the Settlement Administrator to support their claim for a larger share.[4] In 2017, another federal court approved a nearly identical plan of allocation as part of a settlement resolving a similar case concerning TMS against another insurance company. *Weil v. Cigna Health & Life Ins. Co.*, 2:15-cv-07074-MWF-JPR, 2017 WL 3737851, at *3 (C.D. Cal. Aug. 29, 2017); *see also id.* (Dkt. No. 65-5) (Mar. 20, 2017) (plan of allocation submitted with motion for preliminary approval).

---

[4] Forty-nine Class members submitted information. Of that group, many submitted documents showing out-of-pocket expenditures for TMS that were less than or equal to the amount in Aetna's records. In such cases, the Settlement Administrator will use the number in Aetna's records to determine the Class member's share of the distributable amount. Where a Class member submitted valid records showing expenditures for TMS greater than that shown in Aetna's records, the Settlement Administrator will use the total reflected in the valid information submitted by the Class member.

d.      Proposed award of attorneys' fees and expenses.

In light of the favorable settlement for the Class and Plaintiff's success in the course of the litigation, the Court should find Plaintiff's request that Class Counsel receive an award of 33.3% of the Settlement Amount to be fair, reasonable, and adequate. *E.g.*, *Karic v. Major Auto. Cos.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016). Plaintiff respectfully refers the Court to his Fee Motion [Dkt. No. 207] and Supplemental Brief [Dkt. No. 211], which explain at length why that request is appropriate in this case. The Fee Motion was filed more than a month before the deadline for objections, so Class members had ample opportunity to evaluate the fee and expense request when deciding whether to object to it. None did object.

4.      The Settlement treats Class members equitably relative to each other.

The Settlement Agreement does not improperly grant preferential treatment to the named Plaintiff or segments of the Class. The Plan of Allocation provides for distribution to Class members based on a fair and reasonable allocation formula that applies to every Class member, including the named Plaintiff, and minimizes administrative costs.

For the reasons discussed in the Fee Motion (at 16), Mr. Meidl has earned the proposed incentive award to reflect his important contribution to the successful resolution of this case.

**C.      The Reaction of the Class Supports Final Approval.**

As noted above, the Rule 23(e)(2)(C) & (D) factors overlap substantially with the *Grinnell* factors. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 29. The main *Grinnell* factor not covered in Rule 23 is the reaction of the class. Where "the vast majority of class members neither objected nor opted out," it is a strong indication that the settlement is fair and adequate. *Cruz*, 2019 WL 355334 at *5 (quoting *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008)); *Wal-Mart*, 396 F.3d at 118 (stating that a small number

of objections supports the adequacy of the settlement).

Given that the case accomplished its two main objectives, and the monetary relief obtained is well over 90% of maximum damages (before payment of attorneys' fees, costs, and an incentive award for the named Plaintiff), it is not surprising that the reaction of the Class was overwhelmingly positive. Only five people opted out, and no Class member objected. Thus, the reaction of the Class to the proposed Settlement strongly supports a finding that the Settlement is fair, reasonable, and adequate.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant final approval to the Settlement and Plan of Allocation, and grant the Fee Motion. A proposed order is attached.

Respectfully submitted,

Dated:       June 28, 2019

ZUCKERMAN SPAEDER LLP

By:   /s/ Andrew N. Goldfarb

Andrew N. Goldfarb (Bar. No. 235615)
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel:     (202) 778-1800
Fax:     (202) 822-8106
*agoldfarb@zuckerman.com*

Meiram Bendat (Bar No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard
Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
*mbendat@psych-appeal.com*

D. Brian Hufford (*pro hac vice*)
Jason S. Cowart (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
*dbhufford@zuckerman.com*
*jcowart@zuckerman.com*

*Attorneys for Plaintiff Christopher Meidl and the Class*